ORIGINAL

FILED
FEB 2 6 2010
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ⟨ML⟩    DEPUTY

VIA FAX

1  David S. Blau (Bar No. 166825)
   David M. Morrow (Bar No. 175776)
2  Blau & Associates, P.C.
   6080 Center Drive, Suite 210
3  Los Angeles, California 90045
   (310) 410-1900 phone
4  (310) 410-1901 fax
   david@blaulaw.net
5
   Attorneys for Defendant AMERICAN
6  SAFETY INDEMNITY COMPANY

7

8              UNITED STATES DISTRICT COURT

9         FOR THE SOUTHERN DISTRICT OF CALIFORNIA

.10                                   '10 CV 0 4 4 3 WQH    WMc

11  D.R. HORTON LOS ANGELES HOLDING     Case No.
    CO., INC.,
12                                      NOTICE OF REMOVAL OF CIVIL
                 Plaintiff,             ACTION FROM STATE COURT (28
13                                      U.S.C. § 1441(b))
         vs.
14
    AMERICAN SAFETY INDEMNITY
15  COMPANY, and DOES 1 through 5, inclusive,
16               Defendants.
17
18
19      TO THE CLERK OF THE ABOVE-ENTITLED COURT:
20          PLEASE TAKE NOTICE THAT Defendant AMERICAN SAFETY INDEMNITY
21  COMPANY ("ASIC") ("Defendant") hereby removes the above-entitled action from the
22  Superior Court of the State of California for the County of Contra Costa to the United States
23  District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1441 and 1446.
24  This Notice is based upon the original jurisdiction of the United States District Court over the
25  parties under 28 U.S.C. §1332 based upon the existence of diversity.
26          In support of its Notice of Removal, Defendant states to the Court as follows:
27          1.   The action pending in the Superior Court of the State of California for the County
28  of San Diego, entitled D.R. Horton Los Angeles Holding Co., Inc. v. American Safety

                                       1
                         NOTICE OF REMOVAL

Indemnity Company, et al., Case No. 37-2010-00083766-CU-IC-CTL, was commenced on January 15, 2010.  On or about January 29, 2010, Plaintiff D.R. HORTON LOS ANGELES HOLDING COMPANY, INC. ("Plaintiff") served the Complaint on the registered agent for service for this removing Defendant.  A true and correct copy of the Complaint on file in the State Court, and the attachments served therewith, are attached hereto as Exhibit "1."

2.       The action pending in the state court is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1332(a) because it is a civil action between citizens of different states, and the amount in controversy exceeds $75,000.

3.    Plaintiff D.R. HORTON LOS ANGELES HOLDING COMPANY, INC. is a citizen of the State of California, its state of incorporation, and the State of Texas, its principal place of business.  (See Exhibit "2" and Exhibit "3" at Page 4, lines 12-16.)  Defendant AMERICAN SAFETY INDEMNITY COMPANY is a citizen of the State of Oklahoma, its state of incorporation, and of the State of Georgia, its principal place of business.  A true and correct copy of Plaintiff's corporate information is attached hereto as Exhibit "2."  A true and correct copy of the Complaint filed in the matter styled Chang O. Kim, et al. v. City of Santa Clarita, D.R. Horton Los Angeles Holding Co., Inc., et al., Superior Court of the State of California for the County of Los Angeles, Case No. BC407614, one of the underlying actions forming the basis for this case, is attached hereto as Exhibit "3."

4.     The amount in controversy in the action exceeds $75,000 exclusive of interest and costs, as Plaintiff has advised Defendant that its damages currently exceed $100,000.00, and continue to be incurred.  Plaintiff claims that Defendant must defend Plaintiff, and indemnify Plaintiff for the costs of any judgment or settlements, in connection with three (3) complex underlying construction defect actions entitled Chang O. Kim, et al. v. City of Santa Clarita, D.R. Horton Los Angeles Holding Co., Inc., et al., Superior Court of the State of California for the County of Los Angeles, Case No. BC407614, Canyon Gate Maintenance Assoc. v. City of Santa Clarita, D.R. Horton Los Angeles Holding Co., Inc., et al., Superior Court of the State of California for the County of Los Angeles, Case No. BC415663, and Warrick, et al. v. City of Santa Clarita, D.R. Horton Los Angeles Holding Co., Inc., et al., Superior Court of the State of

2

NOTICE OF REMOVAL

California for the County of Los Angeles, Case No. PC046442, (the "underlying actions"). Plaintiff seeks as damages from Defendant both (1) the defense fees and costs incurred by Plaintiff in connection with the three underlying actions, and (2) the costs of any judgments rendered against or settlements entered into by Plaintiff in connection with the underlying actions. In merely one of the underlying actions, <u>Chang O. Kim, et al. v. City of Santa Clarita, D.R. Horton Los Angeles Holding Co., Inc., et al.</u>, Plaintiff faces (1) defense fees and costs in connection with claims brought by ninety-five (95) plaintiffs, (2) damages claims consisting of lost property down payments, closing costs, mortgage payments, insurance premiums, homeowners association dues, taxes, improvements, diminution-in-value of their properties, general damages, and consequential damages in connection with the fifty-five (55) single-family homes collectively purchased from Plaintiff. (See Exhibit "3" at Paragraphs 65, 103, and 120, lines 12-16.)

5.     The Complaint in the State Court action was served on this removing Defendant on January 29, 2010.

6.     As the state court action is one within the diversity jurisdiction of the federal district courts, the action is removable to this court under 28 U.S.C. §1441(a) and (b) because no defendant is a citizen of the State of California.

7.     Venue is proper in the U.S. District Court for the Southern District of California, located in the County of San Diego, as the Complaint was filed in state court in the County of San Diego.

8.     This Notice of Removal from State Court is timely filed pursuant to 28 U.S.C. § 1446(b) because it is filed within 30 days after receipt by Defendant of Plaintiff's Complaint. Removal is also timely because this Notice of Removal is filed not more than one year after this action was commenced in state court against this removing Defendant.

9.     This Notice of Removal from State Court is proper under 28 U.S.C. § 1446(b) because all defendants have joined in this Notice of Removal.

/ / /

/ / /

3

NOTICE OF REMOVAL

1      WHEREFORE, having provided notice as required by law, the above-entitled action

2  should be removed from the Superior Court of the State of California for the County of Contra

3  Costa to this Court, and Defendant prays that it be so removed.

4  DATED: February 26, 2010        Blau & Associates, P.C.

5

6                             By: _____

7                              David S. Blau
                            David M. Morrow

8                              Attorney for Defendant AMERICAN
                            SAFETY INDEMNITY COMPANY

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

---

**NOTICE OF REMOVAL**

**PROOF OF SERVICE**

*D.R. Horton Los Angeles Holding Co., Inc., v. American Safety Indemnity Company*

United States District Court

STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

    I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 6080 Center Drive, Suite 550, Los Angeles, California 90045.

    On February 26, 2010, I served the foregoing document described as **NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT (28 U.S.C. § 1441 (b))** on the interested parties in this action by placing a true copy thereof enclosed in the sealed envelopes addressed as follows:

**SEE ATTACHED SERVICE LIST**

[X ]    BY MAIL: I deposited such envelope in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.

[  ]    BY PERSONAL DELIVERY: I delivered such envelope by hand to the offices of the addressee.

[  ]    VIA FACSIMILE: I caused all of the pages of the above entitled document to be sent to the recipients noted above via electronic transfer (FAX) at the respective facsimile number(s) indicated above.  This document was transmitted by facsimile and transmission reported complete without error.

[X ]    FEDERAL: I certify or declare that I am employed in the office of a member of the bar of this court at whose discretion the service was made.

    I am readily familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postal meter date is more than 1 day after date of deposit for mailing in affidavit.

    Executed on February 26, 2010, at Los Angeles, California.

    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

*Sara Watson*

Sara Watson

1

PROOF OF SERVICE

1

**SERVICE LIST**

2

***D.R. Horton Los Angeles Holding Co., Inc., v. American Safety Indemnity Company***

3

United States District Court

4

5

Scott W. Sonne

6

Luce, Forward, Hamilton & Scripps, LLP

600 West Broadway, Suite 2600

7

San Diego, California 92101-3391

Telephone No.: (619) 236-1414

8

Facsimile No.: (619) 645-5347

9

Attorneys for the Plaintiff,

10

D.R. HORTON LOS ANGELES HOLDING

CO., INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

1-19-10

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

| | FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE) |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
AMERICAN SAFETY INDEMNITY COMPANY, and DOES 1 through 5

FILED

2009 JAN 15 P 12: 15

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
D.R. HORTON LOS ANGELES HOLDING CO., INC

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>San Diego Superior Court<br>330 West Broadway<br>San Diego, CA 92101 | CASE NUMBER:<br>*(Número del Caso):*<br>**37-2010-00083766-CU-IC-CTL** |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Scott W. Sonne, State Bar No. 067618
LUCE, FORWARD, HAMILTON & SCRIPPS LLP
600 West Broadway, Suite 2600, San Diego, CA 92101
Telephone: (619) 236-1414

| DATE: January 15, 2010<br>*(Fecha)* | Clerk, by   **C. VAN PELT** | , Deputy |
|---|---|---|
| | *(Secretario)* | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* *American Safety Indemnity Company*
   under: ☒ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☒ by personal delivery on *(date):*

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | American LegalNet, Inc.<br>www.FormsWorkflow.com | Page 1 of 1<br>Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|---|

1    Scott W. Sonne, State Bar #067618
2    LUCE, FORWARD, HAMILTON & SCRIPPS LLP
    600 West Broadway, Suite 2600
    San Diego, California 92101-3391
3    Telephone No: 619-236-1414
    Facsimile No: 619-645-5347
4

5    Attorneys for Plaintiff
    D.R. HORTON LOS ANGELES HOLDING CO., INC.
6

7

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9               FOR THE COUNTY OF SAN DIEGO

10

11    D.R. HORTON LOS ANGELES        Case No.: **37-2010-00083766-CU-IC-CTL**
    HOLDING CO., INC.
12                        **COMPLAINT FOR BREACH OF THE**
           Plaintiff,            **IMPLIED COVENANT OF GOOD**
13                        **FAITH AND FAIR DEALING,**
      v.                      **BREACH OF CONTRACT, AND**
14                        **DECLARATORY RELIEF**
    AMERICAN SAFETY INDEMNITY
15    COMPANY, and DOES 1 through 5,
    inclusive,
16
           Defendants.
17

18

19                  **PRELIMINARY ALLEGATIONS**

20        1.      Plaintiff D.R. HORTON LOS ANGELES HOLDING CO., INC. ("plaintiff")

21 is, and at all times herein mentioned was, a corporation authorized to do business and doing

22 business in the State of California.

23        2.      Plaintiff is informed and believes and thereon alleges that defendant

24 AMERICAN SAFETY INDEMNITY COMPANY ("American Safety") is a corporation

25 licensed to do business and doing business within the State of California.

26        3.      The true names and capacities, whether individual, corporate, associate, or

27 otherwise, of the defendants named herein as Does 1 through 5, inclusive, are unknown to

28 plaintiff, who therefore sues said defendants by such fictitious names pursuant to Code of

1
COMPLAINT

1   Civil Procedure section 474, and plaintiff will amend this complaint to show their true names
2   and capacities when the same have been ascertained.

3        4.    Plaintiff is informed and believes and thereon alleges that venue is proper in this
4   Court because the insurance contract alleged herein below, if not breached, would have been
5   performed by the payment of attorneys' fees in the City and County of San Diego, State of
6   California, and the obligation and/or liability arose in the County of San Diego, where the
7   defense costs due under the contract were incurred.

8                        **BACKGROUND ALLEGATIONS**

9        5.    In or about 2002, plaintiff was engaged in a real estate development project
10  located in the City of Santa Clarita, State of California ("the Project").

11       6.    Plaintiff entered into a subcontract agreement with Ebensteiner Co. ("the
12  subcontractor") wherein the subcontractor agreed to provide work pertaining to grading on the
13  Project.

14       7.    Plaintiff is informed and believes and thereon alleges that the subcontractor
15  purchased one or more comprehensive general liability insurance policies from defendant,
16  including but not limited to policy Nos. XGI 99-1261-001, XGI 00-1261-002, XGI 01-1261-
17  003, XGI 02-1261-004, XGI 03-1261-005, and ESL 001041-04-06 ("the Policies"). The
18  Policies included the following insuring agreement:

19              "We will pay those sums that the insured becomes legally
20              obligated to pay as damages because of "bodily injury" or
21              "property damage" to which this insurance applies. We will
22              have the right and duty to defend the insured against any "suit"
23              seeking those damages. However, we will have no duty to
24              defend the insured against any "suit" seeking damages to which
25              this insurance does not apply. We may at out discretion
26              investigate any "occurrence" and settle any claim or "suit" that
27              may result."

28

8.     Plaintiff is further informed and believes and thereon alleges that said Policies named plaintiff as an additional insured and that plaintiff was a third-party beneficiary of defendants obligations to the subcontractor.

9.     Plaintiff is informed and believes and thereon alleges that the subcontractor paid all premiums due under the aforesaid Policies and performed all obligations and conditions on its part required to be performed to keep the Policies in full force and effect.

10.     The aforesaid Policies issued by defendant were made expressly for the benefit of plaintiff and named plaintiff as an additional insured.  As a consequence, an insurance relationship exists between defendant, as insurer, and plaintiff, as an insured and third-party beneficiary of the Policies.

**FIRST CAUSE OF ACTION**

(Breach of the Implied Covenant of Good Faith

and Fair Dealing Against All Defendants)

11.     Plaintiff incorporates by reference paragraphs 1 through 10 above as though fully set forth.

12.     While the Policies' benefits were in full force and effect, certain homeowners filed a complaint against plaintiff in an action entitled *Chang O. Kim, et. al. v. City of Santa Clarita, et. al.*, Los Angeles Superior Court Case No. BC407614 ("*Kim*").  Cross-complaints were also filed against plaintiff in the *Kim* action, including cross-complaints by Zephyr Newhall, LP; Zephyr Partners, LLC; the City of Santa Clarita; and Draper Partners.

13.     In addition, a separate lawsuit by other homeowners, entitled *Canyon Gate Maintenance Association v. City of Santa Clarita, et al.*, Los Angeles Superior Court Case No. BC415663 was filed against plaintiff, and cross-complaints were filed by Zephyr Newhall, LP; Zephyr Partners, LLC; and the City of Santa Clarita were filed against plaintiff in that case.

14.     A complaint was also filed against plaintiff in a separate action entitled *Warrick, et. al. v. City of Santa Clarita, et. al.*, Los Angeles Superior Court Case No. PC046442, and cross-complaints were filed by Zephyr Newhall, LP; Zephyr Partners, LLC; the City of Santa

3
COMPLAINT

1    Clarita; and Draper Partners against plaintiff in that case.

2       15.    Finally, plaintiff received several SB800 Notices to Builder, which constituted

3    insured events under the Policies.  The claims included Notices to Builder dated November

4    14, 2008, November 21, 2008, January 16, 2009, May 28, 2009, and June 5, 2009.

5       16.    In all of the above complaints, cross-complaints, and Notices to Builder under

6    SB800, damages were sought against plaintiff as a result of alleged construction activities on

7    the Project.  As a consequence thereof, the complaints, cross-complaints, and SB800 Notices

8    (collectively "the Lawsuits") constituted insured events covered by the Policies.

9       17.    Based upon the Lawsuits against plaintiff, timely and proper claims for benefits

10   under the Policies were made on plaintiff's behalf, and plaintiff demanded that defendants

11   defend and indemnify it under the aforesaid Policies.

12       18.    Since the claims for benefits under the Policies were submitted, defendants have

13   breached their duties of good faith and fair dealing owed to plaintiff in many respects,

14   including but not limited to, the following:

15          a.    Willfully and in bad faith failing to provide plaintiff with a defense in the

16   Lawsuits or to provide other benefits, including payment for repairs or other settlement costs

17   in connection with the Lawsuits, at a time when defendants knew that plaintiff was entitled to

18   such a defense and other benefits under the Policies;

19          b.    Willfully and in bad faith withholding and delaying payment of benefits

20   owed to plaintiff under the Policies at a time when defendants knew that plaintiff's claims for

21   said payment were valid;

22          c.    Willfully and in bad faith refusing and failing to properly investigate

23   plaintiff's claims for benefits;

24          d.    Willfully and in bad faith refusing and failing to respond to plaintiff's

25   request for benefits and coverage under the Policies; and

26          e.    Engaging in other wrongful and illegal acts and omissions to be proven at

27   the time of trial.

28

19.   Plaintiff further alleges that the running of any applicable statute of limitations was equitably tolled during the time plaintiff's defense of the Lawsuits was continuing.

20.   As a result of the breaches of the aforementioned duties and misconduct by defendants, and plaintiff's detrimental reliance thereon, and without in any way admitting that defendants had any rights to engage in the conduct herein alleged, plaintiff alleges that defendants have waived and are estopped to rely upon rights which they may otherwise have had under the Policies or law. Defendants have also forfeited rights they may otherwise have had under the Policies or law. Plaintiff also alleges that pursuant to the doctrine of ostensible agency, defendants are precluded from disputing that plaintiff was an insured under the Policies.

21.   Defendants also failed to give plaintiff proper notice of the exclusions in the Policies, including changes in the exclusions that improperly purported to limit coverage as to plaintiff. As a result of such failure to give proper notice of coverage limitations, defendants are precluded from relying on such exclusions in order to avoid coverage.

22.   As a proximate result of defendants' breach of the implied covenant of good faith and fair dealing and violation of statutory duties, as set forth above, plaintiff has suffered damages in an amount in excess of the jurisdictional minimum of this court and to be proven at the time of trial.

23.   As a further proximate result of defendants' breach of the implied covenant of good faith and fair dealing and violation of statutory duties, plaintiff has been forced to retain counsel to pursue its rights and has incurred attorneys' fees to enforce the benefits of the Policies.

24.   Plaintiff is informed and believes and thereon alleges that the conduct of defendants, and each of them, was done with a conscious disregard of plaintiff's rights and with the intent to vex, injure or annoy plaintiff, such as to constitute oppression, fraud, malice, and despicable conduct under California Civil Code section 3294, entitling plaintiff to punitive damages in an amount appropriate to punish and set an example of defendants.

///

1   ///

2   ///

3   ### SECOND CAUSE OF ACTION

4   (Breach of Contract Against All Defendants)

5   25.   Plaintiff incorporates by reference paragraphs 1 though 24 above as though fully

6   set forth herein.

7   26.   Plaintiff is informed and believes and thereon alleges that defendants delayed,

8   failed and/or refused to provide, and continue to delay, fail, and/or refuse to provide, the

9   benefits due under the aforesaid Policies to which plaintiff is entitled.

10   27.   Defendants' refusals to provide benefits to which plaintiff is entitled under the

11   aforesaid Policies constitute material breaches of defendants' contractual obligations to

12   plaintiff under said Policies.

13   28.   As a proximate result of the breaches by defendants, and each of them, plaintiff

14   has suffered damages in an amount in excess of the jurisdictional minimum of this court and

15   to be proven at the time of trial.

16   ### THIRD CAUSE OF ACTION

17   (Declaratory Relief Against All Defendants)

18   29.   Plaintiff incorporates by reference paragraphs 1 through 28 above as though

19   fully set forth herein.

20   30.   An actual controversy has arisen and now exists between plaintiff and

21   defendants in that plaintiff contends and defendants deny the following:

22   a.   That defendants are obligated to defend and indemnify plaintiff under

23   said Policies; and,

24   b.   That defendants are obligated to pay for the cost of plaintiff's defense in

25   the Lawsuits and to pay expenses for repairs and other settlement costs in connection with the

26   Lawsuits.

27   ///

28   ///

/ / /

31.     Plaintiff requires a judicial determination of the respective rights and duties of the parties with respect to the above controversy. In particular, plaintiff desires a declaration that: (1) that defendants are obligated to defend and indemnify plaintiff under said Policies with respect to the Lawsuits; and (2) that defendants are obligated to pay for the cost of plaintiff's defense in the Lawsuits and to pay expenses for repairs and other settlement costs in connection with the Lawsuits. Such a declaration is necessary and appropriate at this time in order that plaintiff may ascertain its legal rights and duties under the Policies.

WHEREFORE, plaintiff prays for judgment against defendants as follows:

### FOR THE FIRST CAUSE OF ACTION

1.     For damages in an amount in excess of the jurisdictional minimum of this court;

2.     For attorneys' fees pursuant to <u>Brandt v. Superior Court</u> (1985) 37 Cal.3d 813;

3.     For exemplary damages, in an amount to be proved at trial;

4.     For costs of suit incurred herein; and

5.     For such other and further relief as the court deems just and proper.

### FOR THE SECOND CAUSE OF ACTION

1.     For damages in an amount in excess of the jurisdictional minimum of this court;

2.     For costs of suit incurred herein; and

3.     For such and other further relief as the court deems just and proper.

### FOR THE THIRD CAUSE OF ACTION

1.     For a judicial determination of the rights and duties of the parties under the Policies;

2.     For a judicial determination that defendants are obligated to defend and indemnify plaintiff under said Policies;

---

7

COMPLAINT

CM-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Scott W. Sonne, State Bar No. 067618<br>LUCE, FORWARD, HAMILTON & SCRIPPS LLP<br>600 West Broadway, Suite 2600<br>San Diego, CA 92101<br>TELEPHONE NO.: (619) 236-1414   FAX NO. (Optional): (619) 645-5347<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): Plaintiff D.R. Horton Los Angeles Holding Co., Inc. | FILED<br>BUSINESS OFFICE 13<br><br>2010 JAN 5 P 12: 16 |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO<br>STREET ADDRESS: 330 West Broadway<br>MAILING ADDRESS: 330 West Broadway<br>CITY AND ZIP CODE: San Diego, CA 92101<br>BRANCH NAME: Central | |

| PLAINTIFF/PETITIONER: D.R. Horton Los Angeles Holding Co., Inc. | CASE NUMBER:<br>37-2010-00083766-CU-IC-CTL |
|---|---|
| DEFENDANT/RESPONDENT: American Safety Indemnity Company | JUDICIAL OFFICER: |

| NOTICE OF RELATED CASE | DEPT.: |
|---|---|

*Identify, in chronological order according to date of filing, all cases related to the case referenced above.*

1.   a.   Title: D.R. Horton Los Angeles Holding Co., Inc. v. American Safety Indemnity Company

   b.   Case number: GIC 817050

   c.   Court: ☒  same as above
                ☐  other state or federal court *(name and address):*

   d.   Department: 66

   e.   Case type: ☐  limited civil ☒  unlimited civil ☐  probate ☐  family law ☐  other *(specify):*

   f.   Filing date: 11/02/03

   g.   Has this case been designated or determined as "complex?"   ☐   Yes   ☒   No

   h.   Relationship of this case to the case referenced above *(check all that apply):*

   ☒   involves the same parties and is based on the same or similar claims.

   ☐   arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

   ☐   involves claims against, title to, possession of, or damages to the same property.

   ☐   is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

           ☐   Additional explanation is attached in attachment 1h

   i.   Status of case:

   ☐   pending

   ☒   dismissed ☒  with ☐  without prejudice

   ☐   disposed of by judgment

2.   a.   Title:

   b.   Case number:

   c.   Court: ☐  same as above
                ☐  other state or federal court *(name and address):*

   d.   Department:

Form Approved for Optional Use<br>
Judicial Council of California<br>
CM-015 [Rev. July 1, 2007]

**NOTICE OF RELATED CASE**

Page 1 of 3<br>
Cal. Rules of Court, rule 3.300<br>
www.courtinfo.ca.gov

American LegalNet, Inc.<br>
www.FormsWorkflow.com

CM-015

| PLAINTIFF/PETITIONER:   D.R. Horton Los Angeles Holding Co., Inc. | CASE NUMBER: |
| DEFENDANT/RESPONDENT:  American Safety Indemnity Company | |

2. *(continued)*

    e. Case type: ☐ limited civil ☐ unlimited civil ☐ probate ☐ family law ☐ other *(specify)*:

    f. Filing date:

    g. Has this case been designated or determined as "complex?" ☐ Yes ☐ No

    h. Relationship of this case to the case referenced above *(check all that apply)*:

        ☐ involves the same parties and is based on the same or similar claims.

        ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

        ☐ involves claims against, title to, possession of, or damages to the same property.

        ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

            ☐ Additional explanation is attached in attachment 2h

    i. Status of case:

        ☐ pending

        ☐ dismissed ☐ with ☐ without prejudice

        ☐ disposed of by judgment

3.   a. Title:

    b. Case number:

    c. Court: ☐ same as above

        ☐ other state or federal court *(name and address)*:

    d. Department:

    e. Case type: ☐ limited civil ☐ unlimited civil ☐ probate ☐ family law ☐ other *(specify)*:

    f. Filing date:

    g. Has this case been designated or determined as "complex?" ☐ Yes ☐ No

    h. Relationship of this case to the case referenced above *(check all that apply)*:

        ☐ involves the same parties and is based on the same or similar claims.

        ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

        ☐ involves claims against, title to, possession of, or damages to the same property.

        ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

            ☐ Additional explanation is attached in attachment 3h

    i. Status of case:

        ☐ pending

        ☐ dismissed ☐ with ☐ without prejudice

        ☐ disposed of by judgment

4. ☐ Additional related cases are described in Attachment 4. Number of pages attached: _____

Date: January 15, 2010

Scott W. Sonne
_____
    (TYPE OR PRINT NAME OF PARTY OR ATTORNEY)

▶ _____
    (SIGNATURE OF PARTY OR ATTORNEY)

**NOTICE OF RELATED CASE**

American LegalNet, Inc.
www.FormsWorkflow.com

CM-015

| | |
|---|---|
| PLAINTIFF/PETITIONER:   D.R. Horton Los Angeles Holding Co., Inc. | CASE NUMBER: |
| DEFENDANT/RESPONDENT: American Safety Indemnity Company | |

## PROOF OF SERVICE BY FIRST-CLASS MAIL
### NOTICE OF RELATED CASE

*(NOTE: You cannot serve the Notice of Related Case if you are a party in the action. The person who served the notice must complete this proof of service. The notice must be served on all known parties in each related action or proceeding.)*

1.   I am at least 18 years old and **not a party to this action.** I am a resident of or employed in the county where the mailing took place, and my residence or business address is *(specify):*

2.   I served a copy of the *Notice of Related Case* by enclosing it in a sealed envelope with first-class postage fully prepaid and *(check one):*

   a. ☐   deposited the sealed envelope with the United States Postal Service.

   b. ☐   placed the sealed envelope for collection and processing for mailing, following this business's usual practices, with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

3.   The *Notice of Related Case* was mailed:

   a.  on *(date):*

   b.  from *(city and state):*

4.   The envelope was addressed and mailed as follows:

   a.  Name of person served:             c.  Name of person served:

      Street address:                      Street address:

      City:                                   City:

      State and zip code:               State and zip code:

   b.  Name of person served:             d.  Name of person served:

      Street address:                      Street address:

      City:                                   City:

      State and zip code:                State and zip code:

☐   Names and addresses of additional persons served are attached. *(You may use form POS-030(P).)*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

_____   ▶   _____
(TYPE OR PRINT NAME OF DECLARANT)                        (SIGNATURE OF DECLARANT)

CM-015 [Rev. July 1, 2007]          **NOTICE OF RELATED CASE**          Page 3 of 3

American LegalNet, Inc.
www.FormsWorkflow.com

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | |
|---|---|
| STREET ADDRESS:   330 West Broadway | |
| MAILING ADDRESS:   330 West Broadway | |
| CITY AND ZIP CODE:   San Diego, CA 92101 | |
| BRANCH NAME:   Central | |
| TELEPHONE NUMBER:   (619) 450-7073 | |

| PLAINTIFF(S) / PETITIONER(S):     D.R. Horton Los Angeles Holding Co., Inc. |
|---|

| DEFENDANT(S) / RESPONDENT(S):  American Safety Indemnity Company |
|---|

| D.R. HORTON LOS ANGELES HOLDING CO., INC. VS. AMERICAN SAFETY INDEMNITY COMPANY | |
|---|---|
| **NOTICE OF CASE ASSIGNMENT** | CASE NUMBER:<br>37-2010-00083766-CU-IC-CTL |

Judge:  Steven R. Denton                                            Department: C-73

**COMPLAINT/PETITION FILED:** 01/15/2010

**CASES ASSIGNED TO THE PROBATE DIVISION ARE NOT REQUIRED TO COMPLY WITH THE CIVIL REQUIREMENTS LISTED BELOW**

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT).

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

**TIME STANDARDS:** The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil consists of all cases except: Small claims appeals, petitions, and unlawful detainers.

**COMPLAINTS:** Complaints must be served on all named defendants, and a CERTIFICATE OF SERVICE (SDSC CIV-345) filed within 60 days of filing. This is a mandatory document and may not be substituted by the filing of any other document.

**DEFENDANT'S APPEARANCE:** Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than a 15 day extension which must be in writing and filed with the Court.)

**DEFAULT:** If the defendant has not generally appeared and no extension has been granted, the plaintiff must request default within 45 days of the filing of the Certificate of Service.

THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO LITIGATION, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. MEDIATION SERVICES ARE AVAILABLE UNDER THE DISPUTE RESOLUTION PROGRAMS ACT AND OTHER PROVIDERS. SEE ADR INFORMATION PACKET AND STIPULATION.

YOU MAY ALSO BE ORDERED TO PARTICIPATE IN ARBITRATION PURSUANT TO CCP 1141.10 AT THE CASE MANAGEMENT CONFERENCE. THE FEE FOR THESE SERVICES WILL BE PAID BY THE COURT IF ALL PARTIES HAVE APPEARED IN THE CASE AND THE COURT ORDERS THE CASE TO ARBITRATION PURSUANT TO CCP 1141.10. THE CASE MANAGEMENT CONFERENCE WILL BE CANCELLED IF YOU FILE FORM SDSC CIV-359 PRIOR TO THAT HEARING

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

CASE NUMBER: 37-2010-00083766-CU-IC-CTL      CASE TITLE: D.R. Horton Los Angeles Holding Co., Inc. vs. American Safe

## NOTICE TO LITIGANTS/ADR INFORMATION PACKAGE

You are required to serve a copy of this Notice to Litigants/ADR Information Package and a copy of the blank Stipulation to Alternative Dispute Resolution Process (received from the Civil Business Office at the time of filing) with a copy of the Summons and Complaint on all defendants in accordance with San Diego Superior Court Rule 2.1.5, Division II and CRC Rule 201.9.

## ADR POLICY

It is the policy of the San Diego Superior Court to strongly support the use of Alternative Dispute Resolution ("ADR") in all general civil cases. The court has long recognized the value of early case management intervention and the use of alternative dispute resolution options for amenable and eligible cases. The use of ADR will be discussed at all Case Management Conferences. It is the court's expectation that litigants will utilize some form of ADR – i.e. the court's mediation or arbitration programs or other available private ADR options as a mechanism for case settlement before trial

## ADR OPTIONS

**1) CIVIL MEDIATION PROGRAM:** The San Diego Superior Court Civil Mediation Program is designed to assist parties with the early resolution of their dispute. All general civil independent calendar cases, including construction defect, complex and eminent domain cases are eligible to participant in the program. Limited civil collection cases are not eligible at this time. San Diego Superior Court Local Rule 2.31, Division II addresses this program specifically. Mediation is a non- binding process in which a trained mediator 1) facilitates communication between disputants, and 2) assists parties in reaching a mutually acceptable resolution of all or part of their dispute. In this process, the mediator carefully explores not only the relevant evidence and law, but also the parties' underlying interests, needs and priorities. The mediator is not the decision-maker and will not resolve the dispute – the parties do. Mediation is a flexible, informal and confidential process that is less stressful than a formalized trial. It can also save time and money, allow for greater client participation and allow for more flexibility in creating a resolution.

**Assignment to Mediation, Cost and Timelines:** Parties may stipulate to mediation at any time up to the CMC or may stipulate to mediation at the CMC. Mediator fees and expenses are split equally by the parties, unless otherwise agreed. Mediators on the court's approved panel have agreed to the court's payment schedule for county-referred mediation: $150.00 per hour for each of the first two hours and their individual rate per hour thereafter. Parties may select any mediator, however, the court maintains a panel of court-approved mediators who have satisfied panel requirements and who must adhere to ethical standards. All court-approved mediator fees and other policies are listed in the Mediator Directory at each court location to assist parties with selection. **Discovery:** Parties do not need to conduct full discovery in the case before mediation is considered, utilized or referred. **Attendance at Mediation:** Trial counsel, parties and all persons with full authority to settle the case must personally attend the mediation, unless excused by the court for good cause.

**2) JUDICIAL ARBITRATION:** Judicial Arbitration is a binding or non-binding process where an arbitrator applies the law to the facts of the case and issues an award. The goal of judicial arbitration is to provide parties with an adjudication that is earlier, faster, less formal and less expensive than trial. The arbitrator's award may either become the judgment in the case if all parties accept or if no trial de novo is requested within the required time. Either party may reject the award and request a trial de novo before the assigned judge if the arbitration was non-binding. If a trial de novo is requested, the trial will usually be scheduled within a year of the filing date.

**Assignment to Arbitration, Cost and Timelines:** Parties may stipulate to binding or non-binding judicial arbitration or the judge may order the matter to arbitration at the case management conference, held approximately 150 days after filing, if a case is valued at under $50,000 and is "at issue". The court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. In addition, if parties select an arbitrator from the court's panel, the court will pay the arbitrator's fees. Superior Court Local Rules Division II Chapter 3 and Code of Civil Procedure 1141 et seq. address this program specifically.

**3) SETTLEMENT CONFERENCES:** The goal of a settlement conference is to assist the parties in their efforts to negotiate a settlement of all or part of the dispute. Parties may, at any time, request a settlement conference before the judge assigned to their case; request another assigned judge or a pro tem to act as settlement officer; or may privately utilize the services of a retired judge. The court may also order a case to a mandatory settlement conference prior to trial before the court's assigned Settlement Conference judge.

**4) OTHER VOLUNTARY ADR:** Parties may voluntarily stipulate to private ADR options outside the court system including private binding arbitration, private early neutral evaluation or private judging at any time by completing the "Stipulation to Alternative Dispute Resolution Process" which is included in this ADR package. Parties may also utilize mediation services offered by programs that are partially funded by the county's Dispute Resolution Programs Act. These services are available at no cost or on a sliding scale based on need. For a list of approved DRPA providers, please contact the County's DRPA program office at (619) 238-2400.

**ADDITIONAL ADR INFORMATION:** For more information about the Civil Mediation Program, please contact the Civil Mediation Department at (619) 515-8908. For more information about the Judicial Arbitration Program, please contact the Arbitration Office at (619) 531-3818. For more information about Settlement Conferences, please contact the Independent Calendar department to which your case is assigned. Please note that staff can only discuss ADR options and cannot give legal advice.

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | FOR COURT USE ONLY |
|---|---|
| STREET ADDRESS:      330 West Broadway | |
| MAILING ADDRESS:      330 West Broadway | |
| CITY, STATE, & ZIP CODE: San Diego, CA  92101-3827 | |
| BRANCH NAME:      Central | |

PLAINTIFF(S):   D.R. Horton Los Angeles Holding Co., Inc.

DEFENDANT(S): American Safety Indemnity Company

SHORT TITLE:    D.R. HORTON LOS ANGELES HOLDING CO., INC. VS. AMERICAN SAFETY INDEMNITY COMPANY

| STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION PROCESS (CRC 3.221) | CASE NUMBER: 37-2010-00083766-CU-IC-CTL |
|---|---|

Judge: Steven R. Denton                                         Department: C-73

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution process. Selection of any of these options will not delay any case management time-lines.

☐ Court-Referred Mediation Program                 ☐ Court-Ordered Nonbinding Arbitration

☐ Private Neutral Evaluation                              ☐ Court-Ordered Binding Arbitration (Stipulated)

☐ Private Mini-Trial                                            ☐ Private Reference to General Referee

☐ Private Summary Jury Trial                            ☐ Private Reference to Judge

☐ Private Settlement Conference with Private Neutral    ☐ Private Binding Arbitration

☐ Other (specify): _____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name) _____

_____

_____

Alternate: (mediation & arbitration only) _____

Date: _____          Date: _____

Name of Plaintiff                                             Name of Defendant

Signature                                                        Signature

Name of Plaintiff's Attorney                             Name of Defendant's Attorney

Signature                                                        Signature

(Attach another sheet if additional names are necessary). It is the duty of the parties to notify the court of any settlement pursuant to California Rules of Court, 3.1385. Upon notification of the settlement the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court and all un-served, non-appearing or actions by names parties are dismissed.

**IT IS SO ORDERED.**

Dated:  01/15/2010

_____
JUDGE OF THE SUPERIOR COURT

SDSC CIV-359 (Rev 01-07)            **STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION**            Page: 1

3

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address):
Scott W. Sonne, State Bar No. 06___8
LUCE, FORWARD, HAMILTON & SCRIPPS LLP
600 West Broadway, Suite 2600
San Diego, CA 92101
TELEPHONE NO.: (619) 236-1414   FAX NO.: (619) 645-5347
ATTORNEY FOR (Name): Plaintiff D.R. Horton Los Angeles Holding Co., Inc.

FOR COURT USE ONLY

FILED
CIVIL BUSINESS OFFICE 30

2010 JAN 15 P 12: 15

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS: 330 West Broadway
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME: Central Division

CASE NAME: D.R. Horton Los Angeles Holding Co., Inc. v. American Safety Indemnity Company

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: 37-2010-00083766-CU-IC-CTL |
|---|---|---|
| ☒ Unlimited (Amount demanded exceeds $25,000) ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter  ☐ Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE:  DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☒ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (*not specified above*) (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (*not specified above*) (43)

2. This case ☐ is   ☒ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties   d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel   e. ☐ Coordination with related actions pending in one or more courts issues that will be time-consuming to resolve   in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence   f. ☐ Substantial postjudgment judicial supervision
3. Remedies sought (*check all that apply*): a. ☒ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☐ punitive
4. Number of causes of action (*specify*): Three
5. This case ☐ is   ☒ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (*You may use form CM-015)*
Date: January 15, 2010
Scott W. Sonne
_____
(TYPE OR PRINT NAME)   (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courtinfo.ca.gov*

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) (*if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto*)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability (*not asbestos or toxic/environmental*) (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) (*not civil harassment*) (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36) Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract (*not unlawful detainer or wrongful eviction*)
  Contract/Warranty Breach–Seller Plaintiff (*not fraud or negligence*)
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage (*not provisionally complex*) (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property (*not eminent domain, landlord/tenant, or foreclosure*)

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential*)

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims (*arising from provisionally complex case type listed above*) (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment (*non-domestic relations*)
  Sister State Judgment
  Administrative Agency Award (*not unpaid taxes*)
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified above*) (42)
  Declaratory Relief Only
  Injunctive Relief Only (*non-harassment*)
  Mechanics Lien
  Other Commercial Complaint Case (*non-tort/non-complex*)
  Other Civil Complaint (*non-tort/non-complex*)

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition (*not specified above*) (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

**CIVIL CASE COVER SHEET**

American LegalNet, Inc.
www.FormsWorkflow.com

1  Scott W. Sonne, State Bar #067618
   LUCE, FORWARD, HAMILTON & SCRIPPS LLP
2  600 West Broadway, Suite 2600
   San Diego, California 92101-3391
3  Telephone No: 619-236-1414
   Facsimile No: 619-645-5347
4

5  Attorneys for Plaintiff
   D.R. HORTON LOS ANGELES HOLDING CO., INC.
6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                     FOR THE COUNTY OF SAN DIEGO

10

| | |
|---|---|
| 11  D.R. HORTON LOS ANGELES HOLDING CO., INC. | Case No.: 37-2010-00083766-CU-IC-CTL |
| 12              Plaintiff, | Judge Steven R. Denton<br>Dept. 73 |
| 13        v. | **PROOF OF SERVICE** |
| 14  AMERICAN SAFETY INDEMNITY COMPANY, and DOES 1 through 5, inclusive, | Complaint Filed:       January 15, 2010 |
| 16              Defendants. | |

18        At the time of service, I was over 18 years of age and not a party to this action.  I am

19  employed in the County of San Diego, State of California.  My business address is 600 West

20  Broadway, Suite 2600, San Diego, California 92101-3372.

21        On January 19, 2010, I served true copies of the following document(s) described as:

22  •  **CIVIL CASE COVER SHEET**

23  •  **SUMMONS**

24  •  **COMPLAINT FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, BREACH OF CONTRACT,**
25     **AND DECLARATORY RELIEF**

26  •  **NOTICE OF RELATED CASE**

27  •  **NOTICE OF CASE ASSIGNMENT**

28  •  **NOTICE TO LITIGANTS/ADR INFORMATION PACKAGE**

                                    1

- **STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION PROCESS**

on the interested parties in this action as follows:

American Safety Indemnity Company           *Agent for Service of Process*
c/o National Corporate Research, Ltd.
523 West 6th Street, Suite 544
Los Angeles, CA 90014

☐  **BY U. S. MAIL:** I placed a copy in a separate envelope, with postage fully prepaid, for the recipient named hereunder for collection and mailing on the below indicated day following the ordinary business practices at Luce, Forward, Hamilton & Scripps LLP. I certify I am familiar with the ordinary business practices of my place of employment with regard to collection for mailing with the United States Postal Service. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit or mailing affidavit.

☐  **FACSIMILE:** I sent a copy via facsimile transmission to the facsimile number(s) listed below. The facsimile machine I used complied with California Rules of Court, Rule 2003 and no error was reported by machine. Pursuant to California Rules of Court, Rule 2006(d), I caused the machine to print a transmission record of the transmission, a copy of which is attached to this declaration.

☐  **BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address nlautzenheiser@luce.com to the persons at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒  **BY HAND DELIVERY.** I placed a copy in a separate envelope addressed to each addressee as indicated below, and caused such envelope(s) to be delivered via CalExpress Messenger Service for personal service.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 19, 2010, at San Diego, California.

*Nicole Lautzenheiser*
Nicole Lautzenheiser
101209285.1

**EXHIBIT 2**

Business Search - Business Entities - Business Programs                    Page 1 of 1



## Business Entity Detail

Data is updated weekly and is current as of Friday, February 19, 2010. It is not a complete or certified record

| | |
|---|---|
| Entity Name: | D.R. HORTON LOS ANGELES HOLDING COMPANY, INC. |
| Entity Number: | C1931494 |
| Date Filed: | 03/30/1995 |
| Status: | ACTIVE |
| Jurisdiction: | CALIFORNIA |
| Entity Address: | 301 COMMERCE STREET, SUITE 500 |
| Entity City, State, Zip: | FORT WORTH TX 76102 |
| Agent for Service of Process: | C T CORPORATION SYSTEM |
| Agent Address: | 818 WEST SEVENTH ST |
| Agent City, State, Zip: | LOS ANGELES CA 90017 |

* Indicates the information is not contained in the California Secretary of State's database.

- If the status of the corporation is "Surrender," the agent for service of process is automatically revoked. Corporations Code **section 2114** for information relating to service upon corporations that have surrend
- For information on checking or reserving a name, refer to **Name Availability**.
- For information on ordering certificates, copies of documents and/or status reports or to request a more **Information Requests**.
- For help with searching an entity name, refer to **Search Tips**.
- For descriptions of the various fields and status types, refer to **Field Descriptions and Status Definiti**

**Modify Search    New Search    Printer Friendly    Back to Search Results**

**Privacy Statement | Free Document Readers**

Copyright © 2010   California Secretary of State

### Business Entities (BE)

Online Services
  - Business Search
  - Disclosure Search
  - E-File Statements
  - Mail Processing Times

**Main Page**

**Service Options**

**Name Availability**

**Forms, Samples & Fees**

**Annual/Biennial Statements**

**Filing Tips**

**Information Requests**
(certificates, copies &
status reports)

**Service of Process**

**FAQs**

**Contact Information**

Resources
  - Business Resources
  - Tax Information
  - Starting A Business
  - International Business
    Relations Program

**Customer Alert**
(misleading business
solicitations)

1  ALEXANDER ROBERTSON, IV (State Bar No. 127042)
   JONATHAN S. VICK (State Bar No. 131704)
2  MARK J. UYENO (State Bar No. 189063)
   ROBERTSON & VICK, LLP
3  880 Hampshire Road, Suite B
   Westlake Village, California 91361
4  Telephone:     (805) 418-9900
   Facsimile:     (805) 418-9901
5

6  Attorneys for Plaintiffs

7

**FILED**
LOS ANGELES SUPERIOR COURT

FEB 27 2009

JOHN A. CLARKE, CLERK

BY MARY GARCIA, DEPUTY

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   FOR THE COUNTY OF LOS ANGELES

10                        CENTRAL DISTRICT

11  CHANG O. KIM; YUN HA KANG; JORGE ) CASE NO.   BC407614
    A. RODRIGUEZ; HANI AGBAN;        )
12  JACQUELENE AGBAN; JORGE ARCILA;  ) PLAINTIFFS' COMPLAINT FOR:
    LILIANNA ARCILA; IGOR BAGMANIAN; )
13  ANGELA BAGMANIAN; RODOLFO &      ) 1.   FRAUDULENT CONCEALMENT;
    LILIAN BAYAN TRUST; GREG S.      ) 2.   INVERSE CONDEMNATION
14  BORJA AND MABEL M. BORJA AB      ) 3.   DANGEROUS CONDITION OF
    LIVING TRUST DATED MARCH 3,      )      PUBLIC PROPERTY - GOV.
15  2005; EDWARD CHANEY; AGNES J.    )      CODE § 835;
    CHANEY; JONGWHA CHOUNG; DONGJU   ) 4.   PRIVATE NUISANCE;
16  CHOUNG; ANTONIO DE LA CRUZ; NIDA ) 5.   NEGLIGENCE OF AN
    DE LA CRUZ; CYNTHIA FLORES;      )      INDEPENDENT CONTRACTOR -
17  DUSTIN FOLKES; ANDREA FOLKES;    )      GOV. CODE § 815.4; AND
    MELISSA FRANCISCO; ARNOLD        ) 6.   NEGLIGENCE PER SE - CIVIL
18  FRANCISCO; CARRIE GIPI; IIAN     )      CODE § 896
    GIPI; GEORGE GIPSON; BRIANNE     ) 7.   NEGLIGENT
19  THOMPSON; TIMOTHY HARRISON; ANNA )      MISREPRESENTATION
    HARRISON; JOHN HUNT; SHARON K.   )
20  HUNT; MARK INTRAVARTOLO; OLIVIA  ) DEMAND FOR JURY TRIAL
    INTRAVARTOLO; JULIE KIM; FARID   )
21  A. KRIZMAN; NEVIN ROFAIL; CHUNG  )
    S. LEE; KEVIN LITTLE; JENNIFER   )
22  LITTLE; ASUNCHION LOUALHATI;     )
    EDGAR LOUALHATI; LAZAR MACOVSKI; )
23  SUZANA MACOVSKI; DENNIS MOORE;   )
    ANN MOORE; GEORGE OCHOA; DENISE  )
24  OCHOA; PRITAL PATEL; SWETA       )
    PATEL; MARIANO SALVADOR; EVA     )
25  SALVADOR; ANTHONY SANCHEZ; EMMA  )
    SANCHEZ; MARK SNCHEZ; LILLY      )
26  SANCHEZ; NILAIDA SEPINA; CELSO   )
    SEPINA; JONG SEUB SHIM; SEAN M.  )
27  SONG; ISABEL SORIA; ERNESTO      )
    SUMAMPONG; JEAN SUMAMPONG; SARAH )
28  THEELE; STELLA TORRES; ANGELITO  )
    TORRES; WILLIAM TWILLEY; VALMAR  )

ROBERTSON
& VICK, LLP

                              - 1 -
2/27/09 10:51 AMS
5086\5086.80\p\AMS8997.WPD              COMPLAINT

PROPERTIES; ANTHONY VECE;
DUANGDUAN VECE; NUSRAT SHEIKH;
SAJJID SHEIKH; TIMOTHY
SPAULDING; JULIA SPAULDING;
RONALD UY; LEA UY; KYOHOON LEE;
MIRA LEE; JOSEFINO C. NARVAEZ;
EVITHA T. NARVAEZ; TOMAS VALDEZ;
SIMEON YAN; OI WAH YAN; JOSEPH
SCHREIER; JENIFER ROSE-SCHREIER;
MICHAEL HAN; JINHEE HAN; LIJIA
JIN; CHUNYAN HE; MARVIN WEBER;
SANDY DORN; CYNTHIA ONGJOCO;
DANIEL LOPEZ; MICHAEL CORONA;
and ROBIN CORONA,

           Plaintiffs,

    vs.

CITY OF SANTA CLARITA, municipal
corporation; D.R. HORTON LOS
ANGELES HOLDING COMPANY, INC.,
a California corporation; ZEPHYR
NEWHALL, L.P., a California
limited partnership; ZEPHYR
PARTNERS, LLC., a California
limited liability company;
DRAPER PARTNERS, a California
general partnership; and DOES 1
through 25, inclusive,

           Defendants.

Plaintiffs allege as follows:

**PARTIES**

1.   At all times relevant herein Plaintiffs, CHANG O. KIM,

YUN HA KANG, JORGE A. RODRIGUEZ, HANI AGBAN, JACQUELENE AGBAN,

JORGE ARCILA, LILIANNA ARCILA, IGOR BAGMANIAN, ANGELA BAGMANIAN,

RODOLFO & LILIAN BAYAN TRUST, GREG S. BORJA AND MABEL M. BORJA AB

LIVING TRUST DATED MARCH 3, 2005, EDWARD CHANEY, AGNES J. CHANEY,

JONGWHA CHOUNG, DONGJU CHOUNG, ANTONIO DE LA CRUZ, NIDA DE LA

CRUZ, CYNTHIA FLORES, DUSTIN FOLKES, ANDREA FOLKES, MELISSA

FRANCISCO, ARNOLD FRANCISCO, CARRIE GIPI, IIAN GIPI, GEORGE

- 2 -

1  GIPSON, BRIANNE THOMPSON, TIMOTHY HARRISON, ANNA HARRISON, JOHN
2  HUNT, SHARON K. HUNT, MARK INTRAVARTOLO, OLIVIA INTRAVARTOLO,
3  JULIE KIM, FARID A. KRIZMAN, NEVIN ROFAIL, CHUNG S. LEE, KEVIN
4  LITTLE, JENNIFER LITTLE, ASUNCHION LOUALHATI, EDGAR LOUALHATI,
5  LAZAR MACOVSKI, SUZANA MACOVSKI, DENNIS MOORE, ANN MOORE, GEORGE
6  OCHOA, DENISE OCHOA, PRITAL PATEL, SWETA PATEL, MARIANO SALVADOR,
7  EVA SALVADOR, ANTHONY SANCHEZ, EMMA SANCHEZ, MARK SNCHEZ, LILLY
8  SANCHEZ, NILAIDA SEPINA, CELSO SEPINA, JONG SEUB SHIM, SEAN M.
9  SONG, ISABEL SORIA, ERNESTO SUMAMPONG, JEAN SUMAMPONG, SARAH
10 THEELE, STELLA TORRES, ANGELITO TORRES, WILLIAM TWILLEY, VALMAR
11 PROPERTIES, ANTHONY VECE, DUANGDUAN VECE, NUSRAT SHEIKH, SAJJID
12 SHEIKH, TIMOTHY SPAULDING, JULIA SPAULDING, RONALD UY, LEA UY,
13 KYOHOON LEE, MIRA LEE, JOSEFINO C. NARVAEZ, EVITHA T. NARVAEZ,
14 TOMAS VALDEZ, SIMEON YAN, OI WAH YAN, JOSEPH SCHREIER, JENIFER
15 ROSE-SCHREIER, MICHAEL HAN, JINHEE HAN, LIJIA JIN, CHUNYAN HE,
16 MARVIN WEBER, SANDY DORN, CYNTHIA ONGJOCO, DANIEL LOPEZ, MICHAEL
17 CORONA, and ROBIN CORONA, (hereinafter collectively referred to
18 as "HOMEOWNERS"), were and are owners of certain residential real
19 property located within Tract Nos. 48892 & 48892-01, City of
20 Santa Clarita, County of Los Angeles, State of California,
21 commonly known as the "Canyon Gate" development.  The HOMEOWNERS'
22 addresses are listed on Exhibit "A" attached hereto.
23      2.   Defendant, CITY OF SANTA CLARITA (hereinafter referred
24 to as the "CITY") was and is a municipal corporation, with its
25 principal place of business located at 23920 Valencia Boulevard,
26 Suite 300, City of Santa Clarita, State of California.
27      3.   Defendant, ZEPHYR NEWHALL, L.P. (hereinafter referred
28 to as "ZEPHYR"), is a California limited partnership, with its

ROBERTSON
& VICK, LLP

1  principal place of business located at 4100 MacArthur Boulevard,

2  #310, City of Newport Beach, State of California.  ZEPHYR's

3  general partner is ZEPHYR PARTNERS, LLC.  At all time relevant,

4  Robert S. Wilcox served as the manager of ZEPHYR PARTNERS, LLC.

5  Both ZEPHYR NEWHALL, L.P. and ZEPHYR PARTNERS, LLC. are referred

6  to collectively herein as "ZEPHYR".

7      4.   Defendant, DRAPER PARTNERS, is a California general

8  partnership (hereinafter referred to as "DRAPER") of which

9  Defendant, ZEPHYR PARTNERS, LLC., is its managing general

10  partner.  At all times relevant herein, Robert Christiano served

11  as the Manager of ZEPHYR PARTNERS, LLC.

12      5.   Defendant, D.R. HORTON LOS ANGELES HOLDING COMPANY,

13  INC. (hereinafter referred to as "D.R. HORTON"), was and is a

14  California corporation, with its principal place of business

15  located at 1901 Ascension Boulevard, Suite 100, City of

16  Arlington, State of Texas.

17      6.   The true names and capacities, whether individual,

18  corporate, associate or otherwise, of DOE Defendants 1 through

19  25, inclusive, are unknown to Plaintiffs at this time, who

20  therefore sue said Defendants by such fictitious names, and when

21  the true names and capacities of said Defendants are ascertained,

22  Plaintiffs will ask the Court to amend this Complaint

23  accordingly.  Plaintiffs are informed and believe, and therefore

24  allege, that each of the Defendants designated herein as a DOE is

25  responsible in some manner for the events and happenings herein

26  referred to, and caused injury and damage to Plaintiffs

27  proximately thereby as herein alleged.

28  ///

ROBERTSON
& VICK, LLP

2/24/09 4:01 AMS
5086\5086.80\p\AMS8997.WPD                    COMPLAINT

**JURISDICTION AND VENUE**

7.   The amount in controversy herein, exclusive of the attorneys' fees, interest and costs, exceeds the sum of $25,000.

8.   All of the events and transactions herein alleged resulted in damage to the HOMEOWNERS' interests in real property located in the City of Santa Clarita, County of Los Angeles, State of California, zip code 91321.

**GENERAL ALLEGATIONS**

9.   HOMEOWNERS are informed and believe, and thereon allege, that at all times relevant herein, ZEPHYR, DRAPER, D.R. HORTON and DOES 1 through 25 owned, held a possesory and/or non-possesory interest in, or otherwise controlled all or part of approximately 61.3 acres of real property, known as Tract Nos. 48892 & 48892-01, commonly known as the Canyon Gate development in the City of Santa Clarita, State of California.

10.   On or about November 28, 2000, the City Council approved ZEPHYR's proposed project for the Canyon Gate development of one hundred and fifty (150) detached single family homes.   The City Council conditioned the approval of Tract 48892 with the construction of Golden Valley Road, between Sierra Highway and Green Mountain Drive.   At the time of the approval of the project, the design proposed by ZEPHYR to construct the extension of Golden Valley Road was estimated to cost approximately $7,500,000.   The construction of the extension of Golden Valley Road between Sierra Highway and Green Mountain Drive represented the final missing link in the CITY's "Cross-Valley Connector", which serves as a thoroughfare through the CITY between Interstate 5 and Highway 14.

ROBERTSON & VICK, LLP

- 5 -

1      11.  The City Council's approval of Tentative Tract Map

2  48892 imposed General Condition No. 9, which provided that "the

3  grant shall not be effective for any purpose until the permittee

4  [ZEPHYR] and the owner of the property involved (if other than

5  the permittee) [D.R. HORTON] have filed with the Director of

6  Planning and Building Services, their affidavit stating that they

7  are aware of, and agree to accept, all of the conditions of this

8  grant."  Further, General Condition No. 13 required the applicant

9  "shall provide a disclosure statement on the title report of each

10  residential property informing all future homeowners of all known

11  geological hazards."

12      12.  On or about April 10, 2001, the CITY and ZEPHYR entered

13  into a "Funding Agreement for Golden Valley Road/VTTM 48892

14  Costs" (hereinafter referred to as the "Funding Agreement"), a

15  copy of which is attached hereto as Exhibit "B."  The Funding

16  Agreement states that "[I]t is in the best interest of the City

17  to have GVR [Golden Valley Road] improved by 48892 the cost

18  shared by both the applicant [ZEPHYR] and the City."  Further, the

19  Funding Agreement provided that "[I]t is understood that 48892

20  would be responsible to pay the cost to improve GVR estimated at

21  $7,500,000."  The Funding Agreement further provided that the

22  CITY was to provide a reimbursement of $4,260,000 of the costs to

23  construct the Golden Valley Road extension to Zephyr.

24      13.  Additionally, the Funding Agreement provided that in

25  exchange for ZEPHYR agreeing to construct the extension of Golden

26  Valley Road for the CITY, the CITY "agrees to fast track the

27  grading plan and final map improvement plans for 48892.

28  ///

1 Fast track shall be defined as the CITY placing its highest

2 priority on the processing of the above-referenced plans."

3     14.  The Funding Agreement also provided that the amount

4 that the CITY agreed to reimburse ZEPHYR was to be separated into

5 three components, consisting of (1) the cost of the roadway and

6 improvements, (2) the cost of grading, and (3) soft costs.  With

7 respect to the cost of the grading, the Funding Agreement

8 identified that these costs would include the cost for mass

9 excavation, landslide removal/removal and recompaction, and shear

10 key/buttress work.  The Funding Agreement also stated that the

11 construction of the extension of Golden Valley Road through Tract

12 48892 was based upon the technical analysis prepared by Allan E.

13 Seward Engineering Geology, Inc., dated June 19, 2000, with an

14 addendum dated October 16, 2000, and that based upon this

15 geologist's recommendations, "This design will stabilize both GVR

16 and the development."  Finally, the Funding Agreement provided

17 that in the event the extension of Golden Valley Road exceeded

18 $7,500,000, the developer would be responsible for 100% of any

19 excess costs.

20     15.  On our about May 27, 2003, a "First Amendment to the

21 Funding Agreement" (hereinafter referred to as the "First

22 Amendment")was entered into between the CITY, ZEPHYR and D.R.

23 HORTON, a true and correct copy of which is attached hereto as

24 Exhibit "C".  The First Amendment increased the amount of

25 eligible Bridge & Thoroughfare credits from $4,260,000 to

26 $6,730,000.  Further, the First Amendment recited the fact that

27 D.R. HORTON was under contract to purchase Tract No. 48892 from

28 ZEPHYR and was at that time grading the site, installing

ROBERTSON
& VICK, LLP

1  improvements, managing the work and proceeding with the final map

2  for Tract No. 48892.  Finally, the First Amendment provided that

3  the CITY would reimburse ZEPHYR the sum of $4,260,000 and

4  $2,469,097 to D.R. HORTON as reimbursable costs to construct the

5  Golden Valley Road extension and the other improvements outside

6  of the road right-of-way, including the hiking trail, park and

7  preservation area.

8       16.  On or about August 8, 2001, ZEPHYR and DRAPER entered

9  into a Purchase Agreement and Escrow Instructions for the sale of

10  Tract Nos. 48892 & 48892-01 to D.R. HORTON, the nation's largest

11  home builder.

12      17.  The Plaintiffs are informed and believe, and thereon

13  allege, that the project civil engineer, Land Design Consultants,

14  Inc. ("LDC"), originally estimated the cost to improve Tract Nos.

15  48892 & 48892-01 to be $12,543,288 ($84,745 per lot).

16      18.  The Plaintiffs are further informed and believe, and

17  thereon allege, that ZEPHYR based its sale price to D.R. HORTON

18  upon LDC's revised estimate in January of 2001 of $101,507 per

19  lot.  However, In April of 2002, bids to perform the rough

20  grading and site improvements for the tracts came in at $114,973

21  per lot.  As a result, ZEPHYR negotiated a new deal with D.R.

22  HORTON fixing improvement costs at $109,175 per lot, which

23  allegedly was ZEPHYR's bottom line number to pay off its existing

24  debt on the project in order to deliver clear title to D.R.

25  HORTON.  The Plaintiffs are further informed and believe that as

26  part of this "new deal", in exchange for D.R. HORTON "eating" the

27  difference between $114,973 and $109,175 per lot, ZEPHYR agreed

28  to work for D.R. HORTON for free to lobby the CITY to eliminate

ROBERTSON
& VICK, LLP

- 8 -

1 certain conditions imposed upon the approval of the project in
2 order to reduce D.R. Horton's costs to develop the Canyon Gate
3 project.  As part of this "new deal", D.R. HORTON and ZEPHYR
4 agreed to share any cost savings in the development of the
5 project based upon an 80/20 split in favor of D.R. HORTON.
6 Accordingly, Plaintiffs allege that ZEPHYR and D.R. HORTON had a
7 vested financial interest in cutting costs for the engineering
8 and grading of the Canyon Gate project.

9     19.  The Plaintiffs are further informed and believe, and
10 thereon allege, that immediately prior to the close of escrow on
11 the sale of the tracts from ZEPHYR and DRAPER to D.R. HORTON, the
12 estimated costs to rough grade and improve the tracts was again
13 increased to $123,390 per lot and D.R. HORTON threatened to
14 cancel its purchase of the tracts.

15     20.  HOMEOWNERS further allege that on or about April 17,
16 2002, Robert Christiano, on behalf of ZEPHYR, wrote a letter to
17 the Army Corps of Engineers and the California Department of Fish
18 & Game, requesting modification of the conditions and permits
19 issued by those agencies for the Canyon Gate project.  In that
20 letter, Mr. Christiano stated:

21     "These service conditions, the project cost of
22     improvements and the actual contract price for all of
23     the City off-site conditions have pushed the cost of
24     improvements to approximately $17,760,000
25     ($120,000/lot).  The project cannot sustain the
26     requirements.  The builder cannot pay more as they
27     operate on a small margin.  The developer must pay off
28     the lenders it borrowed money from to deliver title to

ROBERTSON
& VICK, LLP

1  the builder and simply cannot eat a loss of $3,700,000.

2  Without relief the project will stop and be forced into

3  bankruptcy protection.

4      The developer has already agreed to reduce its sales

5  proceeds by $1,135,000.  The remaining $705,000 is being

6  forced on the builder.

7      This is a case of the parties deciding if a major

8  arterial highway is to be built and working together to get

9  it done.  The pain is to be shared by all parties as no one

10  party can sustain it all.  If the parties cannot agree, the

11  project will end up in bankruptcy court.  The site will

12  remain denuded and unstable with a huge shear key cut down

13  the middle.  That cannot be an alternative."

14      21.   HOMEOWNERS further allege that in an effort to reduce

15  the costs of developing the Canyon Gate project, ZEPHYR, DRAPER

16  and D.R. HORTON cut corners in the geotechnical engineering,

17  design, grading and excavation for these tracts, in an effort to

18  minimize the estimated cost overruns alleged above, and to

19  maximize their profits from the sale and development of these

20  tracts.

21      22.   The Plaintiffs are informed and believe, and thereon

22  allege, that escrow eventually closed and title to the property

23  transferred from ZEPHYR and DRAPER to D.R. HORTON on or about

24  July 14, 2003.

25      23.   Prior to December 1999, ZEPHYR retained Allan E. Seward

26  Engineering Geology, Inc. to serve as the geologist/geotechnical

27  consulting firm of record for the development of Tract 48892 &

28  48892-01 and to prepare recommendations for the grading of said

ROBERTSON
& VICK, LLP

- 10 -

1  tracts.  Seward's report, dated December 30, 1999, presented its
2  findings, conclusions and recommendations for the grading of the
3  tracts.  As part of his recommendations, Seward identified the
4  presence of a large landslide complex underlying the majority of
5  Tract 48892 & 48892-01, consisting of various shallow and deep-
6  seated landslides.  In order to mitigate and remediate this
7  landslide complex, Seward made various recommendations, including
8  the removal of the landslide debris, construction of shear keys
9  and buttresses, installation of a system of sub-drains and
10  backdrains, and the installation of soldier piles (a.k.a.
11  caissons) to provide stabilization of the existing landslide
12  complex prior to the excavation of soils that would expose the
13  existing slide planes beneath the ground surface during
14  construction of the recommended shear keys.
15      24.  Prior to April 2001, ZEPHYR retained Leighton &
16  Associates to replace Allan E. Seward Engineering Geology, Inc.
17  as the new geologist/geotechnical consulting firm of record for
18  Tract 48892 & 48892-01.  In its April 16, 2001 report, Leighton
19  adopted the previous findings, conclusions and grading
20  recommendations of Allan E. Seward Engineering Geology, Inc.
21  Specifically, this report repeated the recommendations made by
22  Allan E. Seward Engineering Geology, Inc. for the installation of
23  drilled shear pins (caissons) to provide the required factor-of-
24  safety for the stability of slopes to be constructed within the
25  tracts.
26      25.  However, on or about October 23, 2001, Leighton
27  modified its grading recommendations, which eliminated the shear
28  pins (caissons) it had previously recommended and as recommended

ROBERTSON
& VICK, LLP

2/24/09 4:01 AMS
5086\5086.80\p\AMS8997.WPD                COMPLAINT

1 by ZEPHYR's original geotechnical engineer, Allan E. Seward
2 Engineering Geology, Inc.  Further, Leighton's revised report
3 modified the shear key design.  HOMEOWNERS allege that the
4 deletion of the shear pins (caissons) from the grading
5 recommendations for the Canyon Gate project was an attempt by
6 ZEPHYR to reduce the costs of developing these tracts and to make
7 the sale of these tracts to D.R. HORTON appear more profitable to
8 ZEPHYR and appear more attractive to D.R. HORTON.

9     26.  On or about April 2001, the CITY retained Converse
10 Consultants, a geological and geotechnical consulting firm, to
11 conduct an on-going second party review of the findings,
12 conclusions and grading recommendations made by Leighton for the
13 rough grading of Tract 48892 & 48892-01.

14     27.  On or about March 7, 2002, ZEPHYR and DRAPER, as
15 sellers, and D.R. HORTON as the buyer, entered into a Third
16 Amendment to Purchase Agreement and Escrow Instructions, which
17 continued the close of escrow to 10 days after the Final Map was
18 recorded.  This amendment further recited that although escrow
19 had not yet closed on the tracts, that D.R. HORTON had begun
20 grading the tracts.

21     On or about February 1, 2002, the CITY approved the
22 application of D.R. HORTON for a grading permit for Tract 48892 &
23 48892-01, subject to various requirements and conditions.  At all
24 times material, the CITY maintained control and/or a right of
25 control over the manner and methods in which ZEPHYR, D.R. HORTON
26 and their engineers and grading subcontractor designed, planned
27 and performed the grading and earthwork associated with the

ROBERTSON
& VICK, LLP   28

- 12 -

1 Canyon Gate development and the construction of the extension of

2 Golden Valley Road for the CITY.

3     28.  Plaintiffs are informed and believe, and thereon

4 allege, that the official ground breaking for Tract 48892 &

5 48892-01 occurred on or about February 16, 2002.

6     29.  Plaintiffs are informed and believe, and thereon

7 allege, that on or about March 6, 2002, the first of many

8 backcut failures occurred during the excavation for Shear Key No.

9 3, located below the existing homes on Green Mountain Drive

10 (Tract 30396), and south of the extension of Golden Valley Road.

11 Again on March 13, 2002, another backcut failure occurred on a

12 landslide slip surface during the rough grading on Tract

13 48892-01.  Field notes by a representative of the CITY's

14 consulting engineer, Converse Consultants, indicated that the

15 failure enlarged upslope as he conferred on site with the grading

16 contractor and that the City's inspector was told that Leighton &

17 Associates, had modified the shear key design without approval

18 from the CITY.

19     30.  Plaintiffs are further informed and believe, and

20 thereon allege, that on March 13, 2002, a meeting occurred on the

21 project with representatives of Leighton & Associates, Converse

22 Consultants and the CITY in order to discuss this most recent

23 backcut failure. During this meeting, the slope failure grew in

24 size and progressed up the slope towards existing homes on Green

25 Mountain Drive, south of the proposed Golden Valley Road

26 extension.

27     31.  On or about March 14, 2002, Evan Aldrich, a grading

28 inspector for the City of Santa Clarita, issued a "Stop Work

ROBERTSON
& VICK, LLP

- 13 -

COMPLAINT

1  Order" based upon Leighton's failure to obtain approval from the

2  City for the new keyway design, which deviated from the approved

3  grading plan.

4      32.  On or about March 14, 2002, Converse Consultants sent

5  its recommendations to the CITY that D.R. HORTON's grading

6  subcontractor should stabilize the failed slope area to prevent

7  further enlargement and upslope progression of the slope failure.

8  Further, Converse Consultants recommended that the CITY require

9  D.R. HORTON's soils engineer, Leighton & Associates, to re-

10 evaluate the stability of the temporary backcut slopes.  Finally,

11 Converse recommended that the CITY "should review the insurance

12 coverage and policy limits of the grading contractor and

13 consultant."  Converse further warned the City, "It has been

14 Converse's experience that large slope failures involving

15 multiple residential homes can cost upwards of 10 to 30 million

16 dollars to repair and mitigate."

17     33.  On or about March 19, 2002, a meeting was held between

18 Balvinder S. Sandhu, Assistant Engineer, and Curtis L. Nay,

19 Supervising Engineer, on behalf of the CITY; Mark Schluter on

20 behalf of the CITY's geotechnical engineer, Converse Consultants;

21 Iraj Poormand and Matt Ganesh on behalf of Leighton & Associates;

22 and Larry Burcar and Mark Burcar on behalf of D.R. HORTON.

23 Plaintiffs are informed and believe, and thereon allege, that at

24 this meeting, D.R. HORTON and Leighton explained that they had

25 revised the grading plan to excavate shear keys for the project

26 in order to accommodate the request of D.R. HORTON's grading

27 subcontractor, Ebbensteiner Co.  At this meeting, D.R. HORTON and

28 Leighton were advised that their revision to the grading plan had

1 not been submitted to nor approved by the CITY or its consulting

2 engineer, Converse Consultants.

3     34. On or about March 20, 2002, the CITY sent D.R. HORTON a

4 letter advising D.R. HORTON: "If the developer with his

5 contractors and consultants proceed with the revised keyway

6 construction prior to the CITY's approval, it will be at their

7 own risk."

8     35. On or about March 20, 2002, Robert J. Christiano of

9 ZEPHYR wrote a letter to Robert Newman, City Engineer,

10 complaining that the shut down of the project was "misguided and

11 a product of an overzealous consultant with ulterior motives."

12 Christiano further warned the CITY, "[W]hen the City, through its

13 consultant, begins to determine the course of development, the

14 City inadvertently enters the chain of liability." Further,

15 Christiano complained to the CITY that "[W]e believe we have at

16 least a $500,000 cost overrun..." concerning the cost to

17 construct Golden Valley Road extension. Christiano also

18 complained that ZEPHYR was receiving bills from Leighton &

19 Associates to make "clarifications" to their reports requested by

20 the CITY's consultant. Christiano advised the CITY in this

21 letter that ZEPHYR had told Leighton that "we cannot and will not

22 pay these bills" and that Leighton had threatened to leave the

23 project. "If we lose Leighton, it would shut this job down. We

24 are on very thin ice as it is and can ill afford such a drastic

25 action."

26     36. On or about March 22, 2002, Converse Consultants, on

27 behalf of the CITY, issued its report to the CITY reviewing

28 Leighton's proposed shear key design change for the Canyon Gate

ROBERTSON
& VICK, LLP

- 15 -

1  development.  In this report, Converse recommended that

2  Leighton's revised shear key design not be approved and requested

3  additional investigation and analysis be performed by Leighton to

4  justify its revised plan.

5      37.  Plaintiffs are informed and believe, and thereon

6  allege, that on or about March 20, 2002, D.R. HORTON, its grading

7  subcontractor and Leighton & Associates, resumed rough grading on

8  Tract 48892-01, despite the fact that the City had not approved

9  their revised shear key design.

10     38.  Plaintiffs are informed and believe, and thereon

11  allege, that between March 6, 2002 through approximately January

12  2003, multiple backcut failures, earth movement, and fissures and

13  cracks in the ground surface occurred during the implementation

14  of the unapproved design change for the shear keys by D.R.

15  Horton, its subcontractors and engineers.   During this entire

16  time, D.R. HORTON and its grading subcontractor were performing

17  grading of the Canyon Gate project and extension of Golden Valley

18  Road without approval from the City and doing so at "their own

19  risk."  Apparently, D.R. HORTON believed it was easier to ask for

20  forgiveness than to ask for permission.

21     39.  Plaintiffs are informed and believe, and thereon

22  allege, that in May of 2002, the CITY's reviewing geotechnical

23  engineer, Converse Consultants, continued to refuse to approve

24  the revised shear key design submitted by D.R. HORTON's soils

25  engineer, Leighton & Associates.  On or about May 22, 2002,

26  Balvinder Sandhu, the City's engineer, telephoned Matt Schluter

27  of Converse Consultants and advised him that Canyon Gate was a

ROBERTSON
& VICK, LLP  28  "politically involved project" and that the Mayor and City

- 16 -

1  Council wanted to complete the road extension for Golden Valley

2  Road without any further delays and that "political pressures"

3  were involved. Mr. Sandhu summoned Converse to a meeting to be

4  held the next day at City Hall to discuss this impasse.

5      40.  On or about May 23, 2002, a meeting was held at City

6  Hall with Curtis Nay and Balvinder Sandhu on behalf of the CITY

7  and Mark Schluter and Bill Lu on behalf of Converse Consultants.

8  During this meeting, Curtis May and Balvinder Sandhu advised Mark

9  Schluter and Bill Lu that the CITY was working in partnership on

10  the Golden Valley Road extension project with D.R. HORTON and the

11  CITY was sharing the costs for the grading and construction of

12  this road.  Additionally, CITY engineers Nay and Sandhu advised

13  Converse's Schluter and Lu that the CITY department head and

14  Mayor wanted the project built and were becoming upset with

15  Converse's continued refusal to approve Leighton's deviation from

16  the approved grading plan and that they did not want Converse

17  creating roadblocks for the project.  During this meeting,

18  Messrs. Schluter and Lu advised the CITY's engineers that

19  Converse was not willing to change its position and that the

20  project needed to maintain minimum engineering standards and

21  minimum standards of care and that is was Converse's job to bring

22  these issues and concerns to the CITY's attention.

23      41.  In response, CITY engineers Nay and Sandhu advised

24  Messrs. Schluter and Lu that the Mayor and department heads

25  wanted this project built at all costs and that a lot of

26  political pressure was being applied from D.R. HORTON and the

27  Mayor's office.  Further, CITY engineers Nay and Sandhu

28  threatened Converse's Schluter and Lu that if they continued to

ROBERTSON
& VICK, LLP

- 17 -

1 refuse to approve Leighton's revised design for the excavation of

2 the keyways of this project, Converse could lose its contract

3 with the CITY.

4     42.   Later that same day, a meeting was held between the

5 CITY, D.R. HORTON, Leighton and Converse.  Attendees of this

6 meeting on behalf of the CITY included Curtis Nay and Balvinder

7 Sandhu; Mark May on behalf of D.R. HORTON; and Mark Schluter and

8 Bill Lu on behalf of Converse Consultants.  During this meeting,

9 D.R. HORTON's Mark May went on the offensive and claimed that

10 Converse was holding up progress on the project and claimed that

11 Converse's review comments were "ridiculous."

12     43.   On or about August 6, 2002, Balvinder Sandhu again

13 telephoned Mark Schluter and indicated that if Converse could not

14 approve Leighton's proposed revisions to the grading plan the

15 CITY would retain a third party engineer to do it, which could

16 impact Converse's relationship with the CITY and result in the

17 CITY replacing Converse with another consultant to perform its

18 geotechnical reviews.

19     44.   On or about February 14, 2003, the CITY fired Converse

20 Consultants and replaced them with R.T. Frankian & Associates as

21 the new reviewing geotechnical engineer and engineering geologist

22 to review the grading work performed on the Canyon Gate project.

23 Plaintiffs are informed and believe, and thereon allege, that

24 between March 13, 2002 and February 14, 2003, D.R. HORTON

25 proceeded at their own risk with rough grading Tracts 48892 &

26 48892-01 based upon unapproved revisions to the grading plan,

27 which modified the shear key design, without approval from the

ROBERTSON
& VICK, LLP 28

2/24/09 4:01 AMS
5086\5086.80\p\AMS8997.WPD

1   CITY or its reviewing geotechnical engineer and engineering

2   geologist, Converse Consultants.

3        45.   Further, Plaintiffs are informed and believe, and

4   thereon allege, that as a direct and proximate result of

5   Converse's continued refusal to approve D.R. HORTON's deviations

6   from the approved grading plan, the CITY fired Converse

7   Consultants due to political pressure by the Mayor and City

8   Council to complete the extension of Golden Valley Road.

9        46.   On or about November 12, 2002, Converse Consultants

10  issued their final report to Balvinder Sandhu of the CITY.   In

11  this report, Converse advised the CITY that based upon as-built

12  plans submitted by Leighton & Associates, the shear keys, which

13  were excavated and graded by D.R. HORTON's grading subcontractor,

14  differed substantially from the approved grading plans.

15  Specifically, Converse Consultants warned the CITY:

16           "The revised design and as-built shear keys

17           that are different from the approved grading

18           plans include SK-3 (the southernmost shear

19           key) located east of cross-section C-C and

20           SK-2 (middle shear key) approximately located

21           east of cross-section LA1-LA1.   The bottom of

22           the revised shear keys are as much as forty

23           feet above the bottoms of the original design

24           shear key documented in the approved grading

25           plans.   We understand that is was the

26           decision of the developer to proceed at their

27           own risk with the revised shear key design

ROBERTSON
& VICK, LLP  28

1         and grading construction without prior City

2         approval."

3      47.  Further, this report advised the CITY, "[W]e have

4  identified several geotechnical concerns with respect to the

5  stability and safety to the subject portions in Tract 48892

6  development."  These concerns included the following summary

7  contained in Converse Consultants' report to the CITY:

8             "In summary, it is our opinion that portions

9             of the bottoms of the revised/as-built shear

10            keys (especially, the middle shear key SK-2)

11            are located above or near the BSP [basal

12            slide plane] in several areas (Table No. 2).

13            This represents a major concern with respect

14            to the long-term stability and safety of the

15            as-graded development for Tract 48892."

16     48.  Plaintiffs are informed and believe, and thereon

17  allege, that the CITY ignored the advice and warnings of its own

18  reviewing geologist and geotechnical engineer, and accepted the

19  as-built shear keys from D.R. HORTON, despite the fact that the

20  CITY's reviewing geologist and geotechnical engineer had

21  explicitly warned the CITY that the shear keys, which were

22  intended to intercept the slide planes of the landslide(s) with a

23  wedge of benched, compacted fill, had been constructed as much as

24  forty (40) feet above the design elevation and above the deepest

25  slide plane, which threatened the long term stability and safety

26  of the Canyon Gate project.  Plaintiffs further allege that the

27  CITY ignored the warnings of Converse Consultants, and fired

28  their reviewing geologist and geotechnical engineer, in order to

ROBERTSON
& VICK, LLP

1  prevent any further delays or roadblocks to the completion of the

2  Golden Valley Road extension, which was politically important to

3  the CITY.

4       49. On or about January 7, 2003, sixteen (16) HOMEOWNERS

5  who own residential properties along Green Mountain Drive in

6  Tract 30396 above the Canyon Gate project, served a claim upon

7  the CITY pursuant to *Government Code* § 910 for property damage to

8  their homes caused by movement of the Friendly Valley Landslide

9  Complex caused by the grading activities of D.R. HORTON, its

10 subcontractors and engineers, for the benefit of the CITY.

11 Plaintiffs are informed and believe, and thereon allege, that the

12 CITY denied the HOMEOWNERS claim, and the HOMEOWNERS eventually

13 filed suit against ZEPHYR, D.R. HORTON and the CITY in that

14 certain case entitled *WILLIAM FESSLER, et al v. ZEPHYR NEWHALL,*

15 *L.P., et al.,* Los Angeles Superior Court Case No. PC031788.

16      50. Plaintiffs are informed and believe, and thereon

17 allege, that slope inclinometers were installed prior to, during

18 and after D.R. HORTON's rough grading of Tracts 48892 & 48892.

19 Readings taken by D.R. HORTON's soils engineers during excavation

20 of the three shear keys installed by D.R. HORTON and its

21 subcontractors to purportedly stabilize the Friendly Valley

22 Landslide Complex beneath the Canyon Gate project, showed

23 significant movement along the slide planes of these landslide(s)

24 commenced almost immediately after D.R. HORTON began the rough

25 grading of Canyon Gate, which movement continues to the present

26 date.

27      51. Plaintiffs are informed and believe, and thereon

28 allege, that D.R. HORTON, ZEPHYR and the CITY had actual

ROBERTSON
& VICK, LLP

1   knowledge of the movement of the landslide(s) on Tracts 48892 &

2   48892-01 as recorded by the inclinometers installed below Green

3   Mountain Drive and south of the extension of Golden Valley Road.

4       52.  Plaintiffs are further informed and believe, and

5   thereon allege, that in February 2005, R. T. Frankian &

6   Associates reported to the CITY that D.R. HORTON had again

7   deviated from the approved grading plan, and not installed tie-

8   backs to approximately 100 shear pins (caissons) installed along

9   the north side of Sierra Highway, as part of the design of Shear

10  Key No. 1.  R. T. Frankian reported that the original design of

11  these caissons by Leighton included tiebacks, and that this

12  system of caissons and tiebacks was "to anchor landslide material

13  to the underlying bedrock and assist in providing temporary

14  stability for construction of SK-1."  However, Frankian reported

15  to the CITY that during the excavation for Shear Key 1 in January

16  2005, there had been a failure of the forecut, additional

17  movement along the rupture surface in inclinometer I-11a, and a

18  portion of the backcut had failed.  Frankian further advised the

19  CITY that Leighton had revised the design of Shear Key 1 to

20  eliminate the tiebacks "due to potential delays associated with

21  the permitting process."

22      53.  D.R. HORTON began selling homes in the Canyon Gate

23  project to the HOMEOWNERS in late 2004.

24      54.  Plaintiffs are further informed and believe, and

25  thereon allege, that on or about May of 2007, D.R. HORTON

26  installed additional inclinometers along the common area slope

27  known as Lot No. 88 below the homes on Ellis Henry Court and

28  above Sierra Highway.  Plaintiffs allege that D.R. HORTON

ROBERTSON
& VICK, LLP

- 22 -

1  installed these inclinometers in response to complaints by
2  HOMEOWNERS on Ellis Henry Court of damage to their rear yard and
3  side yard improvements, including cracking of concrete patios,
4  separation of privacy and garden walls, etc.  Plaintiffs are
5  informed and believe, and thereon allege, that readings taken by
6  D.R. HORTON between June 2007 to the present date demonstrate
7  movement along the slide plane of the landslide(s) underlying the
8  Canyon Gate project.

9                          **FIRST CAUSE OF ACTION**

10     **(Fraudulent Concealment against D.R. HORTON and all DOES)**

11     55.  Plaintiffs re-allege and incorporate by reference the
12  allegations set forth above in paragraphs 1 through 54, as though
13  fully set forth herein.

14     56.  Plaintiffs, JORGE and LILIANNA ARCILA, IGOR and ANGELA
15  BAGMANIAN, RODOLFO & LILIAN BAYAN TRUST, GREG S. BORJA and MABEL
16  M. BORJA AB LIVING TRUST DATED MARCH 3, 2005, JONGWHA and DONGJU
17  CHOUNG, ANTONIO and NIDA DE LA CRUZ, MELISSA and ARNOLD
18  FRANCISCO, CARRIE and IIAN GIPI, GEORGE GIPSON and BRIANNE
19  THOMPSON, MARK and OLIVIA INTRAVARTOLO, YUN HA KANG, CHANG O. KIM
20  and MIA CHANG, JULIE KIM, CHUNG LEE, ASUNCHION and EDGAR
21  LOUALHATI, LAZAR and SUZANA MACOVSKI, DENNIS and ANN MOORE,
22  DENISE and GEORGE OCHOA, PRITAL and SWETA PATEL, MARIANO and EVA
23  SALVADOR, ANTHONY and EMMA SANCHEZ, MARK and LILLY SANCHEZ,
24  NILAIDA and CELSO SEPINA, JONG SEUB SHIM, SEAN M. SONG, ERNESTO
25  and JEAN SUMAMPONG, SARAH THEELE, VALMAR PROPERTIES, ANTHONY and
26  DUANGDUAN VECE, NUSRAT and SAJJID SHEIKH, TIMOTHY and JULIA
27  SPAULDING, RONALD and LEA UY, KYOHOON and MIRA LEE, JOSEFINO C.

ROBERTSON &
& VICK, LLP  28  and EVITHA T. NARVAEZ, SIMEON and OI WAH YAN, JOSEPH and JENNIFER

2/24/09 4:01 AMS
5086\5086.80\p\AMS8997.WPD                COMPLAINT

1  ROSE-SCHREIER, MICHAEL and JINHEE HAN, LIJIA JIN and CHUNYAN HE,

2  MARVIN WEBER and SANDY DORN, DANIEL LOPEZ, CYNTHIA ONGJOCO, and

3  MICHAEL and ROBIN CORONA, each entered into a "Purchase Agreement

4  and Escrow Instructions" between D.R. HORTON and themselves for

5  the purchase of a residential lot and home in Canyon Gate

6  (hereinafter referred to as the "Original Purchasers").  As part

7  of the above-referenced purchase agreement, D.R. HORTON disclosed

8  to the Original Purchasers the following:

9           "**Landslide Mitigation**.  Geo-technical reports

10          identified the existence of an ancient landslide

11          covering the majority of the site where the

12          Project was planned. The existence of this

13          landslide raised concerns about settlement and/or

14          movement of the landslide. To address the

15          situation, Seller consulted with the soils

16          engineer, who recommended a grading plan to

17          stabilize the landslide area. Portions of the

18          landslide materials were removed to reduce the

19          possibility of settlement given the planned

20          construction. To address possible movement, the

21          soils engineers recommended three "shear keys" to

22          be constructed. A shear key consists of an

23          excavation extending beyond the depth of the

24          landslide slip plane, and refilling with compacted

25          earth. One shear key was constructed at each of

26          the following locations: (i) near the southern

27          margin of the project; (ii) adjacent to the south

28          side of Sierra Highway; and (iii) adjacent to the

ROBERTSON
& VICK, LLP

1    north side of Sierra Highway. All grading was

2    conducted with the approval of the City of Santa

3    Clarita."

4    57.   Plaintiffs, HANI and JACQUELENE AGBAN, EDWARD and AGNES

5    J. CHANEY, CYNTHIA FLORES, DUSTIN and ANDREA FOLKES, TIMOTHY and

6    ANNA HARRISON, JOHN and SHARON K. HUNT, FARID A. KRIZMAN and

7    NEVIN ROFAIL, KEVIN and JENNIFER LITTLE, JORGE A. RODRIGUEZ,

8    ISABEL SORIA, STELLA and ANGELITO TORRES, WILLIAM TWILLEY, and

9    TOMAS VALDEZ, are subsequent purchasers of homes located in

10   Canyon Gate (referred to hereinafter as "Subsequent Purchasers").

11   Although the Subsequent Purchasers did not have privity of

12   contract with D.R. HORTON, it was foreseeable that in a

13   development of mass produced homes, some would change hands.

14   While an affirmative misrepresentation might not be repeated, a

15   non-disclosure must necessarily be passed on.  D.R. HORTON had

16   every reason to expect that if there were subsequent purchasers

17   of homes in Canyon Gate, a non-disclosure about subsurface soil

18   conditions by D.R. HORTON would be passed on to the Subsequent

19   Purchasers.  Accordingly, pursuant to the holding of *Barnhouse v.*

20   *City of Pinole* (1982) 133 Cal. App. 3d 171, D.R. HORTON is liable

21   to the Subsequent Purchasers for its fraudulent concealment of

22   material facts herein alleged.

23   58.   D.R. HORTON and DOES 1 through 25 intentionally failed

24   to disclose material facts affecting the value and/or

25   desirability of the Plaintiffs' lots and homes as follows:

26         (a)   That the three shear keys were not constructed

27               according to the original grading plan approved by

28               the CITY;

ROBERTSON
& VICK, LLP

2/24/09 4:01 AMS
5086\5086.80\p\AMS8997.WPD

- 25 -

COMPLAINT

(b)   That almost immediately upon deviating from the
approved shear key design, movement along the
slide planes of the pre-existing landslide(s)
occurred, causing repeated failures of the backcut
of the shear key excavations, cracks and fissures
in the ground surface and earth movement recorded
by the inclinometers installed below the existing
homes on Green Mountain Drive and south of the
Golden Valley Road extension;

(c)   That the grading and construction of these three
shear keys was not conducted with the approval of
the CITY or its reviewing geotechnical engineer,
Converse Consultants, who refused to approve the
unauthorized change in design of the shear keys
during the entire rough grading of Tracts 48892 &
48892-01;

(d)   That commencing on or about March 19, 2002 through
the completion of the construction of shear key
Nos. 2 and 3, the CITY notified D.R. HORTON and
its grading subcontractor and soils engineer that
if they proceeded with the construction of the
revised keyway prior to the CITY's approval, it
would be at D.R. HORTON's own risk;

(e)   That after rough grading of Tract Nos. 48892 &
48892-01 had been completed, and continuing up to
the date of sale of the homes to the Plaintiffs
herein, slope inclinometers installed and
monitored by D.R. HORTON on the common area lots

- 26 -

ROBERTSON
& VICK, LLP

2/24/09 4:01 AMS
5086\5086.80\p\AMS8997.WPD

1    within Canyon Gate showed continued movement along

2    the slide planes of the landslide(s) underlying

3    the Canyon Gate project;

4    (f)  That as a result of the above-referenced movement

5.        along the slide planes in Tract Nos. 48892 &

.6        48892-01, earth movement had damaged existing

7         homes along Green Mountain Drive, which resulted

8         in sixteen (16) homeowners filing suit against

9         D.R. HORTON, ZEPHYR and the CITY on or about

10        January 23, 2003, which lawsuit was pending when

11        D.R. HORTON sold the homes to the "Original

12        Purchasers";

13   (g)  That D.R. HORTON deviated from the approved

14        grading plan for the construction of Shear Key 1

15        north of Sierra Highway, which was designed to

16        anchor landslide material into bedrock below.

17        These deviations included the deletion of tiebacks

18        that were supposed to provide lateral support to

19        approximately 100 caissons installed by D.R.

20        HORTON as part of the approved design for Shear

21        Key 1.  Additionally, that the tiebacks for the

22        caissons had been deleted by D.R. HORTON "due to

23        potential delays associated with the permitting

24        process."  Further, that the deviation from the

25        approved design of Shear Key 1 had resulted in

26        movement along the slide plane of the landslide

27        underlying Canyon Gate, as monitored by the

28        inclinometers installed by D.R. HORTON.

ROBERTSON
& VICK, LLP

2/24/09 4:01 AMS
5086\5086.80\p\AMS8997.WPD                    COMPLAINT

1    59.   D.R. HORTON and DOES 1 through 25 had a duty to

2   disclose the above-referenced material facts to the Plaintiffs

3   and intentionally failed to disclose these material facts to the

4   Plaintiffs and knew that such facts were not known to, or within

5   the diligent attention and observation of the Plaintiffs.

6    60.   At the time the Plaintiffs purchased their properties

7   from D.R. HORTON, Plaintiffs did not know of the above-referenced

8   concealed facts.

9    61.   D.R. HORTON and DOES 1 through 25 intended to deceive

10   the Plaintiffs by concealing the above-referenced facts in order

11   to induce the Plaintiffs to purchase homes from the Defendants.

12    62.   Plaintiffs, and each of them, reasonably relied on the

13   Defendants' deception and would not have purchased a home in the

14   Canyon Gate development had the true facts been disclosed to them

15   by the Defendants.

16    63.   As a result of the Defendants' fraudulent concealment

17   herein alleged, Plaintiffs have incurred substantial financial

18   damages, including but not limited to, diminution-in-value, loss

19   of use, annoyance, discomfort and inconvenience, expert

20   investigative costs, and expenses in an amount to be proven at

21   the time of trial.

22    64.   The Defendants' concealment was a substantial factor in

23   causing the Plaintiffs' harm.

24    65.   Plaintiffs' consent to the Purchase Agreements with

25   D.R. HORTON were procured through D.R. HORTON's fraud, and as

26   such, the Original Purchasers seek to rescind their Purchase

27   Agreements with D.R. HORTON, pursuant to Civil Code §1689(b)(1).

28   The Original Purchasers seek a refund of their down payments,

ROBERTSON
& VICK, LLP

2/24/09 4:01 AMS
5086\5086.80\p\AMS8997.WPD

- 28 -

COMPLAINT

1   closing costs, mortgage payments, homeowners' insurance premiums,

2   HOA dues, property taxes, improvements made to their properties

3   and all other out-of-pocket expenses, including pre-judgment

4   interest thereon.

5        66.   The acts of the Defendants, and each of them, were done

6   with oppression, fraud and/or malice, thereby entitling

7   Plaintiffs to an award of punitive damages in an amount

8   sufficient to punish and deter Defendants from engaging in

9   similar despicable conduct in the future.  The conduct of D.R.

10  HORTON was approved, ratified by one of more officers, directors

11  and managing agents, including but not specifically limited to

12  Mark May, Larry Burcar and Mark Burcar.

13       67.   HOMEOWNERS discovered the fraudulent concealment of the

14  above-referenced material facts within three (3) years prior to

15  filing this action.

16                    **SECOND CAUSE OF ACTION**

17       **(Inverse Condemnation against the CITY OF SANTA CLARITA)**

18       68.   Plaintiffs re-allege and incorporate by reference all

19  of the allegations set forth above in paragraphs 1 through 67, as

20  though fully set forth herein.

21       69.   At all times relevant herein, the CITY substantially

22  participated in the planning, design, direction, supervision,

23  approval and construction of Tract Nos. 48892 & 48892-01.

24  Additionally, the CITY entered into the Funding Agreement with

25  ZEPHYR for the express purpose of having the developer of Tract

26  Nos. 48892 & 48892-01 construct the extension of Golden Valley

27  Road for the CITY.  The CITY conditioned the approval of these

ROBERTSON
& VICK, LLP 28  tracts expressly upon the construction of Golden Valley Road

- 29 -

2/24/09 4:01 AMS
5086\5086.80\p\AMS8997.WPD                    COMPLAINT

1  between Sierra Highway and Green Mountain Drive to stabilize both
2  Golden Valley Road and the Canyon Gate development.  In exchange
3  for constructing the Golden Valley Road extension for the CITY,
4  the CITY agreed to reimburse the developer approximately
5  $7,000,000.  Additionally, the CITY agreed to "fast track" the
6  grading plan and final map improvement plans for the tracts and
7  place its "highest priority on the processing of the above-
8  referenced plans" as a term of the Funding Agreement.  Included
9  in the reimbursement costs to be paid by the CITY to the
10  developer of these tracts was the costs of mass excavation,
11  landslide removal/removal and recompaction, and shear
12  key/buttress work for the Canyon Gate project.  In addition, in
13  the event that the cost to grade and construct Golden Valley Road
14  extension did not exceed $7,500,000, the CITY and the developer
15  of these tracts agreed to share in any cost savings based upon an
16  agreed formula.

17      70.  In November 2000, ZEPHYR's tentative tract map was
18  approved by the CITY.  The CITY imposed 180 separate conditions
19  on the development of the Canyon Gate project.  Included in these
20  conditions were the requirements to dedicate right-of-
21  ways/easements for the extension of Golden Valley Road, a hiking
22  trial, bike path, park and an approximately 7.64 acre
23  "preservation area."  Satisfying these conditions was mandatory
24  for the CITY's approval of the Final Tract Map.

25      71.  Pursuant to the Funding Agreement, the CITY agreed to
26  pay to the developer of Tract Nos. 48892 & 48892-01 the costs to
27  perform certain grading based upon the geotechnical engineering
28  analysis performed by Allan E. Seward Engineering Geology, Inc.,

ROBERTSON
& VICK, LLP

- 30 -

1    dated June 19, 2000, with an addendum dated October 16, 2000.

2    These recommendations included mass excavation, landslide removal

3    and construction of shear keys/buttresses outside of the right-

4    of-way for the extension of Golden Valley Road.  The

5    recommendations by Allan E. Seward Engineering Geology, Inc.

6    included the installation of a series of soldier piles or

7    caissons on the southern edge of Tract 48892-01, before

8    excavation of Shear Keys 2 and 3 to provide lateral support

9    during rough grading and permanent stability to stabilize the

10   existing Friendly Valley Landslide Complex, which underlay Tract

11   Nos. 48892 & 48892-01.  Seward's reports also recommended the

12   installation of a series of soldier piles at the northerly edge

13   of the tract, along Sierra Highway.

14        72.  On May 27, 2003, the City Council approved the Final

15   Tract Map.  The Tract Map shows the offers of dedication of

16   Golden Valley Road extension, the park site, hiking trial,

17   preservation area and other easements to the CITY and the CITY's

18   acceptance of them.

19        73.  Plaintiffs are informed and believe, and thereon

20   allege, that the CITY allowed and ratified D.R. HORTON's

21   deviation from the approved grading plan and shear key design for

22   Tract Nos. 48892 & 48892-01 even with the knowledge that repeated

23   slope failures, backcut failures, cracks and fissures and

24   significant movement along the slide planes of the underlying

25   landslide(s) was occurring while D.R. HORTON and its grading

26   subcontractor were excavating and constructing the three shear

27   keys based upon the revised and unapproved design.

28   ///

ROBERTSON
& VICK, LLP

1    74.  Plaintiffs allege that the CITY ignored warnings from

2   its own geotechnical engineer about the safety and long term

3   stability of Tracts 48892 & 48892-01 and fired Converse

4   Consultants and replaced it with a more compliant consultant who

5   eventually approved the revised design of the shear keys after

6   they had been constructed and buried, despite the ongoing

7   movement along the slide planes of the underlying landslide(s) as

8   monitored by the inclinometers and reported to the CITY and D.R.

9   HORTON during and after completion of the grading of the tracts.

10    75.  The CITY reviewed, approved and accepted for public

11   purpose the work performed by D.R. HORTON, ZEPHYR and their

12   subcontractors and engineers for the extension of Golden Valley

13   Road, the park site, hiking trail and preservation area.

14    76.  Plaintiffs have sustained damage to their properties

15   caused by the failure to stabilize the Friendly Valley Landslide

16   Complex beneath Tract Nos. 48892 and 48892-01 as a result of the

17   improper design and grading for these tracts as approved by the

18   CITY.

19    77.  Plaintiffs are informed and believe, and thereon

20   allege, that the damage to their properties constitutes the

21   taking of, or damage to, private property pursuant to Section 19

22   of Article I of the California Constitution.  HOMEOWNERS

23   discovered the damage to their properties within three (3) years

24   of filing this action.

25    78.  Pursuant to *Code of Civil Procedure* § 1036, Plaintiffs

26   are entitled to a sum that will, in the opinion of the Court,

27   reimburse the Plaintiffs reasonable costs, disbursements and

ROBERTSON
& VICK, LLP 28

1  expenses, including reasonable attorneys, appraisal and
2  engineering fees actually incurred because of this proceeding.
3  <u>**THIRD CAUSE OF ACTION**</u>
4  **(Dangerous Condition of Public Property Pursuant to**
5  *Government Code* **§ 835 Against CITY OF SANTA CLARITA)**
6  79.  Plaintiffs re-allege and incorporate by reference all
7  of the allegations set forth above in paragraphs 1 through 54,
8  and 67 through 77, as though fully set forth herein.
9  80.  At all times material, the CITY had the power to
10 prevent, remedy or guard against the dangerous condition, as
11 further alleged herein, on Tract Nos. 48892 & 48892-01 in that
12 the CITY maintained control and/or a right of control over the
13 manner and methods in which ZEPHYR, D.R. HORTON and their
14 subcontractors and geotechnical engineers designed, planned and
15 performed the grading and excavations associated with the
16 construction of the extension of Golden Valley Road, the park
17 site, hiking trail, preservation area and other easements
18 dedicated to and accepted by the CITY.  Throughout the planning
19 and development of Tract Nos. 48892 & 48892-01, the CITY in fact
20 exercised control by, among other things, actively supervising
21 grading activities, issuing a temporary Stop Work Order on the
22 grading activities, demanding modification of geotechnical
23 engineering, grading recommendations and grading techniques prior
24 to and during the course of grading, and subsidizing the cost of
25 grading Tract Nos. 48892 & 48892-01.
26 81.  Subsequent to the official ground breaking for Tract
27 Nos. 48892 & 48892-01 on or about February 16, 2002, a dangerous
28 condition was created on said tracts, to wit, excavations were

ROBERTSON
& VICK, LLP

1 commenced within a known geologic landslide complex and the

2 method of grading involved excavation of over three million cubic

3 yards of earth deep within the landslide complex, using grading

4 techniques which had omitted the original design for shear pins

5 (caissons) to stabilize the landslide(s), as well as excavation

6 and construction of the three recommended shear keys which

7 deviated from the approved grading plan.

8      82.   Subsequent to the initial backcut slope failure

9 observed on or about March 11, 2002, as more specifically alleged

10 in paragraph 22 above, the CITY was on actual notice of the facts

11 that D.R. HORTON, its geotechnical engineer and grading

12 subcontractor had deviated from the approved grading plan and

13 shear key design which resulted in repeated backcut failures,

14 earth movement, cracks and fissures and movement along the slide

15 planes of the landslide(s) underlying Tract Nos. 48892 & 48892-01

16 as recorded by the slope inclinometers.  Additionally, the CITY

17 was put on actual notice of the serious geotechnical and geologic

18 concerns raised by its own engineer, Converse Consultants,

19 commencing on or about March 14, 2002 through approximately

20 January 2003, when the CITY terminated Converse Consultants due

21 to its continued refusal to approve the unauthorized and revised

22 grading plans and grading techniques of D.R. HORTON, its

23 geotechnical engineer and grading subcontractor.

24      83.   Despite the Plaintiffs use of their residential

25 properties in a normal and reasonably foreseeable and careful

26 manner, the aforementioned dangerous condition existing on Tract

27 Nos. 48892 & 48892-01 created a substantial risk of physical

28 damage to the land, improvements and structures located on the

ROBERTSON
& VICK, LLP

1  Plaintiffs' properties, giving rise to municipal liability for

2  such dangerous condition pursuant to Government Code § 835.

3      84.  As a direct, foreseeable and proximate result of the

4  aforementioned dangerous condition of Tract 48892, and the CITY's

5  failure to prevent, remedy or guard against the dangerous

6  condition, the Plaintiffs have incurred damages as more

7  specifically alleged herein.

8      85.  On or about November 17 and November 24, 2008,

9  Plaintiffs served a claim upon the CITY pursuant to *Government*

10 *Code* §910.  The City denied the first claim on December 15, 2008

11 and failed to ever respond to the second claim within the

12 required time frame.  As such, Plaintiffs have complied with the

13 requirements of *Government Code* §910, *et. seq.*

14                **FOURTH CAUSE OF ACTION**

15        **(Private Nuisance Pursuant to *Civil Code* § 3479**

16              **Against CITY OF SANTA CLARITA)**

17     86.  Plaintiffs reallege and incorporate by reference all of

18 the allegations set forth above in paragraphs 1 through 54 and

19 paragraphs 78 through 84 as though fully set forth herein.

20     87.  The aforementioned acts and omissions of the CITY, and

21 the geologic hazards thereby created by such acts and omissions,

22 substantially interfered with the Plaintiffs' use and enjoyment

23 of their land, giving rise to municipal liability for private

24 nuisance pursuant to *Civil Code* § 3479.

25     88.  Said interference with the Plaintiffs' use and

26 enjoyment of their land is indefinite in duration and

27 unreasonable, and that their property has sustained permanent

28 physical injury, measures taken in remediation of the current

ROBERTSON
& VICK, LLP

                              - 35 -

1  geologic conditions are not likely to restore their property to

2  its original market value, and the current geologic conditions

3  present an ongoing and significant risk of additional future

4  harm.

5       89.  As a direct, foreseeable and proximate result of said

6  interference, HOMEOWNERS have incurred physical damage to the

7  land, improvements and structures located on their residential

8  real property and/or a diminution in value of their residential

9  real properties.  As a result, the Plaintiffs have sustained

10 damages in an amount to be determined according to proof at the

11 time of trial.

12      90.  As a further direct, foreseeable and proximate result

13 of said interference, Plaintiffs have suffered annoyance,

14 discomfort and inconvenience, all to their general damage in an

15 amount to be determined according to proof at the time of trial.

16                     **FIFTH CAUSE OF ACTION**

17      **(Negligence Pursuant to *Government Code* § 815.4**

18                **Against CITY OF SANTA CLARITA)**

19      91.  Plaintiffs reallege and incorporate by reference all of

20 the allegations set forth above in paragraphs 1 through 54 and

21 paragraphs 78 through 84 as though fully set forth herein.

22      92.  On or about November 17 and November 24, 2008,

23 Plaintiffs presented a government claim to the CITY pursuant to

24 and in compliance with California *Government Code* § 910.  On or

25 about December 15, 2008, the CITY denied the Plaintiffs claim.

26      93.  At all times material, the construction and completion

27 of the extension of Golden Valley Road was an integral part of

28 the CITY's regional transportation plan known as the "Cross-

ROBERTSON
& VICK, LLP

- 36 -

Valley Connector." But for various development incentives, benefits and payments from the CITY to ZEPHYR and D.R. HORTON, the completion of the Golden Valley Road extension, together with the improvements outside of the road right-of-way, including the park site, hiking trail and preservation area, would not have been economically feasible.

94. Plaintiffs are informed and believe, and on that basis allege, that in consideration for the payment of approximately $7,000,000 in cash from the CITY, ZEPHYR and D.R. HORTON, agreed to construct and offer, and the CITY agreed to accept and acquire, the Golden Valley Road extension as more fully alleged in paragraphs 11 and 12 above. The various requirements and conditions imposed by the CITY as a condition precedent to the dedication of the Golden Valley Road extension were perfunctory and substantially certain to be fulfilled in light of the continuous control exercised by the CITY and based upon the terms of the Funding Agreement as herein alleged. Accordingly, at all times material, ZEPHYR and D.R. HORTON acted as contractors for the CITY with respect to the construction of the Golden Valley Road extension, and the CITY is liable for the tortious acts of said contractors pursuant to *Government Code* § 815.4.

95. At all times material, the CITY knew or should have known that the work undertaken by ZEPHYR and D.R. HORTON, its grading subcontractor and geotechnical engineer, were likely to create an unreasonable risk of physical harm to others, peculiar to the nature and location of the work to be performed, unless special precautions were taken. Specifically, the CITY knew or should have known that the grading and earthwork was to be

ROBERTSON
& VICK, LLP

1 | performed within a known geologic landslide complex and the
2 | method of work involved the excavation and redistribution of over
3 | three million cubic yards of earth from deep within the landslide
4 | mass, giving rise to a substantial risk of slope failure and
5 | activation of the entire landslide(s).  Furthermore, the CITY
6 | knew or should have known that ZEPHYR and/or D.R. HORTON, its
7 | grading subcontractor and geotechnical engineer, had deviated
8 | from the approved grading plan shortly after commencing rough
9 | grading of Tract Nos. 48892 & 48892-01, which was coincided with
10 | the numerous backcut failures, earth movement, cracks and
11 | fissures and movement recorded in the multiple inclinometers
12 | installed on the project.

13 | 96.  At all times material, the CITY maintained control
14 | and/or a right of control over the approval of the grading plan
15 | and design of the shear keys for the tracts and approval of the
16 | grading work performed by ZEPHYR and/or D.R. HORTON for the
17 | Golden Valley Road extension and related improvements dedicated
18 | to the CITY.

19 | 97.  The CITY affirmatively contributed to the
20 | aforementioned physical damage sustained to the Plaintiffs' real
21 | properties, by, among other things, (a) allowing ZEPHYR and/or
22 | D.R. HORTON to proceed with rough grading based upon deviations
23 | from the approved grading plan and an unapproved shear key
24 | design; (b) allowing ZEPHYR and/or D.R. HORTON to proceed with
25 | rough grading of the track despite the repeated and continued
26 | objections from the CITY's own reviewing geotechnical engineer,
27 | Converse Consultants; and (c) failing to stop and shut down the
28 | rough grading of Tract Nos. 48892 & 48892-01 in the face of

ROBERTSON
& VICK, LLP

- 38 -

1 repeated and continuing backcut failures, earth movement, cracks

2 and fissures and movement along the slide planes reported on

3 multiple slope inclinometers both during and after grading of the

4 tracts.

5      98. As a direct, foreseeable and proximate result of said

6 acts and omissions, Plaintiffs have incurred damages as more

7 specifically alleged herein.

8 **SIXTH CAUSE OF ACTION**

9 **(Private Nuisance Against ZEPHYR, DRAPER,**

10 **D.R. HORTON and all DOES)**

11     99. Plaintiffs reallege and incorporate by reference all of

12 the allegations set forth above in paragraphs 1 through 54 as

13 though fully set forth herein.

14     100. The aforementioned acts and omissions of ZEPHYR,

15 DRAPER, D.R. HORTON and DOES 1 through 25, and the geologic

16 hazards thereby created by such acts and omissions, substantially

17 interfered with the Plaintiffs use and enjoyment of their land.

18     101. Said interference with the Plaintiffs' use and

19 enjoyment of their land is indefinite in duration and

20 unreasonable, in that their properties have sustained permanent

21 physical injury, measures taken in remediation of the current

22 geologic hazards are not likely to restore their property to its

23 original market value, and the geologic conditions present an

24 ongoing and significant risk of additional future harm.

25     102. As a direct, foreseeable and proximate result of said

26 interference, Plaintiffs have incurred physical damage to their

27 land, improvements and structures located on their residential

ROBERTSON
& VICK, LLP 28 real properties and/or a diminution-in-value of their residential

1   properties as a result of such physical damage, and/or as a

2   result of proximity to such physical damage, all to the special

3   damage in an amount to be determined according to proof at trial.

4       103. As a further direct, foreseeable and proximate result

5   of said interference, Plaintiffs have suffered annoyance,

6   discomfort and inconvenience all to their general damage in an

7   amount to be determined according to proof at trial.

8       104. ZEPHYR, DRAPER, D.R. HORTON and DOES 1 through 25 acted

9   with a conscious and callous disregard for the safety of

10  Plaintiffs and their property rights because at all times

11  material ZEPHYR, DRAPER and D.R. HORTON and DOES 1 through 25

12  knew or should have known of the highly probable dangerous

13  consequences of their conduct, including but not limited to a

14  substantial risk of earth movement, landsliding, loss of lateral

15  support and activation of the ancient landslides underlying Tract

16  Nos. 48892 & 48892-01, and willfully and deliberately failed to

17  avoid those consequences.

18      105. To the extent that Defendants are corporate entities,

19  said conduct was ratified by one or more officers, directors or

20  managing agents of such entitles.  The conduct of D.R. HORTON was

21  approved and ratified by one of more officers, directors and

22  managing agents, including but not specifically limited to Mark

23  May, Larry Burcar and Mark Burcar.  The conduct of ZEPHYR was

24  approved and ratified by Robert Christiano and Robert S. Wilcox.

25  The conduct of DRAPER was ratified and approved by Robert

26  Christiano.  Accordingly, punitive damages should be assessed

27  against ZEPHYR, D.R. HORTON, DRAPER, ZEPHYR and DOES 1 through 25

ROBERTSON
& VICK, LLP  28

2/24/09 4:01 AMS
5086\5086.80\p\AMS8997.WPD                    COMPLAINT

1  in an amount sufficient to punish and deter said Defendants from

2  engaging in similar despicable conduct in the future.

3  <u>SEVENTH CAUSE OF ACTION</u>

4  **(Negligence Per Se - Violation of Building Standards**

5  ***Civil Code* § 896 against ZEPHYR and DRAPER, and DOES 1-10)**

6  106. Plaintiffs repeat and reallege each and every

7  allegations set forth above in paragraphs 1 through 54, as though

8  fully set forth herein.

9  107. On or about December 4, 2008 and January 20, 2009,

10  Plaintiffs served ZEPHYR with a "Notice to Builder" pursuant to

11  *Civil Code* § 910. ZEPHYR acted as the general partner for both

12  ZEPHYR NEWHALL, L.P. and DRAPER PARTNERS. Plaintiffs have

13  complied with or have been excused from further compliance with

14  the pre-litigation procedures established *Civil Code* § 910, et

15  *seq*.

16  108. ZEPHYR, DRAPER and DOES 1 through 10, and each of them,

17  at all times relevant herein were actively engaged in the design,

18  manufacture, development and construction of mass produced homes

19  in the Canyon Gate development. Plaintiffs are informed and

20  believe, and thereon allege that ZEPHYR and DRAPER retained Allan

21  E. Seward Engineering Geology, Inc., in early 2000 to prepare

22  grading recommendations for Tract Nos. 48892 & 48892-01. ZEPHYR

23  and DRAPER then retained Leighton & Associates to replace Seward

24  as the geotechnical engineer of record for the Canyon Gate

25  project. Further, rough grading of these tracts commenced in

26  February 2002 while ZEPHYR and DRAPER still owned the tracts, and

27  multiple backcut failures, earth movement, cracks and fissures in

28  the ground surface and movement along the slide planes of the

ROBERTSON & VICK, LLP

1  landslide(s) as recorded by the inclinometers occurred during the

2  ownership of these tracts by ZEPHYR and DRAPER before title

3  passed to D.R. HORTON on or about July 14, 2003.

4     109. Pursuant to *Civil Code* § 896, Defendants are liable to

5  Plaintiffs for the violation of building standards codified at

6  *Civil Code* §896, which include, but are not specifically limited

7  to, the following:

8         (a)  § 896(c)(1): Soils and engineered retaining walls

9             shall not cause, in whole or in part, damage to

10            the structure built upon the soil or engineered

11            retaining walls;

12         (b)  § 896(c)(2): Soils and engineered retaining walls

13            shall not cause, in whole or in part, the

14            structure to be structurally unsafe;

15         (c)  § 896(c)(3): Soils shall not cause, in whole or in

16            part, the land upon which no structure is built to

17            be come unstable for the purpose represented at

18            the time of the original sale by the builder or

19            for the purpose for which the land is commonly

20            used.

21     110. Plaintiffs are informed and believe, and thereon

22  allege, that ZEPHYR, DRAPER and DOES 1 through 10, violated the

23  above-referenced subsections of *Civil Code* § 896 and that these

24  violations were a substantial factor in bringing about the

25  damages alleged herein.

26     111. As a direct and proximate result of the negligence per

27  se of the Defendants, and each of them, Plaintiffs have sustained

28  damage to their lots and homes.  Plaintiffs have been damaged in

ROBERTSON
& VICK, LLP

- 42 -

COMPLAINT

1   a sum presently unknown, but in an amount in excess of the

2   jurisdictional limit of this Court.  Plaintiffs will seek leave

3   to amend their Complaint at such time as the exact sum become

4   certain, or will confirm to proof at the time of trial.

5                   **EIGHTH CAUSE OF ACTION**

6   **(Negligent Misrepresentation against D.R. HORTON and DOES 1-25)**

7       112. Plaintiffs re-allege and incorporate by reference the

8   allegations set forth above in paragraphs 1 through 54, as though

9   fully set forth herein.

10      113. HOMEOWNERS, JORGE and LILIANNA ARCILA, IGOR and ANGELA

11   BAGMANIAN, RODOLFO & LILIAN BAYAN TRUST, GREG S. BORJA and MABEL

12   M. BORJA AB LIVING TRUST DATED MARCH 3, 2005, JONGWHA and DONGJU

13   CHOUNG, ANTONIO and NIDA DE LA CRUZ, MELISSA and ARNOLD

14   FRANCISCO, CARRIE and IIAN GIPI, GEORGE GIPSON and BRIANNE

15   THOMPSON, MARK and OLIVIA INTRAVARTOLO, YUN HA KANG, CHANG O. KIM

16   and MIA CHANG, JULIE KIM, CHUNG LEE, ASUNCHION and EDGAR

17   LOUALHATI, LAZAR and SUZANA MACOVSKI, DENNIS and ANN MOORE,

18   DENISE and GEORGE OCHOA, PRITAL and SWETA PATEL, MARIANO and EVA

19   SALVADOR, ANTHONY and EMMA SANCHEZ, MARK and LILLY SANCHEZ,

20   NILAIDA and CELSO SEPINA, JONG SEUB SHIM, SEAN M. SONG, ERNESTO

21   and JEAN SUMAMPONG, SARAH THEELE, VALMAR PROPERTIES, ANTHONY and

22   DUANGDUAN VECE, NUSRAT and SAJJID SHEIKH, TIMOTHY and JULIA

23   SPAULDING, RONALD and LEA UY, KYOHOON and MIRA LEE, JOSEFINO C.

24   and EVITHA T. NARVAEZ, SIMEON and OI WAH YAN, JOSEPH and JENNIFER

25   ROSE-SCHREIER, MICHAEL and JINHEE HAN, LIJIA JIN and CHUNYAN HE,

26   MARVIN WEBER and SANDY DORN, DANIEL LOPEZ, CYNTHIA ONGJOCO, and

27   MICHAEL and ROBIN CORONA, each entered into a "Purchase Agreement

28   and Escrow Instructions" between D.R. HORTON and themselves for

COMPLAINT

ROBERTSON
& VICK, LLP

2/24/09 4:01 AMS
5086\5086.80\p\AMS8997.WPD

the purchase of a residential lot and home in Canyon Gate

(hereinafter referred to as the "Original Purchasers").  As part

of the above-referenced purchase agreement, D.R. HORTON disclosed

to the Original Purchasers the following:

> "**Landslide Mitigation**.  Geo-technical reports
> identified the existence of an ancient
> landslide covering the majority of the site
> where the Project was planned. The existence
> of this landslide raised concerns about
> settlement and/or movement of the landslide.
> To address the situation, Seller consulted
> with the soils engineer, who recommended a
> grading plan to stabilize the landslide area.
> Portions of the landslide materials were
> removed to reduce the possibility of
> settlement given the planned construction. To
> address possible movement, the soils
> engineers recommended three "shear keys" to
> be constructed. A shear key consists of an
> excavation extending beyond the depth of the
> landslide slip plane, and refilling with
> compacted earth. One shear key was
> constructed at each of the following
> locations: (i) near the southern margin of
> the project; (ii) adjacent to the south side
> of Sierra Highway; and (iii) adjacent to the
> north side of Sierra Highway. All grading was

ROBERTSON
& VICK, LLP

2/24/09 4:01 AM6
5086\5086.80\p\AM68997.WPD                    COMPLAINT

1          conducted with the approval of the City of

2          Santa Clarita."

3     114. HOMEOWNERS, HANI and JACQUELENE AGBAN, EDWARD and AGNES

4  J. CHANEY, CYNTHIA FLORES, DUSTIN and ANDREA FOLKES, TIMOTHY and

5  ANNA HARRISON, JOHN and SHARON K. HUNT, FARID A. KRIZMAN and

6  NEVIN ROFAIL, KEVIN and JENNIFER LITTLE, JORGE A. RODRIGUEZ,

7  ISABEL SORIA, STELLA and ANGELITO TORRES, WILLIAM TWILLEY, and

8  TOMAS VALDEZ, are subsequent purchasers of homes located in

9  Canyon Gate (referred to hereinafter as "Subsequent Purchasers").

10  Although the Subsequent Purchasers did not have privity of

11  contract with D.R. HORTON, it was foreseeable that in a

12  development of mass produced homes, some would change hands.

13  D.R. HORTON had every reason to expect that if there were

14  subsequent purchasers of homes in Canyon Gate, a non-disclosure

15  about subsurface soil conditions by D.R. HORTON would be passed

16  on to the Subsequent Purchasers.  Accordingly, pursuant to the

17  holding of *Barnhouse v. City of Pinole* (1982) 133 Cal. App. 3d

18  171, D.R. HORTON is liable to the Subsequent Purchasers for its

19  negligent misrepresentation of material facts herein alleged.

20     115. D.R. HORTON and DOES 1 through 25 negligently

21  failed to disclose material facts affecting the value and/or

22  desirability of the Plaintiffs' lots and homes as follows:

23          (a)  That the three shear keys were not constructed

24               according to the original grading plan approved by

25               the CITY;

26          (b)  That almost immediately upon deviating from the

27               approved shear key design, movement along the

28               slide planes of the pre-existing landslide(s)

ROBERTSON
& VICK, LLP

2/24/09 4:01 AMS
5086\5086.80\p\AMS8997.WPD                    COMPLAINT

1    occurred, causing repeated failures of the backcut

2    of the shear key excavations, cracks and fissures

3    in the ground surface and earth movement recorded

4    by the inclinometers installed below the existing

5    homes on Green Mountain Drive and south of the

6    Golden Valley Road extension;

7    (c)  That the grading and construction of these three

8    shear keys was not conducted with the approval of

9    the CITY or its reviewing geotechnical engineer,

10   Converse Consultants, who refused to approve the

11   unauthorized change in design of the shear keys

12   during the entire rough grading of Tracts 48892 &

13   48892-01;

14   (d)  That commencing on or about March 19, 2002 through

15   the completion of the construction of shear key

16   Nos. 2 and 3, the CITY notified D.R. HORTON and

17   its grading subcontractor and soils engineer that

18   if they proceeded with the construction of the

19   revised keyway prior to the CITY's approval, it

20   would be at D.R. HORTON's own risk;

21   (e)  That after rough grading of Tract Nos. 48892 &

22   48892-01 had been completed, and continuing up to

23   the date of sale of the homes to the Plaintiffs

24   herein, slope inclinometers installed and

25   monitored by D.R. HORTON on the common area lots

26   within Canyon Gate showed continued movement along

27   the slide planes of the landslide(s) underlying

28   the Canyon Gate project;

ROBERTSON
& VICK, LLP

- 46 -

(f)   That as a result of the above-referenced movement along the slide planes in Tract Nos. 48892 & 48892-01, earth movement had damaged existing homes along Green Mountain Drive, which resulted in sixteen (16) homeowners filing suit against D.R. HORTON, ZEPHYR and the CITY on or about January 23, 2003, which lawsuit was pending during D.R. HORTON's sale of the homes to the "Original Purchasers";

(g)   That D.R. HORTON deviated from the approved grading plan for the construction of Shear Key 1 north of Sierra Highway, which was designed to anchor landslide material into bedrock below. These deviations included the deletion of tiebacks that were supposed to provide lateral support to approximately 100 caissons installed by D.R. HORTON as part of the approved design for Shear Key 1. Additionally, that the tiebacks for the caissons had been deleted by D.R. HORTON "due to potential delays associated with the permitting process." Further, that the deviation from the approved design of Shear Key 1 had resulted in movement along the slide plane of the landslide underlying Canyon Gate, as monitored by the inclinometers installed by D.R. HORTON.

116. D.R. HORTON and DOES 1 through 25 had a duty to disclose the above-referenced material facts to the Plaintiffs and negligently failed to disclose these material facts to the

ROBERTSON
& VICK, LLP

2/24/09 4:01 AMS
5086\5086.80\p\AMS8997.WPD

1  HOMEOWNERS and knew that such facts were not known to, or within

2  the diligent attention and observation of the Plaintiffs.

3     117. At the time the Plaintiffs purchased their properties,

4  Plaintiffs did not know of the above-referenced concealed facts.

5     118. D.R. HORTON and DOES 1 through 25 had no reasonable

6  grounds for believing that the representation set forth in

7  paragraph 113 above was true when it made it.  D.R. HORTON

8  intended that the HOMEOWNERS rely upon this representation.

9     119. Plaintiffs, and each of them, reasonably relied on the

10  Defendants' representation which was a substantial factor in

11  causing the HOMEOWNERS' damages, because the HOMEOWNERS would not

12  have purchased a home in the Canyon Gate development had the true

13  facts been disclosed to them by the Defendants.

14     120. As a result of the Defendants' negligent

15  misrepresentations herein alleged, Plaintiffs have incurred

16  substantial financial damages, including but not limited to,

17  diminution-in-value, loss of use, annoyance, discomfort and

18  inconvenience, expert investigative costs, and expenses in an

19  amount to be proven at the time of trial.

20     121.  HOMEOWNERS discovered the Defendants' negligent

21  misrepresentations within three (3) years of filing this action.

22                **DEMAND FOR JURY TRIAL**

23     122. Plaintiffs hereby demand a trial by jury.

24     WHEREFORE, Plaintiffs demand judgment against Defendants,

25  and each of them, for:

26     1.   Special damages in a sum to be determined according to

27  proof at trial;

28  ///

ROBERTSON
& VICK, LLP

- 48 -

1    2.    General damages in a sum to be determined according to

2  proof at trial;

3    3.    Exemplary damages on Plaintiffs' First and Sixth Causes

4  of Action in a sum to be determined according to proof at trial;

5    4.    Plaintiffs cost incurred herein;

6    5.    Plaintiffs reasonable attorneys, appraisal and

7  engineering fees incurred in the prosecution of Plaintiffs'

8  Second Cause of Action for Inverse Condemnation;

9    6.    Pre-judgment interest on aforesaid damages; and

10    7.    Any other and further relief as the Court considers

11  just and proper.

12  DATED:  February 24, 2009          ROBERTSON & VICK, LLP

13

14                              By:  _____

15                                   ALEXANDER ROBERTSON, IV
                                     Attorneys for Plaintiffs

16

17

18

19

20

21

22

23

24

25

26

27

ROBERTSON
& VICK, LLP   28

2/24/09 4:01 AMS
5086\5086.80\p\AMS8997.WPD                    COMPLAINT

# EXHIBIT "A" TO COMPLAINT

1.   Jorge and Lilianna Arcila
     19623 Ellis Henry Court
     Santa Clarita, CA 91321

2.   Antonio and Nida De La Cruz
     19733 Alyssa Drive
     Santa Clarita, CA 91321

3.   Melissa and Arnold Francisco
     19541 Ellis Henry Court
     Santa Clarita, CA 91321

4.   Carrie and IIan Gipi
     19631 Ellis Henry Court
     Santa Clarita, CA 91321

5.   John and Sharon K. Hunt
     19717 Alyssa Drive
     Santa Clarita, CA 91321

6.   Mark Intravartolo
     19707 Ellis Henry Court
     Santa Clarita, CA 91321

7.   Yun Ha Kang
     19719 Ellis Henry Court
     Santa Clarita, CA 91321

8.   Chang O. Kim and Mia Chang
     19715 Ellis Henry Court
     Santa Clarita, CA 91321

9.   Farid A. Krizman & Nevin Rofail
     19727 Ellis Henry Court
     Santa Clarita, CA 91321

10.  Chung Lee
     19537 Ellis Henry Court
     Santa Clarita, CA 91321

11.  Asunchion and Edgar Loualhati
     19632 Alyssa Drive
     Santa Clarita, CA 91321

12.  Dennis and Ann Moore
     19728 Ellis Henry Court
     Santa Clarita, CA 91321

13.  Denise and George Ochoa
     19709 Alyssa Drive
     Santa Clarita, CA 91321

///

ROBERTSON
& VICK, LLP

Ex A

2/23/09 4:42 AMS
S086\5086.80\p\AMS9038.WPD

- 1 -

EXHIBIT "A" TO COMPLAINT

14. Jorge Rodriguez
    19713 Alyssa Drive
    Santa Clarita, CA 91321

15. Nilaida and Celso Sepina
    26011 Bryce Court
    Santa Clarita, CA 91321

16. Isabel Soria
    19604 Alyssa Drive
    Santa Clarita, CA 91321

17. Sarah Theele
    19839 Ellis Henry
    Santa Clarita, CA 91321

18. Valmar Properties
    19615 Alyssa Drive
    Santa Clarita, CA 91321

19. George Gibson and Brianne Thompson
    19701 Alyssa Drive
    Santa Clarita, CA 91321

20. Julie Kim
    19835 Ellis Henry Court
    Santa Clarita, CA 91321

21. Kevin and Jennifer Little
    19623 Alyssa Drive
    Santa Clarita, CA 91321

22. Lazar and Suzana Macovski
    19805 Alyssa Drive
    Santa Clarita, CA 91321

23. Mariano and Eva Salvador
    19607 Ellis Henry Court
    Santa Clarita, CA 91321

24. Jong Seub Shim
    19824 Alyssa Drive
    Santa Clarita, CA 91321

25. Sean M. Song
    19533 Ellis Henry Court
    Santa Clarita, CA 91321

26. Hani and Jacquelene Agban
    19639 Alyssa Drive
    Santa Clarita, CA 91321

27. Igor and Angela Bagmanian
    19811 Ellis Henry Court
    Santa Clarita, CA 91321

ROBERTSON
& VICK, LLP

2/23/09 4:42 AMS
5086\5086.80\p\AMS9038.WPD

EXHIBIT "A" TO COMPLAINT

28. Rodolfo & Lilian Bayan Trust
    21124 Rene Valazat Way
    Santa Clarita, CA 91321

29. Greg S. Borja and Mabel M. Borja AB Living Trust
    Dated March 3, 2005
    19611 Ellis Henry Court
    Santa Clarita, CA 91321

30. Edward and Agnes J. Chaney
    19735 Ellis Henry Court
    Santa Clarita, CA 91321

31. Jongwha & Dongju Choung
    19635 Ellis Henry Court
    Santa Clarita, CA 91321

32. Cynthia Flores
    26008 Bryce Court
    Santa Clarita, CA 91321

33. Dustin and Andrea Folkes
    19823 Ellis Henry Court
    Santa Clarita, CA 91321

34. Timothy and Anna Harrison
    19639 Ellis Henry Court
    Santa Clarita, CA 91321

35. Prital and Sweta Patel
    19705 Alyssa Drive
    Santa Clarita, CA 91321

36. Anthony and Emma Sanchez
    19632 Ellis Henry Court
    Santa Clarita, CA 91321

37. Mark and Lilly Sanchez
    19608 Ellis Henry Court
    Santa Clarita, CA 91321

38. Ernesto and Jean Sumampong
    26131 Rene Veluzzat Way
    Santa Clarita, CA 91321

39. Stella and Angelito Torres
    19724 Ellis Henry Court
    Santa Clarita, CA 91321

40. William Twilley
    19615 Ellis Henry Court
    Santa Clarita, CA 91321

41. Anthony and Duangduan Vece
    19628 Ellis Henry Court
    Santa Clarita, CA 91321

ROBERTSON
& VICK, LLP

2/23/09 4:42 AMS
5086\5086.80\p\AMS9038.WPD

EXHIBIT "A" TO COMPLAINT

42.  Nusrat and Sajjid Sheikh
     19528 Ellis Henry Court
     Santa Clarita, CA 91321

43.  Timothy and Julia Spaulding
     19808 Alyssa Drive
     Santa Clarita, CA 91321

44.  Ronald and Lea Uy
     19708 Alyssa Drive
     Santa Clarita, CA 91321

45.  Kyohoon and Mira Lee
     19716 Alyssa Drive
     Santa Clarita, CA 91321

46.  Josefino C. and Evitha T. Narvaez
     19815 Ellis Henry Court
     Santa Clarita, CA 91321

47.  Tomas Valdez
     19512 Ellis Henry Court
     Santa Clarita, CA 91321

48.  Simeon and Oi Wah Yan
     19519 White Rock Court
     Santa Clarita, CA 91321

49.  Joseph and Jenifer Rose-Schreier
     19616 Ellis Henry Court
     Santa Clarita, CA 91321

50.  Michael and Jinhee Han
     19812 Alyssa Drive
     Santa Clarita, CA 91321

51.  Lijia Jin and Chunyan He
     26127 Rene Veluzzat
     Santa Clarita, CA 91321

52.  Marvin Weber and Sandy Dorn
     19731 Ellis Henry Court
     Santa Clarita, CA 91321

53.  Cynthia Ongjoco
     19638 Alyssa Drive
     Santa Clarita, CA 91321

54.  Daniel Lopez
     19712 Ellis Henry Court
     Santa Clarita, CA 91321

55.  Michael and Robin Corona
     19728 Alyssa Drive
     Santa Clarita, CA 91321

ROBERTSON
& VICK, LLP

2/23/09 4:42 AMS
5086\5086.8C\p\AMS9038.WPD

EXHIBIT "A" TO COMPLAINT

| | |
|---|---|
| 1 | 42.   Nusrat and Sajjid Sheikh |
| | 19528 Ellis Henry Court |
| 2 | Santa Clarita, CA 91321 |
| 3 | 43.   Timothy and Julia Spaulding |
| | 19808 Alyssa Drive |
| 4 | Santa Clarita, CA 91321 |
| 5 | 44.   Ronald and Lea Uy |
| | 19708 Alyssa Drive |
| 6 | Santa Clarita, CA 91321 |
| 7 | 45.   Kyohoon and Mira Lee |
| | 19716 Alyssa Drive |
| 8 | Santa Clarita, CA 91321 |
| 9 | 46.   Josefino C. and Evitha T. Narvaez |
| | 19815 Ellis Henry Court |
| 10 | Santa Clarita, CA 91321 |
| 11 | 47.   Tomas Valdez |
| | 19512 Ellis Henry Court |
| 12 | Santa Clarita, CA 91321 |
| 13 | 48.   Simeon and Oi Wah Yan |
| | 19519 White Rock Court |
| 14 | Santa Clarita, CA 91321 |
| 15 | 49.   Joseph and Jenifer Rose-Schreier |
| | 19616 Ellis Henry Court |
| 16 | Santa Clarita, CA 91321 |
| 17 | 50.   Michael and Jinhee Han |
| | 19812 Alyssa Drive |
| 18 | Santa Clarita, CA 91321 |
| 19 | 51.   Lijia Jin and Chunyan He |
| | 26127 Rene Veluzzat |
| 20 | Santa Clarita, CA 91321 |
| 21 | 52.   Marvin Weber and Sandy Dorn |
| | 19731 Ellis Henry Court |
| 22 | Santa Clarita, CA 91321 |
| 23 | 53.   Cynthia Ongjoco |
| | 19638 Alyssa Drive |
| 24 | Santa Clarita, CA 91321 |
| 25 | 54.   Daniel Lopez |
| | 19712 Ellis Henry Court |
| 26 | Santa Clarita, CA 91321 |
| 27 | 55.   Michael and Robin Corona |
| | 19728 Alyssa Drive |
| 28 | Santa Clarita, CA 91321 |

ROBERTSON
& VICK, LLP

2/24/09 4:53 AMS
5086\5086.80\p\AMS9038.WPD

# FUNDING AGREEMENT
## FOR
## GOLDEN VALLEY ROAD/VTTM 48892 COSTS

This FUNDING AGREEMENT FOR GOLDEN VALLEY ROAD/VTTM 48892 COSTS ("AGREEMENT") between the City of Santa Clarita and Zephyr Newhall L.P., the applicant/owner of Tract No. 48892 (cumulatively the "Parties"), is entered into this _10th_ day of April 2001. The purpose of this document is to outline the terms and conditions for the approval, entitlement, and improvement of Golden Valley Road from its terminus at Green Mountain Road to Sierra Highway in conjunction with the approval and development of Tract No. 48892.

### RECITALS

1. The City of Santa Clarita ("City") is an incorporated municipality located in the County of Los Angeles.
2. Zephyr Newhall L.P. ("Zephyr") is the applicant of Vesting Tentative Tract Map No. 48892 ("48892"). 48892 is comprised of two parcels. Former Tract No. 48892 is owned by Zephyr. Former Tract No. 45022 is owned by Draper Partners. Zephyr has the right to acquire the Draper Partners parcel and the right to enter into this Agreement on its behalf.
3. 48892 consists of former approved Vesting Tentative Map No. 48892 and former Vesting Tentative Map No. 45022. Both maps were deemed expired under a ("Settlement Agreement") dated February 16, 1996.
4. 48892 was re-submitted in 1998 and deemed complete in July 1999.
5. 48892 requested approval of 185 lots, including 176 residential lots, private streets, and several variances.
6. On October 3, 2000, the Planning Commission of the City of Santa Clarita recommended Alternative Three of the FEIR to the City Council, consisting of 147 residential lots that each conform to the City's UDC. On November 28, 2000, the City Council approved the project with 150 units.
7. 48892 has been conditioned with the improvement of Golden Valley Road ("GVR") between Sierra Highway and Green Mountain Drive. Using the design proposed by the applicant, it is estimated to cost approximately $7,500,000. This design will stabilize both GVR and the development.
8. A cost estimate was prepared at the City's direction by Land Design Consultants, Inc. Alan E. Seward Engineering Geology Inc. prepared a technical analysis, dated June 19, 2000 with an addendum dated October 16, 2000. These reports support the cost estimate of GVR as specified in paragraph 7 above.
9. It is in the best interest of the City to have GVR improved by 48892 with the cost shared by both the applicant and the City. GVR is a major arterial link in the City and part of the City's Master Circulation Plan, and is therefore considered a B&T District improvement.
10. 48892 is within the Eastside B&T District. The Eastside District is currently being revised. The resulting fee amount is unknown. Under the Settlement Agreement the tract is required to pay B&T fees in the amount of $2,000 per unit. The current fee is $10,000 per unit. This is considered an interim fee since the District is being revised.

Ex. B

11. It is understood that by the payment of the $2,000 B&T fee, the reimbursement of road construction cost would be limited by the amount of fees paid. This would leave nearly all of the cost unreimbursed.

12. It is also understood that by the payment of the $10,000 interim B&T fee, the reimbursement of the road construction cost would be limited to the cost of the improvements within the right-of-way, leaving all work outside the right-of-way unreimbursed

13. It is proposed to add the City's share of grading outside the right-of-way to the B&T District during the revision. Because of this, it is further understood that the B&T fee for the tract must be based on the unknown higher rate per the future revised District to qualify for the requested reimbursement of work inside and outside the right-of-way.

14. The following agreement will apportion the cost of this work between the City and the applicant matching the benefit of each as closely as is practical using B&T policies proposed in the revised District.

15. Upon the completion of the District revision, the B&T fee is expected to increase to an unknown amount.

16. The following agreement will be based on the higher unknown rate with the applicant's obligation limited to the $10,000 interim fee. The increased amount (difference between the B&T obligation at $10,000 and the obligation at the unknown higher rate), is to be borne by the District.

17. 48892 submitted a Financial Analysis dated July 15, 2000 to the City demonstrating the financial impact to 48892 of improving GVR with 176 lots. 48892 submitted an addendum to the Financial Analysis dated October 16, 2000 showing the financial impact to 48892 of improving GVR with 147 lots.

18. The City Council instructed staff on October 24, 2000 to enter into an agreement to participate in the financing of GVR, thereby enabling 48892 to improve GVR.

19. It is understood that 48892 will be responsible to pay the cost to improve GVR estimated at $7,500,000.

20. If the cost of GVR improvements is $7,500,000, it is intended that the cost shall be funded as follows:
    - $1,500,000 of B&T fees (150 times $10,000).
    - A reimbursement of $4,260,000 from the City to 48892 as described herein ("Reimbursable Costs").
    - The remaining $1,740,000 paid by the developer. However, it is understood that the City shall accept the completion of the GVR improvements as stated above in lieu of payment of B&T fees. Specifically, if GVR is completed, and 48892 has submitted invoices for the cost to the City, the City will not require 48892 to pay the B&T fees due at delivery of building permits. It is further understood that in the event building permits are requested prior to completion of GVR, applicable B&T fees will be paid, and once GVR is completed all B&T fees paid will be promptly reimbursed in addition to the $4,260,000.

21. The Agreement contained herein outlines the terms and conditions under which the Parties have agreed to work together for the approval, entitlement, and improvement to Golden Valley Road and 48892.

Note: This Agreement is contingent upon the successful completion of the revised B&T District, the inclusion of work outside the right-of-way, the final approval of Tract No. 48892, and the implementation by the owner of said approval.

C

## AGREEMENT

1. The City agrees to Fast Track the Grading Plan and Final Map Improvement Plans for 48892. Fast Track shall be defined as the City placing its highest priority on the processing of the above referenced plans.

2. The current "interim" B&T fee in the Eastside District is $10,000 per unit. The fee is expected to increase to a fee amount between $15,000 and $20,000.

3. The Agreement must be based on the higher rate.

4. The Parties hereby agree that 48892 will be charged a B&T fee of $10,000 instead of the $2,000, as specified in the Settlement Agreement.

5. The difference between the $10,000 B&T obligation and the unknown higher rate will be borne by the District.

6. 48892 has been conditioned to pay its B&T fees at the time it pulls building permits for the homes it will construct.

7. The Reimbursable Costs of GVR herein estimated at $4,260,000 can be separated into three components. These include 1) the cost of the roadway and improvements; 2) the cost of grading (refer to areas shaded green and blue on the sections included in the June 19, 2000 Seward Report for earth volumes); and 3) soft costs.

8. The costs of the roadway, transportation related improvements within the right-of-way and pedestrian easements are 100 percent reimbursable. These improvements include, but are not limited to, those listed in Exhibit "A" entitled Golden Valley Road Agreement Items.

9. The cost of the grading (including, but not limited to, those items listed in Exhibit "B" dated February 14, 2001 and prepared by Land Design Consultants, Inc.) is reimbursable to the extent of the theoretical volume required to improve GVR only. A theoretical volume of 2,225,000 cy (cubic yards) has been agreed to by 48892 and the City for this amount. The proportions of grading will be further broken down into separate quantities for mass excavation, landslide removal/R&R (removal and recompaction), and shear key/buttress work and are subject to approval of the City Engineer.

10. Soft costs are reimbursable as identified in the Eastside Bridge & Thoroughfare District report in Table 2.

11. It is understood that the schedule in 7, 8, 9, and 10 above is an outline of the economic terms and conditions of the Reimbursement costs requested by the City Council in relation to 48892.

12. The City is not responsible for additional costs that may be incurred by the improvement of GVR.

13. The City will issue B&T credits ("Credits") for the Reimbursable Costs to reimburse Zephyr. Credits may be sold to and used by other developers in the Eastside District to satisfy B&T obligations. Specifically, Credits may we used to satisfy B&T obligations for Tracts 48893, 52385, and 53419. Credits will be given to Zephyr as GVR is improved or accepted by the City. Credits will be given in units based on the revised fee.

14. The City shall buy a portion of the remaining Credits if Credits have not been purchased, as follows:
   - City shall acquire $1,065,000 of Credits upon the acceptance of Golden Valley Road improvements.
   - City shall acquire an additional $1,065,000 of Credits not later than six months after the first acquisition described above.

15. In the event that the District has not been revised at the time of the above Credit acquisition, the City will fund same amounts in cash to Zephyr in lieu of acquiring said Credits. In this event, remaining Credits due Zephyr will be reduced by said amounts.

MAR-7-2006  07:58A FROM:PLANNING   VISION   1 286-4007      T  18185516050      P.5/10

16. This Agreement is assignable to subsequent owners in whole or in part provided that
    the buyer assumes all obligations to the City under the provisions of the Agreement.
    Any benefits retained by Zephyr in the assignment shall be acknowledged to the City by
    both buyer and Zephyr.
17. It is understood that $4,260,000 is the maximum total reimbursement to be provided by
    the City even if the total improvement costs exceed $7,500,000. If the improvement cost
    is less than $7,500,000, then the City's total reimbursement shall be reduced
    proportionately in a ratio of $4,260,000/$7,500,000.

Note:  Prevailing rates must be paid for work to qualify for public funding described above.


ACCEPTED AND AGREED TO ON THE DATE SPECIFIED HEREIN BY:


_Robert A. Wilcox_ _____

Applicant - Tract 48892
Zephyr Newhall L.P.
By:  Robert Wilcox
Zephyr Partners LLC
ITS:  General Partner

Revised 4/8/01
eng-schd\tract48892.doc

The City of Santa Clarita
By:  George A. Caravalho
     City Manager


ATTEST:

_signature_ _____
CITY CLERK

4/23/01 _____
DATE

C.

MAR-7-2006 07:58A FROM:PLANNING VISION 1 286-4007 1 18185516050 P.6/10

**CITY OF SANTA CLARITA**

By _____

_____

Attest: _____

_____

STATE OF CALIFORNIA )
) ss.
COUNTY OF _____ )

On _____ before me, _____, personally appeared
_____, personally known to me (or proved to me on the basis of satisfactory
evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that
(he/she) executed the same in (his/her) authorized capacity and that by (his/her) signature on the
instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

STATE OF CALIFORNIA )
) ss.
COUNTY OF _Orange_ )

On _April 10, 2001_, before me, _Connie Harrington_, _a Notary Public_ personally appeared
_Robert S. Wilcox_, personally known to me (or proved to me on the basis of satisfactory
evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that
(he/she/they) executed the same in (his/her/their) authorized capacity and that by (his/her/their)
signature on the instrument the person, or the entity upon behalf of which the person acted, executed the
instrument.

WITNESS my hand and official seal.

Signature _Connie Harrington_

> CONNIE HARRINGTON
> Commission # 1149645
> Notary Public - California
> Orange County
> My Comm. Expires Aug 29, 2001

C

# EXHIBIT "A"

## Golden Valley Road Agreement Items

<u>Description</u>

## CLEARING & GRADING

Clearing & Grubbing
Excavation (Normal)
Excavation (Heavy)
Stabilization & Buttressing/Shear Keys
Buttress Drain Pipes
Landslide Removal
Alluvial/Coluvium Removal
Slope Finishing
Street Sub Grade Finish
Interceptor Terraces (Bench)(8')
Divertor Terraces (36" Brow)
Down Drains (36")
Velocity Reducers/Rip-Rap
Splash Walls (3' High)
Sub Drains (6"-8" w/Base)
Mobilization & Prewet (Dust Control)

## REMOVAL & RELOCATION

Remove Miscellaneous Structures/
    Fences/Turnaround/Barricade
Existing Catch Basin (Sierra Highway)
Existing 36" CMP (Sierra Highway @GVR Intersection only)

## SLOPE PROTECTION

Golden Valley Road    (South Side Only)
Slope Planning and Irrigation (3:1-4:1)          (Erosion control level to City requirements)
Slope Planning and Irrigation (2:1)             (Erosion control level to City requirements)
Meandering Peseo (18' wide South Side)
8" PVC Class 150 Water Main                    (A portion of cost equal to slope Irrigation
2" Meter Assembly w/ water service              per Conditions of Approval)
2" Meter box
2" Blow-off Valve Assembly



MAR-7-2006  07:58A FROM:PLANNING   JISION   1 266-4007             18185516050       P.8/10

Description

**STORM DRAIN SYSTEM**          (Within GVR R/W & southerly side only)

18" RCP "Class 3"
24" RCP
36" RCP
42" RCP
Junction Structures
Transition Structures (36")
Catch Basins (W=3.5')
Catch Basins (W=7')
Catch Basins (W=14')
Catch Basins (W=21')
Transition Structure
Inlet Structures
Outlet Structure
Desilting Debris Basin
3" AC Pavement (Access Roads)
Concrete Anchors
Manholes
6' High Chain Link Fence at Outlet and Inlet Structures
Remove AC Pavement (Sierra Highway)
Remove PCC Sidewalk (Sierra Highway)
Remove PCC 8" Curb (Sierra Highway)
4" AC on 12" AB (Sierra Highway)
4" PCC Sidewalk (Sierra Highway)
8" PCC Curb/Gutter (Sierra Highway)
Sawcut Pavement (Sierra Highway)
PCC Stairs with Guard Rail at Inlet/Outlet Structures

**Description**

# UNDERGROUND POWER        (Golden Valley Road street lighting only)

# STREET IMPROVEMENTS

4" AC over 10" AB
8" PCC Curb w/24" Gutter and Base
6" PCC Curb Only (Median)
4" PCC Sidewalk (Meandering 5' Wide)
Remove Temporary Turnaround
6" AGG Base Curb and Gutter/Sidewalk
Golden Valley Median Landscaping
Roadway Striping
Handicap Ramps
Street Name Signs
4-Way Traffic Signal (Green Mtn., Sierra Highway & project entrance per conditions of approval)
4" PCC Peseo Walkway (10' Wide)
Bus Turnouts
Class I Bike Lane
Signal Interconnects

### SIERRA HIGHWAY

4" PCC Sidewalk (5' Wide)
Landscape Median              (Per conditions of approval)
4-Way Traffic Signal (CH/GV)
Peseo Bike Trail
Remove Existing Median AC      (Per conditions of approval)
Saw Cut and Remove Pavement    (GVR & SH Intersection only)

# STREET LIGHT SYSTEMS

150 Watt HPS w/Box (Golden Valley Rd.)
150 Watt HPS w/Box (Sierra Highway)

# FENCES & WALLS

3' High Slope Wall (Golden Valley Rd.at toe of slopes)

# EXHIBIT "B"

## THEORETICAL VOLUME TO IMPROVE

## GOLDEN VALLEY ROAD ONLY -   2,225,000 cubic yards

Estimated quantities:

- Landslide removal / bulk cut (blue)     125,000 cubic yards

- Shear Key removal (green)              1,650,000 cubic yards

- Roadway cut & slopes                   <u>400,000 cubic yards</u>
                                         2,225,000 cubic yards

**Prepared by Land Design Consultants, Inc.**
**February 14, 2001**



RECEIVED JUN 2 7 2003

COPY

FIRST AMENDMENT TO THE FUNDING AGREEMENT
FOR
GOLDEN VALLEY ROAD VTTM 48892 COSTS

This FIRST AMENDMENT TO THE FUNDING AGREEMENT FOR GOLDEN VALLEY ROAD/VTTM 48892 COSTS ("FIRST AMENDED AGREEMENT") between the City of Santa Clarita, Zephyr Newhall L.P. the applicant/owner of Tract No. 48892, and D.R. Horton Los Angeles Holding Company, is entered into this 27 day of May, 2003 with reference to the facts set forth below..

## RECITALS

1. The City of Santa Clarita ("City") and Zephyr Newhall L.P. (Zephyr) entered into THE FUNDING AGREEMENT FOR GOLDEN VALLEY ROAD/VTTM 48882 COSTS ("FUNDING AGREEMENT") on April 10, 2001. This Funding Agreement fixed the eligible Bridge and Thoroughfare (B&T) credits available to Zephyr at $4,260,000.

2. The City and Zephyr desire to amend the Funding Agreement to include D.R. Horton Los Angeles Holding Company, Inc. ("Horton"), to increase the amount of eligible B&T credits by approximately $2,469,097 (from $4,260,000 to approximately $6,730,000) and to uncap the eligible B&T improvement costs for reimbursement as the result of an increased construction estimate.

3. Horton is under contract and in escrow to purchase Tract No. 48892 from Zephyr and is presently grading the site project area, installing improvements, managing the work and processing the final map for Tract No. 48892.

4. Tract No. 48892 is within the Eastside B&T District (District.) The District has a revised fee of $14,700 per unit which became effective September 1, 2002 (Revised B&T Fee). An interim fee of $10,000 per unit was in effect at the time of the Funding Agreement (Interim B&T Fee) and is the fee to be used under this Funding Agreement for Tract No. 48892.

5. A summary of B&T eligible costs for the construction of Golden Valley Road (GVR) and portions of Sierra Highway was submitted by Horton on June 20, 2002, which estimated these costs to be $6,729,097, identified in Exhibit "C." Included in this cost estimate was project area grading costs at 50 percent which represents an approximation of the District's share of the grading cost within and outside the GVR right-of-way. This increased amount represents an increase in the estimated B&T eligible costs credits over the earlier estimates included in the Funding Agreement.

6. Horton has paid for all grading, geo-technical, and B&T improvements to date..

Ex C

First Amendment to the Funding Agreement
For Golden Valley Road VTTM 48892 Costs
Page 2

NOW, THEREFORE, in consideration of the above recitals and other good and valuable consideration, the parties hereby agree as set forth below.

AGREEMENT

1. Except as amended herein, the Funding Agreement between the City and Zephyr is in full force and effect.

2. This First Amended Agreement will be based on the Revised B&T Fee with the applicant's obligation limited to the Interim B&T Fee of $10,000 per unit. The increased amount (the difference between the Interim B&T Fee and the Revised B&T Fee) is to be borne by the District.

3. Tract No. 48892 has been conditioned to pay its B&T fees at the time it pulls building permits for the homes it will construct. B&T work to date has exceeded the total B&T obligation of $1,500,000. The City agrees that Horton will satisfy this obligation with future B&T credit in lieu of cash payments.

4. The Reimbursable Costs of Golden Valley Road are now estimated to be in excess of $6,729,097, identified in Exhibit "C" attached hereto and are to include "soft costs" described in the B&T update report dated March 2002, and adopted March 26, 2002 as reimbursable items.

5. The costs of the roadway, all transportation related improvements within the right-of-way, pedestrian easements, and improvements are 100 percent reimbursable. These improvements include, but are not limited to, those listed in Exhibit "A" entitled Golden Valley Road Agreement Items.

6. The cost of the grading (including, but not limited to, those items listed in Exhibit "B" dated February 14, 2001 and prepared by Land Design Consultants, Inc.) is reimbursable to the extent identified in Exhibit "C" in the manner approved by the City Engineer in a letter to Horton dated June 28, 2002.

7. The City will issue B&T credits for the Zephyr Reimbursable Costs in the amount of $4,260,000 ("Zephyr Credits") to reimburse Zephyr. Horton will receive all remaining credits. Horton will have a preference for credits as provided in Paragraphs 3 and 9 of this First Amended Agreement that will be issued and used by Horton on Tract No. 48892. Credits may be sold by Zephyr and Horton to other developers in the Eastside District to satisfy their respective B&T obligations. Cash received from any sale of credits to other developers will go to the Seller of those credits. Zephyr Credits may be used to satisfy B&T obligations for Tract Nos. 48893, 52385, and 53419 or other projects in the Eastside District. Credits issued to Horton may be used for Tract Nos. 48892-1 and 48892 or other projects in the Eastside District. Credits will be issued to Zephyr and Horton as GVR is improved or accepted by the City. Credits will be given in units based on the Revised B&T Fee of $14,700 per unit.

First Amendment to the Funding Agreement
For Golden Valley Road VTTM 48892 Costs
Page 3

8. The City shall buy a portion of the Zephyr Credits, if the Zephyr Credits have not been sold by Zephyr or purchased by developers, as follows:

   - The City shall acquire $1,065,000 of Zephyr Credits upon the acceptance of GVR improvements.
   - City shall acquire an additional $1,065,000 of Zephyr Credits not later than six months after the first acquisition described above.

9. If the cost of B&T eligible reimbursement costs to improve GVR is $6,729,097 or more, it is intended that the cost reimbursement shall be funded as follows:

   - A reimbursement of $4,260,000 from the City to Zephyr as described herein ("Zephyr Newhall Reimbursable Costs").

   - An amount of $1,500,000 in B&T Fee credits to Horton based on the Interim B&T fee to be used by Horton for obtaining building permits for Tract No. 48892 that may be used ahead of Zephyr's reimbursement. It is understood that the City shall allow future B&T credits as described above in lieu of payment of B&T permit fees by Horton at the time building permits are requested.

   - The remaining balance approximately $969,097 or more of cost reimbursements due to Horton will be issued as B&T credits based on actual hard and soft costs.

10. This First Amended Agreement is assignable by Owner/Applicant and Horton to subsequent owners in whole or in part provided that the Assignee assumes all obligations to the City under the provisions of the First Amended Agreement. Upon any assignment of this First Amended Agreement any benefits retained by either Zephyr or Horton shall be acknowledged to the City by both Assignee, and Zephyr or Horton.

11. It is understood that $4,260,000 is the maximum total reimbursement to be provided by the City to Zephyr. The remainder of the reimbursement is paid to Horton.

12. No cap exists for the remaining eligible B&T credits to be issued to Horton, if the costs estimated at $6,729,097 in Paragraph 4 increase.

First Amendment to the Funding Agreement
For Golden Valley Road VTTM 48892 Costs
Page 4

ACCEPTED AND AGREED TO ON THE DATE SPECIFIED HEREIN BY:

_Robert A. Wilcox_

---

Owner/Applicant - Tract No. 48892
Zephyr                                          Newhall

By:  Robert Wilcox
Zephyr Partners LLC
ITS:  General Partner

D.R. Horton Los Angeles Holding Company Inc.

By: _David Doe_
Name: Brad Bye
Its: President

By: _____
Name: _____
Its: _____

The City of Santa Clarita                       L.P.

By: _____

City Manager

ATTEST:
_signature_
CITY CLERK

6/13/03
DATE

---

### THIRD AMENDMENT TO PURCHASE AGREEMENT
### AND ESCROW INSTRUCTIONS



THIS THIRD AMENDMENT TO PURCHASE AGREEMENT AND ESCROW INSTRUCTIONS ("Third Amendment") is made and entered into as of March 7, 2002 ("Effective Date"), by and between ZEPHYR NEWHALL, L.P., a California limited partnership and DRAPER PARTNERS, a California general partnership (collectively referred to as "Seller") and D.R. HORTON LOS ANGELES HOLDING COMPANY, INC., a California corporation ("Buyer"), with reference to the facts set forth below.

### RECITALS

A.    Seller and Buyer entered into that certain Purchase Agreement and Escrow Instructions dated as of August 8, 2001, as amended by that certain First Amendment to Purchase Agreement and Escrow Instructions dated as of November 7, 2001, as amended by that certain Second Amendment to Purchase Agreement and Escrow Instructions dated as of December 18, 2001 (collectively, the "Purchase Agreement"), for the purchase of certain real property more particularly described in the Purchase Agreement.

B.    Seller and Buyer desire to amend the Purchase Agreement on the terms and conditions set forth below.

NOW, THEREFORE, for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as set forth below.

1.    Defined Terms. Except as the context otherwise requires, all defined terms shall have the same meaning as set forth in the Purchase Agreement.

2.    Additional Deposit. The Purchase Agreement is hereby modified to provide that Buyer shall deliver to Escrow Holder the sum of Three Hundred Sixty-Six Thousand Six Hundred Eighty-Seven Dollars ($366,687.00), which Escrow Holder is hereby instructed to disburse, for Seller's benefit, to the parties and in the amounts set forth on Exhibit "A" attached hereto and incorporated herein. The sum of Three Hundred Sixty-Six Thousand Six Hundred Eighty-Seven Dollars ($366,687.00) delivered by Buyer pursuant to this Section shall be added to an treated as the Additional Deposit under the Purchase Agreement.

3.    Closing Date. Section 2.2 of the Agreement is hereby deleted and replaced in its entirety with the following:

"The Escrow shall close ("Closing Date") ten (10) Business Days after the Final Map has been recorded; provided that if the Final Map has not been recorded by June 30, 2004, Buyer shall have the right to

Horton/Newhall
Third Amendment to Purchase Agreement
28809-00019 – 1727359.3

Exhibit A          Ex D

terminate this Agreement and Buyer's Deposits shall be returned to Buyer. If the Close of Escrow does not occur by the Closing Date, then either party who is not then in default may terminate this Agreement and the Escrow, in which case the respective rights, duties and obligations of Buyer and Seller under this Agreement shall terminate without further liability and Buyer's Deposits shall be returned to Buyer."

4.    Grading Work. Seller acknowledges and agrees that Buyer is on, and has the right to be on, the Property for purposes of performing the Grading Work. Buyer agrees to name Seller as an additional insured under its liability policy with respect to the Grading Work being performed on the Property by Buyer.

5.    Determination of Finished Lot Credit. Provided that Buyer receives written confirmation from the City, in a form acceptable to Buyer in its sole and absolute discretion, stating that Horton will receive Two Million Dollars ($2,000,000.00) in Bridge and Thoroughfare fee credits and/or reductions to the scope of work that would otherwise be required of Horton under the conditions of approval of the Tentative Map, Section 4.1 of the Agreement shall be revised to reflect that the parties have agreed that the Finished Lot Credit for each Lot shall be deemed equal to One Hundred Nine Thousand, One Hundred Seventy-Five Dollars ($109,175.00).

6.    Effect of Amendment. Except as amended hereby, the Purchase Agreement is in full force and effect between the parties.

[Remainder of Page Intentionally Left Blank]

7.    Counterparts. This First Amendment may be executed in counterparts, each of which, when taken together, will constitute one fully executed original.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above-written.

SELLER:                                          BUYER:

ZEPHYR NEWHALL, L.P., a California      D.R. HORTON LOS ANGELES
Limited Partnership                      HOLDING COMPANY, INC., a California
                                         corporation

By: _Robert S Wilcox_                    By: _Brad Bee_
Name: _ROBERT S WILCOX_                  Name: _Brad Bee_
Title: _GENERAL PARTNER_                 Title: _President_

By: _____                  Approved:
Name: _____
Title: _____                   By: _____
                                         Name: Thomas F. Noon
                                         Title:   Vice President

DRAPER PARTNERS, a California General
Partnership

By: _Robert_
Name: _ROBERT J. CRISTIANO_
Title: _General Partner_

By: _____
Name: _____
Title: _____

7.    **Counterparts.** This First Amendment may be executed in counterparts, each of which when taken together, will constitute one fully executed original.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above-written.

SELLER:                                                BUYER:

ZEPHYR NEWHALL, L.P., a California                     D.R. HORTON LOS ANGELES
Limited Partnership                                    HOLDING COMPANY, INC., a California
                                                       corporation

By: _____                            By: _____
Name: _____                            Name: _____
Title: _____                          Title: _____

By: _____
Name: _____                            Approved:
Title: _____
                                                       By: _____
                                                       Name:  Thomas F. Noon
                                                       Title:  Vice President

DRAPER PARTNERS, a California General
Partnership

By: _____
Name: _____
Title: _____

By: _____
Name: _____
Title: _____

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Alexander Robertson, IV<br>Mark J. Uyeno, Esq.<br>ROBERTSON & VICK, LLP<br>880 Hampshire Road, Suite B<br>Westlake Village, CA 91361<br>TELEPHONE NO.: (805) 418-9900   FAX NO.: (805) 418-9901<br>ATTORNEY FOR *(Name):* Plaintiffs | **FILED**<br>LOS ANGELES SUPERIOR COURT<br><br>FEB 27 2009<br><br>JOHN A. CLARKE, CLERK<br>BY MARY GARCIA, DEPUTY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS: 111 N. Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: CENTRAL

CASE NAME: KIM, et al. v. CITY OF SANTA CLARITA, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: BC407614 |
|---|---|---|---|---|
| [X] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br>DEPT: |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[X] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [X] is  [ ] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [X] Large number of separately represented parties    d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel   e. [X] Coordination with related actions pending in one or more courts
       issues that will be time-consuming to resolve              in other counties, states, or countries, or in a federal court
   c. [X] Substantial amount of documentary evidence    f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [X] monetary b. [X] nonmonetary; declaratory or injunctive relief c. [X] punitive
4. Number of causes of action *(specify):* Eight (8)
5. This case [ ] is  [X] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: February 24, 2009
Alexander Robertson, IV
_____          ► _____
(TYPE OR PRINT NAME)                         (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Legal<br>Solutions<br>Plus | Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10 |

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**                    CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
  Auto (22)—Personal Injury/Property
    Damage/Wrongful Death
  Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
  Product Liability (not asbestos or
    toxic/environmental) (24)
  Medical Malpractice (45)
    Medical Malpractice–
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
    Practice (07)
  Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
  Defamation (e.g., slander, libel)
    (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      *(not medical or legal)*
  Other Non-PI/PD/WD Tort (35)
**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract *(not unlawful detainer
        or wrongful eviction)*
    Contract/Warranty Breach—Seller
      Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
    book account) (09)
    Collection Case—Seller Plaintiff
    Other Promissory Note/Collections
      Case
  Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
  Eminent Domain/Inverse
    Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
      domain, landlord/tenant, or
      foreclosure)*
**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*
**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case
      Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)
**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of
      County)
    Confession of Judgment *(non-
      domestic relations)*
    Sister State Judgment
    Administrative Agency Award
      *(not unpaid taxes)*
    Petition/Certification of Entry of
      Judgment on Unpaid Taxes
    Other Enforcement of Judgment
      Case
**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
      harassment)*
    Mechanics Lien
    Other Commercial Complaint
      Case *(non-tort/non-complex)*
    Other Civil Complaint
      *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
  Partnership and Corporate
    Governance (21)
  Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief from Late
      Claim
    Other Civil Petition

CM-010 [Rev. July 1, 2007]                 **CIVIL CASE COVER SHEET**                          Page 2 of 2

| SHORT TITLE: KIM, et al. v. CITY OF SANTA CLARITA, et al. | CASE NUMBER: BC407614 |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to LASC Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

Item I. Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? [X] YES   CLASS ACTION? [ ] YES   LIMITED CASE? [ ] YES   TIME ESTIMATED FOR TRIAL [ ] HOURS/ [3] DAYS

Item II. Select the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet Form, find the main civil case cover sheet heading for your case in the left margin below, and, to the right in Column A, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column B below which best describes the nature of this case.

**Step 3:** In Column C, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Los Angeles Superior Court Local Rule 2.0.

```
Applicable Reasons for Choosing Courthouse Location (See Column C below)
```

1. Class Actions must be filed in the County Courthouse, Central District.
2. May be filed in Central (Other county, or no Bodily Injury/Property Damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | [ ] A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | [ ] A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** | Asbestos (04) | [ ] A6070 Asbestos Property Damage | 2. |
| | | [ ] A7221 Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | [ ] A7260 Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | [ ] A7210 Medical Malpractice - Physicians & Surgeons | 1., 2., 4. |
| | | [ ] A7240 Other Professional Health Care Malpractice | 1., 2., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | [ ] A7250 Premises Liability (e.g., slip and fall) | 1., 2., 4. |
| | | [ ] A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 2., 4. |
| | | [ ] A7270 Intentional Infliction of Emotional Distress | 1., 2., 3. |
| | | [ ] A7220 Other Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | [ ] A6029 Other Commercial/Business Tort (not fraud/breach of contract) | 1., 2., 3. |
| | Civil Rights (08) | [ ] A6005 Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | [ ] A6010 Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | [ ] A6013 Fraud (no contract) | 1., 2., 3. |

| LACIV 109 (Rev. 01/07)<br>LASC Approved 03-04 | CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION | LASC, rule 2.0<br>Page 1 of 4<br>LA-481 |
|---|---|---|

| SHORT TITLE: | KIM, et al. v. CITY OF SANTA CLARITA, et al. | CASE NUMBER |
|---|---|---|

| | A<br>Civil Case Cover<br>Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons<br>- See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/Property Damage/ Wrongful Death Tort (Cont'd.)** | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2., 3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109  Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not Unlawful Detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☒ A7300  Eminent Domain/Condemnation   Number of parcels 5 5 | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 8. |
| | | ☐ A6032  Quiet Title | 2., 6. |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer - Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer - Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer - Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

| SHORT TITLE: KIM, et al. v. CITY OF SANTA CLARITA, et al. | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review (Cont'd.)** | Writ of Mandate<br>(02) | ☐ A6151  Writ - Administrative Mandamus<br>☐ A6152  Writ - Mandamus on Limited Court Case Matter<br>☐ A6153  Writ - Other Limited Court Case Review | 2., 8.<br>2.<br>2. |
| | Other Judicial Review<br>(39) | ☐ A6150  Other Writ / Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade<br>Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction defect | 1., 2., 3. |
| | Claims Involving Mass<br>Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage<br>Claims from Complex<br>Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement<br>of Judgment<br>(20) | ☐ A6141  Sister State Judgment<br>☐ A6160  Abstract of Judgment<br>☐ A6107  Confession of Judgment (non-domestic relations)<br>☐ A6140  Administrative Agency Award (not unpaid taxes)<br>☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112  Other Enforcement of Judgment Case | 2., 9.<br>2., 6.<br>2., 9.<br>2., 8.<br>2., 8.<br>2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints<br>(Not Specified Above)<br>(42) | ☐ A6030  Declaratory Relief Only<br>☐ A6040  Injunctive Relief Only (not domestic/harassment)<br>☐ A6011  Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8.<br>2., 8.<br>1., 2., 8.<br>1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions<br>(Not Specified Above)<br>(43) | ☐ A6121  Civil Harassment<br>☐ A6123  Workplace Harassment<br>☐ A6124  Elder/Dependent Adult Abuse Case<br>☐ A6190  Election Contest<br>☐ A6110  Petition for Change of Name<br>☐ A6170  Petition for Relief from Late Claim Law<br>☐ A6100  Other Civil Petition | 2., 3., 9.<br>2., 3., 9.<br>2., 3., 9.<br>2.<br>2., 7.<br>2., 3., 4., 8.<br>2., 9. |

**CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION**

| SHORT TITLE: KIM, et al. v. ~~TY~~ OF SANTA CLARITA, et al. | CASE NUMBER |
|---|---|

Item III. Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., Step 3 on Page 1, as the proper reason for filing in the court location you selected.

| REASON: CHECK THE NUMBER UNDER COLUMN C WHICH APPLIES IN THIS CASE | ADDRESS: |
|---|---|
| ☐1. ☒2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | (See Attachment) |

| CITY: Santa Clarita | STATE: CA | ZIP CODE: 91321 | |
|---|---|---|---|

Item IV. *Declaration of Assignment*: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the __Los Angeles Superior Court__ courthouse in the _____Central_____ District of the Los Angeles Superior Court (Code Civ. Proc., § 392 et seq., and LASC Local Rule 2.0, subds. (b), (c) and (d)).

Dated: __February 24, 2009__

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)
Alexander Robertson, IV

---

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet form CM-010.

4. Complete Addendum to Civil Case Cover Sheet form LACIV 109 (Rev 01/07), LASC Approved 03-04.

5. Payment in full of the filing fee, unless fees have been waived.

6. Signed order appointing the Guardian ad Litem, JC form FL-935, if the plaintiff or petitioner is a minor under 18 years of age, or if required by Court.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev. 01/07)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 4 of 4

ATTACHMENT TO CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

1. Jorge and Lilianna Arcila
   19623 Ellis Henry Court
   Santa Clarita, CA 91321

2. Antonio and Nida De La Cruz
   19733 Alyssa Drive
   Santa Clarita, CA 91321

3. Melissa and Arnold Francisco
   19541 Ellis Henry Court
   Santa Clarita, CA 91321

4. Carrie and IIan Gipi
   19631 Ellis Henry Court
   Santa Clarita, CA 91321

5. John and Sharon K. Hunt
   19717 Alyssa Drive
   Santa Clarita, CA 91321

6. Mark Intravartolo
   19707 Ellis Henry Court
   Santa Clarita, CA 91321

7. Yun Ha Kang
   19719 Ellis Henry Court
   Santa Clarita, CA 91321

8. Chang O. Kim and Mia Chang
   19715 Ellis Henry Court
   Santa Clarita, CA 91321

9. Farid A. Krizman & Nevin Rofail
   19727 Ellis Henry Court
   Santa Clarita, CA 91321

10. Chung Lee
    19537 Ellis Henry Court
    Santa Clarita, CA 91321

11. Asunchion and Edgar Loualhati
    19632 Alyssa Drive
    Santa Clarita, CA 91321

12. Dennis and Ann Moore
    19728 Ellis Henry Court
    Santa Clarita, CA 91321

13. Denise and George Ochoa
    19709 Alyssa Drive
    Santa Clarita, CA 91321

///

ROBERTSON
& VICK, LLP

- 1 -

2/24/09 4:53 AMS
5086\5086.80\p\AMS9038.WPD

14. Jorge Rodriguez
    19713 Alyssa Drive
    Santa Clarita, CA 91321

15. Nilaida and Celso Sepina
    26011 Bryce Court
    Santa Clarita, CA 91321

16. Isabel Soria
    19604 Alyssa Drive
    Santa Clarita, CA 91321

17. Sarah Theele
    19839 Ellis Henry
    Santa Clarita, CA 91321

18. Valmar Properties
    19615 Alyssa Drive
    Santa Clarita, CA 91321

19. George Gibson and Brianne Thompson
    19701 Alyssa Drive
    Santa Clarita, CA 91321

20. Julie Kim
    19835 Ellis Henry Court
    Santa Clarita, CA 91321

21. Kevin and Jennifer Little
    19623 Alyssa Drive
    Santa Clarita, CA 91321

22. Lazar and Suzana Macovski
    19805 Alyssa Drive
    Santa Clarita, CA 91321

23. Mariano and Eva Salvador
    19607 Ellis Henry Court
    Santa Clarita, CA 91321

24. Jong Seub Shim
    19824 Alyssa Drive
    Santa Clarita, CA 91321

25. Sean M. Song
    19533 Ellis Henry Court
    Santa Clarita, CA 91321

26. Hani and Jacquelene Agban
    19639 Alyssa Drive
    Santa Clarita, CA 91321

27. Igor and Angela Bagmanian
    19811 Ellis Henry Court
    Santa Clarita, CA 91321

ROBERTSON
& VICK, LLP

2/24/09 4:53 AMS
5086\5086.80\p\AMS9038.WPD

28. Rodolfo & Lilian Bayan Trust
    21124 Rene Valazat Way
    Santa Clarita, CA 91321

29. Greg S. Borja and Mabel M. Borja AB Living Trust
    Dated March 3, 2005
    19611 Ellis Henry Court
    Santa Clarita, CA 91321

30. Edward and Agnes J. Chaney
    19735 Ellis Henry Court
    Santa Clarita, CA 91321

31. Jongwha & Dongju Choung
    19635 Ellis Henry Court
    Santa Clarita, CA 91321

32. Cynthia Flores
    26008 Bryce Court
    Santa Clarita, CA 91321

33. Dustin and Andrea Folkes
    19823 Ellis Henry Court
    Santa Clarita, CA 91321

34. Timothy and Anna Harrison
    19639 Ellis Henry Court
    Santa Clarita, CA 91321

35. Prital and Sweta Patel
    19705 Alyssa Drive
    Santa Clarita, CA 91321

36. Anthony and Emma Sanchez
    19632 Ellis Henry Court
    Santa Clarita, CA 91321

37. Mark and Lilly Sanchez
    19608 Ellis Henry Court
    Santa Clarita, CA 91321

38. Ernesto and Jean Sumampong
    26131 Rene Veluzzat Way
    Santa Clarita, CA 91321

39. Stella and Angelito Torres
    19724 Ellis Henry Court
    Santa Clarita, CA 91321

40. William Twilley
    19615 Ellis Henry Court
    Santa Clarita, CA 91321

41. Anthony and Duangduan Vece
    19628 Ellis Henry Court
    Santa Clarita, CA 91321

ROBERTSON
& VICK, LLP

- 3 -

2/24/09 4:53 AMS
5086\5086.80\p\AMS9038.WPD

ORIGINAL

VIA FAX

**UNITED STATES DISTRICT COURT, ~~CENTRAL~~ DISTRICT OF CALIFORNIA**
SOUTHERN

CIVIL COVER SHEET

FILED

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| D.R. HORTON LOS ANGELES HOLDING COMPANY, INC. | AMERICAN SAFETY INDEMNITY COMPANY<br>10 FEB 26 PM 2: 52<br>CLERK U.S. DISTRICT<br>SOUTHERN DISTRICT OF CALIFORNIA |

| (b) County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases):<br>Los Angeles County | County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only): |
|---|---|

'10 CV 0443 WQH    WMc

BY: MTD       DEPUTY

| (c) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>Scott Sonne - Luce, Forward, Hamilton & Scripps LLP<br>600 West Broadway, Suite 2600<br>San Diego, California 92101<br>Telephone: (619)699-2585 / Facsimile: (619)699-2585 | Attorneys (If Known)<br>David S. Blau / David M. Morrow - Blau & Associates, P.C.<br>6080 Center Drive, Suite 550<br>Los Angeles, California 90045<br>Telephone: (310) 410-1900 / Facsimile: (310) 410-1901 |
|---|---|

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding   ☒ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No   ☒ **MONEY DEMANDED IN COMPLAINT:** $ known to be in excess of 100,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 USC section 1332 - Diversity

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS<br>PERSONAL INJURY | TORTS<br>PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☒ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities /Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | FEDERAL TAX SUITS |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**VIII(a). IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed? ☒ No ☐ Yes

If yes, list case number(s):

**FOR OFFICE USE ONLY:**   Case Number:

CV-71 (07/05)                          CIVIL COVER SHEET                          Page 1 of 2

R 10622 $350 - MTD 02-26-10

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**VIII(b). RELATED CASES:** Have any cases been previously filed that are related to the present case? ☑ No   ☐ Yes

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or
                              ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                              ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                              ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** List the California County, or State if other than California, in which EACH named plaintiff resides (Use an additional sheet if necessary)
☐ Check here if the U.S. government, its agencies or employees is a named plaintiff.

   Plaintiff is a California corporation

List the California County, or State if other than California, in which EACH named defendant resides.  (Use an additional sheet if necessary).
☐ Check here if the U.S. government, its agencies or employees is a named defendant.

   Defendant AMERICAN SAFETY INDEMNITY COMPANY is an Oklahoma corporation, residing in Georgia.

List the California County, or State if other than California, in which EACH claim arose.  (Use an additional sheet if necessary)
Note: In land condemnation cases, use the location of the tract of land involved.

   Los Angeles County (but removal is from a state court action pending in San Diego County Superior Court)

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____   Date _____February 26, 2010_____

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings
or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not
filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions
sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |

1    **PROOF OF SERVICE**

2    *D.R. Horton Los Angeles Holding Co., Inc., v. American Safety Indemnity Company*

3    United States District Court

4    STATE OF CALIFORNIA

5    COUNTY OF LOS ANGELES

6        I am employed in the County of Los Angeles, State of California.  I am over the age of 18
7    and not a party to the within action; my business address is 6080 Center Drive, Suite 550, Los
     Angeles, California 90045.

8        On February 26, 2010, I served the foregoing document described as **CIVIL COVER**
9    **SHEET** on the interested parties in this action by placing a true copy thereof enclosed in the sealed
10   envelopes addressed as follows:

11   **SEE ATTACHED SERVICE LIST**

12   [X ]   BY MAIL: I deposited such envelope in the mail at Los Angeles, California.  The envelope
         was mailed with postage thereon fully prepaid.

13   [  ]   BY PERSONAL DELIVERY: I delivered such envelope by hand to the offices of the
14          addressee.

15   [  ]   VIA FACSIMILE: I caused all of the pages of the above entitled document to be sent to the
16          recipients noted above via electronic transfer (FAX) at the respective facsimile number(s)
17          indicated above.  This document was transmitted by facsimile and transmission reported
            complete without error.

18   [X ]   FEDERAL: I certify or declare that I am employed in the office of a member of the bar of
19          this court at whose discretion the service was made.

20       I am readily familiar with the firm's practice of collection and processing correspondence for
21   mailing. It is deposited with U.S. Postal Service on that same day in the ordinary course of business.
     I am aware that on motion of party served, service is presumed invalid if postal cancellation date or
22   postal meter date is more than 1 day after date of deposit for mailing in affidavit.

23       Executed on February 26, 2010, at Los Angeles, California.

24       I declare under penalty of perjury under the laws of the State of California that the above is
     true and correct.

25

26

27   Sara Watson

28

1

PROOF OF SERVICE

1

## SERVICE LIST

2

### *D.R. Horton Los Angeles Holding Co., Inc., v. American Safety Indemnity Company*

3

United States District Court

4

5

Scott W. Sonne

6

Luce, Forward, Hamilton & Scripps, LLP

600 West Broadway, Suite 2600

7

San Diego, California 92101-3391

Telephone No.: (619) 236-1414

8

Facsimile No.: (619) 645-5347

9

Attorneys for the Plaintiff,

10

D.R. HORTON LOS ANGELES HOLDING

CO., INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

```
Court Name: USDC California Southern
Division: 3
Receipt Number: CAS010622
Cashier ID: mbain
Transaction Date: 02/26/2010
Payer Name: ACE MESSENGER SERVICE
------------------------------------
CIVIL FILING FEE
 For: DR HORTON V AMERICAN SAFETY
 Case/Party: D-CAS-3-10-CV-000443-001
 Amount:        $350.00
------------------------------------
CHECK
 Check/Money Order Num: 44550
 Amt Tendered:  $350.00
------------------------------------
Total Due:       $350.00
Total Tendered: $350.00
Change Amt:       $0.00



There will be a fee of $45.00
charged for any returned check.
```