1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                   **SOUTHERN DISTRICT OF CALIFORNIA**
10

11  D.R. HORTON LOS ANGELES                    CASE NO. 10CV443 WQH (WMc)
    HOLDING CO., INC.,
12                                             ORDER
                                  Plaintiff,
13          vs.
    AMERICAN SAFETY INDEMNITY
14  COMPANY,
15                                Defendant.

16  HAYES, Judge:

17          The matters before the Court are the Motion for Partial Summary Judgment filed by

18  Plaintiff D.R. Horton (ECF No. 25) and the Motion for Summary Judgment, or Alternatively

19  Partial Summary Judgment filed by Defendant American Safety Indemnity Company (ECF

20  No. 33).

21  **I.      Procedural Background**

22          This action arises out of an insurance dispute regarding coverage under four insurance

23  policies (the "Policies") issued by Defendant American Safety Indemnity Company ("ASIC")

24  to Ebensteiner Co. ("Ebensteiner").[1]  The policies at issue in this litigation are: XGI 01-1261-

25  003 ("03 policy") effective from August 1, 2001 through August 1, 2002; XGI 02-1261-004

26  ("04 policy") effective from August 1, 2002 through August 1; 2003, XGI 03-1261-005 ("05

27  policy") effective from August 1, 2003 through August 1, 2004; and ESL 0010410406 ("06

28  _____

                [1]  Ebensteiner Co. is not a party to this action.

policy") effective from August 1, 2004 through August 1, 2005.

On January 15, 2010, Plaintiff D.R. Horton Los Angeles Holding Co., Inc. ("D.R. Horton") filed a Complaint against ASIC which was removed to this Court. (ECF No. 1). The Complaint alleges that D.R. Horton was engaged in a real estate development project named Canyon Gate ("Canyon Gate") and that D.R. Horton entered into a subcontractor agreement with Ebensteiner for grading work on the project. *Id.* at 10. The Complaint alleges that Ebensteiner purchased general liability insurance policies from ASIC and named D.R. Horton as an additional insured and third-party beneficiary of ASIC's obligations to Ebensteiner. *Id.* at 10-11.

The Complaint alleges that D.R. Horton received several notices to builder and several complaints and cross-complaints were filed against D.R. Horton in the following cases: *Chang O. Kim, et al. v. City of Santa Clarita, et al.*, Los Angeles Superior Court Case No. BC407614 (the "*Kim* case"), *Canyon Gate Maint. Ass'n v. City of Santa Clarita, et al.*, Los Angeles Superior Court Case No. BC415663 (the "*Canyon Gate* case"), and *Warrick, et al. v. City of Santa Clarita, et al.*, Los Angeles Superior Court Case No. PC046442 (the "*Warrick* case") (collectively "the underlying actions"). The Complaint alleges that D.R. Horton made claims for benefits under the policies regarding the underlying actions and that ASIC declined coverage and refused to defendant D.R. Horton.

D.R. Horton asserts a claim for breach of contract and breach of the implied covenant of good faith and fair dealings against ASIC for failure to provide D.R. Horton with a defense in the underlying actions, for withholding or delaying payments, for failing to properly investigate D.R. Horton's claims, and for refusing and failing to respond to D.R. Horton's request for benefits and coverage. D.R. Horton also seeks declaratory relief "that [ASIC is] obligated to defend and indemnify [D.R. Horton] under said Policies; and, [t]hat [ASIC is] obligated to pay for the cost of [D.R. Horton's] defense in [the underlying actions] and to pay expenses and other settlement costs in connection with [the underlying actions]." *Id.* at 14.

On April 12, 2010, ASIC filed an Answer. (ECF No. 4). On October 22, 2010, ASIC filed a Counterclaim against D.R. Horton asserting a claim for declaratory relief. ASIC asserts

1  that there is no potential coverage for Ebensteiner and that there is no potential coverage for

2  Plaintiff D.R. Horton as an additional insured.  (ECF No. 17).

3        On April 6, 2011, D.R. Horton filed a Motion for Partial Summary Judgment.  (ECF No.

4  25).  On May 2, 2011, ASIC filed an Opposition.  (ECF No. 41).  On May 9, 2011, D.R.

5  Horton filed a Reply.  (ECF No. 42).  On May 20, 2011, D.R. Horton filed a Request for

6  Judicial Notice in Support of its Motion for Partial Summary Judgment.  (ECF No. 44).

7        On April 15, 2011, ASIC filed a Motion for Summary Judgment, or Alternatively

8  Partial Summary Judgment.  (ECF No. 33).  On May 2, 2011, D.R. Horton filed an Opposition

9  (ECF Nos. 39-40).  On May 9, 2011, ASIC filed a Reply.  (ECF No. 43).

10       On May 20, 2011, D.R. Horton filed a Request for Judicial Notice.  (ECF No. 44).  On

11  May 23, 2011, ASIC filed an Opposition.  (ECF No. 45).

12       On May 27, 2011, the Court heard oral argument on the motions.  (ECF No. 46).

13       On August 31, 2011, ASIC filed a Supplemental Brief.[2]  (ECF No. 54).  On September

14  14, 2011, D.R. Horton filed an Opposition to the Supplemental Brief.  (ECF No. 55).

15  **II.    Factual Background**

16       The 03 policy was issued by ASIC to Ebensteiner and covered the period from August

17  1, 2001 through August 1, 2002.  (03 Policy, ECF No. 35-2 at 2).  On March 4, 2002,

18  Ebensteiner began performing grading work at the Canyon Gate project.  (ASIC Stmt. of

19  Undisputed Facts, ECF No. 33-2 at 3; Compl. ECF No. 1 at 10).

20       The 04 policy was issued by ASIC to Ebensteiner and covered the period from August

21  1, 2002 through August 1, 2003.  (04 Policy, ECF No. 35-3 at 2).

22       On January 23, 2003, "certain owners of pre-existing single-family homes in a

23  subdivision which was located ... adjacent to the Canyon Gate development ... instituted

24  lawsuits against three D.R. Horton entities consolidated as [*Fessler*]."  (ASIC Stmt. of

25  Undisputed Facts, ECF No. 33-2 at 7; *see also Fessler* Compl. ECF No. 33-9 at 10).  "The

26  *Fessler* homeowners alleged damage to their homes due to the grading operations of

27

28  _____

        [2]  In the Opposition, ASIC sought "more time to oppose this motion based on outstanding discovery issues that may defeat this motion."  (ECF No. 41 at 30).  The parties were permitted to file supplemental briefing.

Ebensteiner for D.R. Horton while grading the adjacent Canyon Gate project." (ASIC Stmt. of Undisputed Facts, ECF No. 33-2 at 7-8). "[T]he homeowners in the *Fessler* action alleged 'property damage' to their homes took place in 2002, commencing during the [03] policy [ASIC] issued to Ebensteiner." *Id*. at 8.

The 05 policy was issued by ASIC to Ebensteiner and covered the period from August 1, 2003 through August 1, 2004. (05 Policy, ECF No. 35-4 at 2).

During the course of the *Fessler* litigation, ASIC received Ebensteiner's job file which "reflected rough grading daily reports through May 2003." (Decl. Jean Fisher, ASIC attorney, ECF No. 35 at 4 ¶ 12). During the course of the *Fessler* litigation, ASIC received the Deposition of Jim Jordan who stated that construction of homes could not have begun at the Canyon Gate project until after May 2003 when the final tract map was approved. (Decl. Jean Fisher, ASIC attorney, ECF No. 35 at 4 ¶ 12; Depo. Jim Jordan, City of Santa Clarita, ECF No. 35-6 at 2, 5-6).

"After May 2003, [D.R. Horton] obtained various bids for the grading of the Canyon Gate lots." (ASIC Stmt. of Undisputed Facts, ECF No. 41-2 at 28). Ebensteiner was selected to perform the additional work.

The 06 policy was issued by ASIC to Ebensteiner and covered the period from August 1, 2004 through August 1, 2005. (06 Policy, ECF No. 25-10 at 2).

In October 2007, "ASIC paid for the defense of its Named Insured, Ebensteiner, and three D.R. Horton entities as purported 'additional insureds' under Ebensteiner's [03 policy]" to settle the *Fessler* litigation. (ASIC Stmt. of Undisputed Facts, ECF No. 33-2 at 8; Settlement Agmt., ECF No. 35-5 at 2).

On November 9, 2007, June Ebensteiner provided a Declaration to ASIC which stated: "The Ebensteiner Co. and the Ebensteiner Family Trust ceased to do business and had no ongoing operations as of July 31, 2004 [the end of the 05 policy period], and was not conducting business ...." (Decl. June Ebensteiner, ECF No. 35-7 at 2). On November 6, 2008, ASIC and June Ebensteiner entered into an agreement with ASIC to rescind the 06 policy. (ASIC letter, ECF No. 35-8 at 2-4, ASIC 2045-07).

On February 27, 2009, the complaint in the *Kim* case, one of the underlying actions, was

10cv443 WQH (WMc)

filed.  (*Kim* Compl., ECF No. 25-12 at 123).  The *Kim* plaintiffs are homeowners within the Canyon Gate project who allege that between March 6, 2002 and January 2003, "multiple backout failures, earth movement, and fissures and cracks in the ground surface occurred during the implementation of the unapproved design change for the shear keys by D.R. Horton, its subcontractors and engineers. During this entire time, D.R. Horton and its grading subcontractor were performing grading of the Canyon Gate project and extension of Golden Valley Road without approval from the City and doing so at 'their own risk.'" *Id*. at 138.  The *Kim* plaintiffs allege that monitors "showed significant movement along the slide planes of these landslides commenced almost immediately after D.R. Horton began the rough grading of Canyon Gate, which movement continues to the present date." *Id*. at 143.  The *Kim* plaintiffs allege that "the geologic hazards ... substantially interfered with the Plaintiffs use and enjoyment of their land." *Id*. at 161.  The *Kim* plaintiffs allege: "As a direct, foreseeable and proximate result of said interference, Plaintiffs have incurred physical damage to their land, improvements and structures located on their residential real properties and/or a diminution-in-value of their residential properties as a result ...." *Id*. at 161-62.

On April 2, 2009, D.R. Horton tendered a request for coverage to ASIC based on the *Kim* case.  (D.R. Horton letter, ECF No. 25-12 at 198).

On June 11, 2009, the complaint in the *Canyon Gate* case was filed on behalf of a homeowner's association for the Canyon Gate project.  The Complaint asserted essentially the same facts and claims as asserted in the *Kim* case.  (*Canyon Gate* Compl., ECF No. 25-13 at 2).  The *Canyon Gate* case also asserts a claim of private nuisance against D.R. Horton and other builders and stated that: "As a direct, foreseeable and proximate result of said interference, [Plaintiff has] incurred physical damage to its Common Areas." *Id*. at 34.

On September 22, 2009, the complaint in the *Warrick* case was filed asserting essentially the same facts and claims as asserted in the *Kim* case.  (*Warrick* Compl., ECF No. 25-13 at 61).  The *Warrick* plaintiffs are homeowners within the Canyon Gate project who assert a claim of private nuisance against D.R. Horton and other builders and allege: "As a direct, foreseeable and proximate result of said interference, [Plaintiffs] have incurred physical damage to their land, improvements and structures located on their residential real properties

1   and/or a diminution-in-value of their residential properties." *Id.* at 93.

2        On October 1, 2009, D.R. Horton tendered a request upon ASIC for coverage regarding

3   the *Kim*, *Canyon Gate*, and *Warrick* cases which "concern[ed] the grading and soils

4   stabilization work performed during construction of [the Canyon Gate project]." (D.R. Horton

5   letter, ECF No. 25-13 at 130). D.R. Horton provided copies of several notices to builder

6   received by D.R. Horton from November 14, 2008 through June 5, 2009 as well as copies of

7   the *Kim*, *Canyon Gate*, and *Warrick* complaints. *Id.* at 130-31.

8        The insurance policies at issue provide coverage as follows:

9        We will pay those sums that the insured becomes legally obligated to
         pay as damages because of 'bodily injury' or 'property damage' to
10       which this insurance applies. We will have the right and duty to defend
         the insured against any 'suit' seeking those damages. However, we will
11       have no duty to defend the insured against any 'suit' seeking damages
         for 'bodily injury' or 'property damage' to which this insurance does
12       not apply....

13          This insurance applies to 'bodily injury' and 'property damage'
         only if:
14
15       (1)   The 'bodily injury' or 'property damage' is caused by an
               'occurrence' that takes place in the 'coverage territory';
               and
16
17       (2)   The 'bodily injury' or 'property damage' occurs during
               the policy period.

18  (03 Policy, ECF No. 25-8 at 28; 04-05 Policies, ECF No. 25-9 at 4, 66; 06 Policy, ECF No. 25-

19  10 at 4).

20        The term "property damage" is defined as:

21       a.    Physical injury to tangible property, including all resulting loss
               of use of that property. All such loss of use shall be deemed to
22             occur at the time of the physical injury that caused it; or

23       b.    Loss of use of tangible property that is not physically injured.
               All such loss of use shall be deemed to occur at the time of the
24             'occurrence' that caused it.

25  (03 Policy, ECF No. 25-8 at 40; 04-05 Policies, ECF No. 25-9 at 16, 78; 06 Policy, ECF No.

26  25-10 at 16). The term "occurrence" is defined as: "'Occurrence' means an accident, including

27  continuous or repeated exposure to substantially the same general harmful conditions." (03

28  Policy, ECF No. 25-8 at 39; 04-05 Policies, ECF No. 25-9 at 15, 77; 06 Policy, ECF No. 25-10

    at 20).

On October 29, 2009, ASIC issued a letter to D.R. Horton declining D.R. Horton's request for coverage under the policies. The letter stated that ASIC had "evaluated the job file of the named insured to reaffirm that all of its work was concluded May 13, 2003 ...." (ASIC letter, ECF No. 35-9 at 3). The letter states that ASIC was "not aware of any ... tangible property existing at the plaintiffs' lots during [the 04 policy], and we are informed construction occurred at Canyon Gate after 8/01/03 [during the 05 policy]." *Id*. The letter states:

> In regard to [the 03 policy], there is no potential for 'property damage' claimed by plaintiffs as there was no 'property damage' existing on the lots during the policy period. The homes at issue in the new lawsuit were not started until after the expiration of [the 03 policy] and therefore, there is no potential for covered 'property damage' under this policy.

*Id*. at 5.

The letter stated that the 98 10 additional insured endorsement required a project to be "on file" but "a review of the underwriting file shows no indication of this project on file...."
*Id*. at 8. The letter stated:

> As this Additional Insured Endorsement applies to on-going operations only, and the claim filed by the homeowners is for completed operations, there would be no Additional Insured coverage for this claim.... Further, the coverage was intended to provide additional insured coverage for liability arising out of or relating to the Named Insured's sole negligence whereas the complaint of *Kim et. al.* does not pertain to the sole negligence of Ebensteiner Co. While DR Horton may have qualified as an additional insured on the [03] policy issued to Ebensteiner during its work to cover the claims in the *Fessler* matter, there is no coverage available for this claim involving completed operations. In comparison, there is no additional insured coverage available to DR Horton for these claims involving 'property damage' which potentially first arose at a time when Ebensteiner's operations were completed and were not ongoing.

*Id*. The letter does not address coverage under the 06 policy.

### III.   Contentions of the Parties

D.R. Horton contends that it is an additional insured under two endorsements to the 03, 04, 05, and 06 policies. D.R. Horton contends that ASIC improperly relied on policy exclusions to deny coverage and to refuse to defend D.R. Horton. D.R. Horton contends that the damage alleged in the underlying litigation was not Ebensteiner's work product. D.R. Horton contends that the damage alleged in the underlying litigation occurred during Ebensteiner's ongoing operations. D.R. Horton contends that the damage alleged in the

1  underlying litigation may have arisen out of Ebensteiner's sole negligence.  D.R. Horton

2  contends that D.R. Horton's wrap policies do not apply to this case.

3        D.R. Horton further contends that the 03 policy limits were not exhausted by ASIC's

4  payment of $1,000,000 to settle the *Fessler* suit.  D.R. Horton contends that Ebensteiner

5  performed work during the 06 policy period and that the rescission of the 06 policy was barred

6  as a matter of law.  D.R. Horton contends that ASIC's duty to defend began when D.R. Horton

7  provided ASIC with a notice to builder.  D.R. Horton contends that it has asserted a valid claim

8  of bad faith.

9        ASIC contends that D.R. Horton was not an additional insured under the 03, 04, 05, and

10  06 policies.  Even if D.R. Horton was an additional insured, ASIC contends that the work

11  product exclusions eliminate coverage because the property damage arose from Ebensteiner's

12  work.  ASIC contends that the ongoing operations restriction eliminates coverage in this case

13  because the property damage alleged in the underlying litigation arose from completed

14  operations.  ASIC contends that the sole negligence restriction eliminates coverage in this case

15  because the underlying actions do not allege damage that arose out of Ebensteiner's sole

16  negligence.  ASIC contends that the wrap policy provision eliminates coverage in this case

17  because D.R. Horton has not tendered a request to other insurers under the wrap policies.

18        ASIC further contends that the 03 policy was exhausted by ASIC's payment of

19  $1,000,000 to settle the *Fessler* suit and that the 06 policy was properly rescinded.  ASIC

20  contends that a notice to builder did not trigger the duty to defend.  ASIC contends that D.R.

21  Horton's bad faith claim fails as a matter of law and that D.R. Horton's declaratory relief claim

22  is redundant.

23  **IV.   Discussion**

24        Summary judgment is appropriate if there is no genuine issue as to any material fact and

25  the moving party is entitled to a judgment as a matter of law.  *See* FED. R. CIV. P. 56(c).  The

26  moving party has the initial burden of demonstrating that summary judgment is proper.  *See*

27  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970).  The burden then shifts to the opposing

28  party to provide admissible evidence beyond the pleadings to show that summary judgment

is not appropriate.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 324 (1986).  "In

considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

To avoid summary judgment, the nonmovant must designate which specific facts show that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 256; *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989). A "material" fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The materiality of a fact is thus determined by the substantive law governing the claim or defense. *See Anderson*, 477 U.S. at 252; *Celotex*, 477 U.S. at 322; *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Generally, "interpretation of an insurance policy is a question of law." *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 18 (1995). "Insurance policies are contracts to which ordinary rules of contractual interpretation apply." *Maryland Casualty Co. v. Nationwide Ins. Co.,* 65 Cal. App. 4th 21, 28 (1998). The court should "look first to the language of the contract in order to ascertain its plain meaning ...." *Waller*, 11 Cal.4th at 18. "A policy provision is ambiguous when it is capable of two or more constructions both of which are reasonable." *Id.* (quotations omitted). "Any ambiguous terms are resolved in the insureds' favor, consistent with the insureds' reasonable expectations." *Kazi v. State Farm Fire and Cas. Co.*, 24 Cal. 4th 871, 879 (2001).

"An insurer must defend any action that asserts a claim potentially seeking damages within the coverage of the policy." *Maryland Casualty Co.,* 65 Cal. App. 4th at 32 (quoting *Montrose Chemical Corp. v. Super. Ct.,* 6 Cal. 4th 287, 295 n.3, 300 (1993)); *see also Buss v. Superior Court*, 16 Cal. 4th 35, 46 n.10 (1997) (holding that the duty to defend is dependent on "at least potential coverage."). "[T]he duty to defend may exist even where coverage is in doubt and ultimately does not develop ...." *Kazi*, 24 Cal. 4th at 879; *see also Quan v. Truck Ins. Exchange,* 67 Cal. App. 4th 583 (1998) (explaining that because interpretation of an insurance policy is a question of law based on the contract "writings or memos by insurance company personnel venturing their opinions as to whether a defense should be afforded do not constitute

10cv443 WQH (WMc)

'admissions' of a defense duty."). "[F]or an insurer, the existence of a duty to defend turns not upon the ultimate adjudication of coverage under its policy of insurance, but upon those facts known by the insurer at the inception of a third party lawsuit." *Montrose,* 4 Cal. 4th at 295 (internal citations and quotations omitted). "[T]he duty to defend, although broad, is not unlimited; it is measured by the nature and kinds of risks covered by the policy." *Waller*, 11 Cal.4th at 19. "[W]here there is no potential for coverage, there is no duty to defend." *Infinet Marketing Services, Inc. v. American Motorist Ins. Co.,* 150 Cal. App. 4th 168, 177 (2007); *see also Hudson Ins. Co. v. Colony Ins. Co.,* 624 F.3d 1264, 1268 (9th Cir. 2010) (holding that the duty to defend does not exist where there is no legal theory or facts in the underlying complaint to potentially give rise to coverage) (citing *Gunderson v. Fire Insurance Exchange*, 37 Cal. App. 4th 1106 (1995)).

Accordingly, "[i]n resolving the question of whether a duty to defend exists ... the insurer has a higher burden than the insured." *American States Ins. Co. v. Progressive Cas. Ins. Co.*, 180 Cal. App. 4th 18, 27 (Cal. App. 2009). "'[T]he insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot'; the insurer, in other words, must present undisputed facts that eliminate any possibility of coverage." *Id.* (emphasis and citations omitted).

### A.   Additional Insured

#### i.   Additional Insured Endorsement 20 10

D.R. Horton contends that there was "at least a potential" that it was an additional insured under the 03 and 04 policies pursuant to 20 10 endorsements on the grounds that: (1) Ebensteiner's broker, Baccarella Insurance Services ("Baccarella"), issued Certificates of Insurance stating that D.R. Horton was additional insured under the 03 and 04 policies, and (2) ASIC was aware that Baccarella issued Certificates of Insurance and specifically authorized Baccarella to do so.  (ECF No. 25-1 at 18).

ASIC contends that D.R. Horton was not an additional insured under any 20 10 endorsements on the grounds that the policies did not contain 20 10 endorsements and the purported endorsements that D.R. Horton has produced were created by Ebensteiner's agent Baccarella, not ASIC.  ASIC contends that the 20 10 endorsements from Ebensteiner's agent

Baccarella to D.R. Horton were unauthorized and were not approved by ASIC.  ASIC contends that it cannot be liable for the acts of Bacarella as an "ostensible agent" on the grounds that it did not authorize or provide apparent authority to Baccarella to act as an agent of ASIC.  (ECF No. 43 at 10).

D.R. Horton has submitted a Certificate of Liability Insurance issued by Ebensteiner's agent Baccarella to Ebensteiner for the 03 policy which states: "RE: Canyon Gate ... [D.R. Horton is] hereby named as additional insured per CG2010 (11-85) attached." (ECF No. 25-10 at 61).   D.R. Horton has also submitted a Certificate of Liability Insurance issued by Ebensteiner's agent Baccarella to Ebensteiner for the 04 policy which states: "RE: Canyon Gate ... [D.R. Horton is] added as additional insured only as their interest may appear per CG2010 (11-85)."  (ECF No. 25-10 at 63).   D.R. Horton has also submitted the 20 10 additional insured endorsement form issued by Ebensteiner's agent Baccarella.  *Id*. at 64-65.

ASIC has submitted a quote for insurance dated July 17, 2002, on "American Safety Insurance Services, Inc." letterhead from Frank Dunne, ASIC's Underwriter, to Jack Smith of "Brown & Riding," ASIC's surplus line producer, regarding "Insurance Proposal for Ebensteiner Company" which states the terms of the insurance.  (ECF No. 35-12 at 2).  The quote allows for the enhancement of "additional Insured Wording where required by written contract and as per [ASIC] Additional Insured Endorsements."[3]  *Id*. at 3.  The quote contains a section titled "Warranties/Requirements" which states:

> The company has granted the Producer named above the authority to issue certificates of insurance on behalf of the Named Insured. However, in no event does such producer have the authority to issue certificates of insurance which include any addition to or modification of the policy terms and conditions, or to add any additional insureds and/or change any term, condition, provision of the policy unless such changes or modifications are first approved by policy endorsement issued by the company and signed by an officer.

*Id*.

D.R. Horton has submitted a fax dated July 22, 2002, on "American Safety Insurance Services, Inc" letterhead, from Candy Woodward, Assistant Underwriter for ASIC, to Jack

---

[3] The policies each contain a blank 98 15 Additional Insured endorsement.  The policies do not contain a blank 20 10 Additional Insured endorsement.

Smith of "Brown & Riding," ASIC's surplus line producer, with the subject line "Ebensteiner Company" which states: "I spoke with Frank [ASIC's Underwriter] this morning concerning the CG2010's on this account.  He said that he didn't have a problem with 15-20 of them but anymore than that he would have to look into ....  I noticed the list has many more than that so I don't know what can be done with such a large list."  (ECF No. 25-10 at 67).  ASIC has submitted a letter dated July 18, 2002, from "Ron Arody for Jack Smith" of Brown & Riding, ASIC's surplus line producer,  regarding Ebensteiner Co. which states: "Attached please find a copy of the list of Additional Insureds regarding the GC 20 10 11/85 on the current policy." (ECF No. 35-16 at 4).  The list includes 39 additional insureds. D.R. Horton does not appear on that list.

ASIC has submitted a letter dated July 28, 2003, from Kelly Nguyen of Brown & Riding, ASIC's surplus line producer, to Frank Dunn, ASIC's Underwriter, which states:

> Last year you have (sic) agreed to provide CG 2010 1185 on certain projects.  Some of those projects are on going and we need to continue with the CG2010 1185 on the renewed policy.  Please endorse the policy to provide CG2010 1185 for those on going projects.  An updated list of those projects is attached.

(ECF No. 35-17 at 2).  The attached list includes 39 additional insureds.  D.R. Horton does not appear on that list.

ASIC has submitted a quote for insurance dated August 13, 2003 regarding the 05 policy which states:

> The company has granted the Producer named above the authority to issue certificates of insurance on behalf of the Named Insured.  However, in no event does such producer have the authority to issue certificates of insurance which include any addition to or modification of the policy terms and conditions, or to add any additional insureds and/or change any term, condition, provision of the policy unless such changes or modifications are first approved by policy endorsement issued by the company and signed by an officer.

(ECF No. 35-13 at 4).

Under California law a principal may be liable for the acts of an "ostensible agent" where the following three elements are met: "(1) 'the person dealing with the agent must do so with belief in the agents authority and this belief must be a reasonable one,' (2) 'such belief must be generated by some act or neglect of the principal sought to be charged,' and (3) 'the

third person in relying on the agent's apparent authority must not be guilty of negligence.'" *Certain Underwriters at Lloyd's of London v. Am. Safety Ins. Servs., Inc.*, 702 F. Supp. 2d 1169, 1173 (C.D. Cal. 2010) (quoting *Mejia v. Community Hospital of San Bernardino*, 99 Cal. App. 4th 1448, 1456 (2002)); *see also Am. Cas. Co. of Reading, Penn. v. Krieger*, 181 F.3d 1113, 1121 (9th Cir. 1999) ("'An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him.'") (quoting Cal. Civ. Code § 2300). Ostensible agency has been applied to the insurance context as existing "where the principal knows that the agent holds himself out as clothed with certain authority, and remains silent." *Preis v. Am. Indem. Co.*, 220 Cal. App. 3d 752, 760 (1990); *see also Am. Cas. Co. of Reading, Penn.*, 181 F.3d at 1121 (explaining that the principal is liable for the acts of another where it "intentionally or by want of ordinary care has caused or allowed [the third party] to believe the agent possesses such authority...."); *see also Alex Robertson Co. v. Imperial Casualty & Indemnity Co.*, 8 Cal. App. 4th 338, 343-46 (1992).

In this case, the 03, 04, 05, and 06 policies issued by ASIC do not contain generic form 20 10 endorsements. The form 20 10 additional insured endorsements that D.R. Horton obtained regarding the 03 and 04 policies were provided by Ebensteiner, who had obtained them from Ebensteiner's agent Baccarella. ASIC limited the authority of its underwriter to offer certificates of insurance only in circumstances where any additional insured enhancement was first approved by ASIC and the approval was signed by an officer. ASIC's surplus line producer, Brown & Riding, issued certificates of insurance to a list of purported additional insureds; however, the list did include D.R. Horton or the Canyon Gate project. There is no evidence that ASIC was aware that Ebensteiner's agent Baccarella issued form 20 10 additional insured endorsements to D.R. Horton or that ASIC granted Ebensteiner's agent Baccarella authority to issue form 20 10 additional insured endorsements to D.R. Horton. The Court concludes that any belief that D.R. Horton may have had regarding its status as an additional insured pursuant to a form 20 10 endorsement was not "generated by some act or neglect of the principal sought to be charged[.]" *Certain Underwriters at Lloyd's of London*, 702 F.Supp.2d at 1173. Accordingly, any action against D.R. Horton could not assert a "claim

10cv443 WQH (WMc)

potentially seeking damages within the coverage of the policy[]" pursuant to any 20 10 additional insured endorsement. *Montrose Chemical Corp.,* 6 Cal. 4th at 300.  The record shows that ASIC did not have a duty to defend D.R. Horton under the policies pursuant to any 20 10 endorsements

### ii.    Additional Insured Endorsement 98 15

D.R. Horton contends that it "qualified, at least potentially, as an additional insured under the [98 15] endorsement" on the grounds that the subcontractor agreement between D.R. Horton and Ebensteiner required Ebensteiner to name D. R. Horton as an additional insured and the Canyon Gate project was on file with ASIC.  (ECF No. 25-1 at 18).  D.R. Horton contends that ASIC has "acknowledged the on file requirement can be met by showing anything in writing that is contained in [ASIC's] own files indicating the project site was covered."  (ECF No. 42 at 8).  D.R. Horton contends that a waiver of subrogation form attached to the 03 policy shows that the Canyon Gate project was on file.

ASIC contends that D.R. Horton is not an additional insured pursuant to the 98 15 endorsement on the grounds that the Canyon Gate project was not on file with ASIC.  ASIC contends that "[t]o be on file, there must be some indication of approval by the underwriter and/or within the policy that a project is covered."  (ECF No. 41 at 21.)  ASIC contends that the generic endorsements attached to the policies do not name D. R. Horton or the Canyon Gate project so the project was not on file.[4]

---

[4] D.R. Horton contends that according to the terms of the *Fessler* settlement agreement, it is conclusively presumed to be true that D.R. Horton was named as an additional insured. The settlement agreement states that it was made: "[w]ithout admission by any party hereto of any liability, and for the purpose of settlement of the Action [ASIC] and [D.R. Horton] ... wish to settle existing claims ...."  (ECF No. 25-11 at 125).  The settlement agreement states: "American Safety issued policies, [03, 04] and XG-1021261-008 ... to Ebensteiner Co. which named [D.R. Horton] as an additional insured." *Id.*
California Evidence Code section 622 provides: "The facts recited in a written instrument are conclusively presumed to be true as between the parties thereto, or their successors in interest; but this rule does not apply to the recital of a consideration."  Cal. Evid. Code § 622.  In *People ex rel. Dept. of Public Works v. Forster,* 58 Cal.2d 257 (1962), the court held that, "the declaration (in an offer of compromise) of facts involved in the controversy which are not mere concessions made for the purpose of such offer, but are statements of independent facts, are admissible against the party making them."  *Id.* at 263(quotation omitted).  However, "[t]he rule of the *Forster* case is changed by [California Evidence Code section 1152(a) ] because that rule prevents the complete candor between the parties that is most conducive to settlement." *Caira v. Offner,* 126 Cal. App. 4th 12, 33 (2005); *see also* Cal. Evid. Code § 1152(a) ("Evidence ... [of] any conduct or statements made in

The 03, 04, 05, and 06 policies each contain a generic form 98 15 titled "Additional Insured" endorsement which states: "Name of person or organization: Those parties required to be named as an Additional Insured in a written contract with the Named Insured entered into prior to the loss or occurrence.  Name of Project: Those projects on file with the Company." (ECF No. 25-8 at 27, 57; ECF No. 25-9 at 3, 33, 64, 95; ECF No. 25-10 at 3, 30).

D.R. Horton has submitted the subcontract between D.R. Horton and Ebensteiner dated April 12, 2002, which required Ebensteiner provide D.R. Horton with a certificate of insurance that "name[s] D.R. Horton ... as an additional insured."  (ECF No. 25-8 at 24).  ASIC does not dispute that the subcontractor agreement between D.R. Horton and Ebensteiner required Ebensteiner to name D. R. Horton as an additional insured.

D.R. Horton has submitted a letter dated April 24, 2002, from ASIC to Brown & Riding stating, as the subject line "Ebensteiner Co. Endorsement ES 98 13 08 99 Attached to Policy ["03 "]," and an "ASIC - ES 98 13 08 99 Endorsement - Waiver of Subrogation" form which lists the organization as D. R. Horton and the Canyon Gate project.  (ECF No. 25-15 at 8-11).  The waiver of subrogation form states: "In consideration of the payment of premiums, we [ASIC] waive our right to subrogation against the person or organization named above [D.R. Horton] in connection with the sole negligence of the Named Insured [Ebensteiner] in the performance of 'your work' on the project described below [Canyon Gate] ...." *Id.* at 11.

In this case, the policies each contain a form 98 15 additional insured endorsement which allow for additional insureds to be added to the policies.  The policies provide for additional insurance coverage where the party is required to be named as an additional insured in a written contract with the named insured.  The subcontractor agreement between D.R. Horton and Ebensteiner required Ebensteiner to name D. R. Horton as an additional insured under the insurance.  The terms of the policies do not define "on file" within the meaning of

---

negotiation [of settlement], is inadmissible to prove his or her liability for the loss or damage or any part of it.").

The Court finds that the settlement agreement was entered into for the purpose of settlement and the settlement agreement did not contain any admissions of liability.  To the extent that there is a factual recital, the Court finds that it is a "mere concession[] made for the purpose of [settlement]" and inadmissible to prove ASIC's liability in this case. *See Forster,* 58 Cal.2d at 263; Cal. Evid. Code § 1152(a).

10cv443 WQH (WMc)

form 98 15, which weighs in favor of coverage. *See Golden Eagle Ins. Co. v. Insurance Co. of the West*, 99 Cal. App. 4th 837, 845 (2002) ("Ambiguities in insurance contracts are generally construed in favor of coverage.") (citing *Ins. Co. v. Superior Court*, 51 Cal.3d 807, 822 (1990)). The Court finds that there is at least a factual dispute regarding whether the Canyon Gate project was "on file" with ASIC pursuant to the inclusion of the "ASIC - ES 98 13 08 99 Endorsement - Waiver of Subrogation" form in the 03 policy. *See Montrose Chemical Corp.*, 6 Cal.4th at 295 n.3 (finding that there was a duty to defend although the parties factually disputed whether the plaintiff was a named insured under the policy). There is evidence in the record to support the finding that the Canyon Gate project was on file with ASIC within the meaning of the policies because the waiver of subrogation form identified D.R. Horton and related to work at the Canyon Gate project. The Court concludes that there was a potential for coverage and that ASIC had a duty to defend D.R. Horton as an additional insured pursuant to the 98 15 endorsements. *See Montrose Chemical Corp.*, 6 Cal. 4th at 300.[5]

## B.    03 Policy Per Occurrence Limit

ASIC contends that there is no potential for coverage under the 03 policy because the policy was exhausted by the payment of the $1,000,000 per-occurrence limit in the *Fessler* suit. ASIC contends that it properly allocated the entire $1,000,000 payment to the 03 policy on the grounds that the policies contained a "deemer provision" that all damage which commenced prior to the inception of the policy is deemed to have occurred in any prior policy, and that the policies contained an exclusion for preexisting injuries. (ECF No. 41 at 28).

---

[5] D.R. Horton has also requested that the Court take judicial notice of a Declaration dated March 18, 2011 which was submitted by Jean Fisher, ASIC corporate claims counsel, in support of ASIC's motion for summary adjudication filed in *ASIC v. Admiral Insurance Co.*, Case No. 37-2010-00092157-CU-IC-CTL, Superior Court of California for the County of San Diego. Fisher states: "[D.R. Horton] which contracted with [Ebensteiner] qualified as an additional insured on [the 03 policy]." (ECF No. 44 at 6). Courts may take judicial notice of other courts' proceedings if they "directly relate to matters before the court." *Hayes v. Woodford*, 444 F. Supp. 2d 1127, 1136-37 (S.D. Cal. 2006); *see also United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992 ); Fed R. Evid. 210(b). D.R. Horton's request for judicial notice of the Fisher Declaration is GRANTED. However, the Court does not rely on the statements contained in the Fisher Declaration in reaching its decision in this Order. *See Quan v. Truck Ins. Exchange*, 67 Cal. App. 4th 583, 602 (1998) (explaining that because interpretation of an insurance policy is a question of law based on the contract "writings or memos by insurance company personnel venturing their opinions as to whether a defense should be afforded do not constitute 'admissions' of a defense duty.").

ASIC contends that the allegations in the *Kim*, *Canyon Gate*, and *Warrick* cases do not raise a possibility of a second occurrence under the 03 policy on the grounds that the damage alleged in the *Kim*, *Canyon Gate*, and *Warrick* complaints and the damage alleged in the *Fessler* suit are based on the same proximate cause: Ebensteiner's grading work at the Canyon Gate project.  *See* (ECF No. 33 at 30).

D.R. Horton contends that "ASIC has not eliminated the potential for coverage" on the grounds that ASIC had a duty to split the settlement in *Fessler* of $1,000,000, between the 03 and 04 policies instead of exhausting the 'per occurrence' limit for the 03 policy.  (ECF No.25-1 at 23).  D.R. Horton contends that the damages alleged in the *Fessler* suit arose during the 03 policy and continued into the 04 policy; therefore, ASIC's "implied covenant ... to give at least as much consideration to [D.R. Horton's] interests as [ASIC did] to its own[] ... required ASIC to split the settlement between [the 03 and 04] policies."  *Id*. at 23.  D.R. Horton contends that even if ASIC properly allocated the entire $1,000,000 payment to the 03 policy, the property damage alleged in the underlying litigation arose out of a different occurrence than the damage in the *Fessler* case because the damaged properties were located on a different slope.  D.R. Horton contends that the 03 policy's aggregate limit of $2,000,000 is available, because the damage in the underlying litigation arose out of a separate occurrence.

It is undisputed that the homeowners in the *Fessler* action alleged that there was property damage to their homes beginning in 2002 and that the damage was ongoing.  It is undisputed that ASIC paid $1,000,000 to settle the *Fessler* litigation.

The 03 and 04 policies provided $1,000,000 of coverage for each occurrence limited to a general aggregate total of $2,000,000 of coverage.  (ECF No. 25-8 at 26, 62; ECF No. 25-9 at 2, 38).  The 03 and 04 policies contain a provision that states: "'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions that happens during the term of this insurance."  (ECF No. 25-8 at 39; ECF No. 25-9 at 15).  The "Amended Definitions Endorsement  - Occurrence or Duty to Defend" form attached to the 03 and 04 policies adds: "'Property damage', 'bodily injury' or 'personal and advertising injury' which commenced prior to the effective date of this insurance will be deemed to have happened prior to, and not during, the term of this Insurance." (ECF No. 25-8

at 47; ECF No. 25-9 at 23).  The "Pre-existing Injury or Damage Exclusion" form attached to the 03 and 04 policies state:

> This insurance does not apply to:
>
> 1.    Any 'occurrence', incident or 'suit' whether known or unknown to any officer of the Named Insured:
>
>     a.    Which first occurred prior to the inception date of this policy ...; or
>
>     b.    Which is, or is alleged to be, in the process of occurring as of the inception date of this policy ... even if the 'occurrence' continues during this policy period.

(ECF No. 25-8 at 52; ECF No. 25-9 at 28).

The Court finds that the 03 and 04 policies allowed for ASIC to assign property damage that commenced in one term and continued into another term to the first term.  The Court concludes that the 03 policy limit per occurrence has been exhausted.  However, the 03 policy also provided an aggregate limit of $2,000,000 where there are separate occurrences.

"The *number* of relevant occurrences for the purpose of interpreting the per occurrence limitation of liability is different from the question of *when* the relevant occurrence happens for the purpose of determining if there is coverage at all, or whether coverage should be allocated to a particular policy period."  *Whittaker Corp. v. Allianz Underwriters, Inc*., 11 Cal. App. 4th 1236, 1242 (1992).  With regard to whether there is a single or multiple occurrences, the court looks to the "underlying proximate cause."  *Id.* (citing *Appalachian Ins. Co. v. Liberty Mut. Ins. Co.*, 676 F.2d 56, 61 n.11 (3rd Cir. 1982)); *see also EOTT Energy Corp. v. Storebrand Internat. Ins. Co.*, 45 Cal. App.4th 565, 577-78 (1996).

The 03 policy was effective from August 2001 through August 2002.  At the time that ASIC denied tender of the defense in this case, ASIC had Ebensteiner's job file and job logs which ended in May 2003.  ASIC had information regarding Ebensteiner's work during the 03 policy period which consisted of grading at the Canyon Gate project.

The *Fessler* complaint and the *Kim*, *Canyon Gate*, and *Warrick* complaints each allege damage caused by the grading work at the Canyon Gate project.  To the extent that some of the damage alleged by the *Kim*, *Canyon Gate*, and *Warrick* plaintiffs occurred during the 03 policy, the damage would have arisen out of the same grading work that ASIC had already

determined was an "occurrence"and had paid the $1,000,000 per occurrence policy limit.  The damage alleged by the *Kim*, *Canyon Gate*, and *Warrick* plaintiffs arose out of the same proximate cause and does not constitute a second occurrence because the damaged property is located on a different slope.  *See Whittaker Corp.*, 11 Cal. App. 4th at 1242 (holding that the number of occurrences under a policy is determined by the "underlying proximate case" of the injury).

The Court concludes that ASIC has presented undisputed facts and has eliminated any possibility of coverage under the 03 policy.  *See American States Ins. Co.*, 180 Cal. App. 4th at 27.  The Court concludes there was no potential for coverage and no duty to defend D.R. Horton under the 03 policy on the grounds that any action against D.R. Horton could not assert a "claim potentially seeking damages within the coverage of the policy." *Montrose Chemical Corp.*, 6 Cal. 4th at 300; *see also Whittaker Corp.*, 11 Cal. App. 4th at 1242.[6]

## C.    06 Policy

D.R. Horton contends that Ebensteiner performed work during the 06 policy period as shown by certain change orders, a waiver, and an invoice dated in August 2004.  D.R. Horton contends that "[a]t minimum ... there is a factual dispute about whether Ebensteiner was performing 'ongoing operations' during the 06 policy."  (ECF No. 40 at 15).

ASIC contends that Ebensteiner "had no ongoing operations [during the 06 policy] to give rise to new accidents and exposures...."  (ECF No. 41 at 29).

D.R. Horton has submitted a daily log report dated August 2, 2004 which states: "[quantity] 4 inlet structures $150.00 each ... [quantity] 4 outlet structures $150.00 each ... 1 month rental and back flow device ... July 1 - July 31 $1,000 ...."  (ECF No. 25-11 at 67).  D.R. Horton has submitted a change order dated August 4, 2004 and a change order dated August 11, 2004, from D.R. Horton to Ebensteiner authorizing certain work identified in daily log

---

[6]    ASIC also seeks to apply the "per occurrence" limit across the policies.  ASIC contends that the California Supreme Court is considering this issue.  *See State v. Continental Ins. Co./(Employers Ins. of Wausau)*, 91 Cal. Rptr. 3d 106 (2009) (granting the petition for review by the Supreme Court of California).  In this case, the policies provide: "The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period ...." (ECF No. 35-2 at 11).  The policies do not otherwise expressly apply the per occurrence limit across consecutive policies.

1  reports dated between June 2004 and July 2004 as well as the daily log report dated August 2,

2  2004. *Id*. at 69, 71. D.R. Horton has submitted an invoice from Ebensteiner to D.R. Horton

3  dated August 31, 2004. *Id*. at 77. D.R. Horton has also submitted an "Unconditional Waiver

4  and Release Upon Final Payment" dated January 7, 2005, stating that Ebensteiner had been

5  paid by D.R. Horton for the work done at the Canyon Gate project. *Id*. at 79.

6      The Court finds that D.R. Horton has failed to submit evidence to show that Ebensteiner

7  performed work during the 06 policy period. The invoice and unconditional waiver and release

8  upon final payment submitted by D.R. Horton do not show that Ebensteiner performed work

9  after July 31, 2004. The daily log report dated August 2, 2004 records the use of materials and

10  the "1 month rental" of a back flow device from "July 1 - July 31 ...." (ECF No. 25-11 at 67).

11  The change orders dated August 4 and 11, 2004 approve work performed between June 2004

12  and July 2004 and approve the daily log report dated August 2, 2004 for the rental of

13  equipment in July 2004. The Court concludes that D.R. Horton has failed to carry its burden

14  to show that there is no genuine issue as to any material fact and that D.R. Horton is entitled

15  to a judgment as a matter of law that ASIC owed a duty to defend D.R. Horton under the 06

16  policy.[7] *See* FED. R. CIV. P. 56(c); *see also Adickes*, 398 U.S. at 152.

17      **D.    Exclusions for Property Damage Arising Out of "Your Work"**

18      ASIC contends that the work product exclusions of j(5) and j(6) eliminate coverage for

19  property damage arising from Ebensteiner's work from all policies. (ECF No. 33 at 20). ASIC

20  contends that "Ebensteiner graded the entire site so the site is its work product and therefore

21  is not covered." (ECF No. 43 at 2). ASIC asserts that the "subcontract agreement" between

22  D.R. Horton and Ebensteiner shows that Ebensteiner's work encompassed the entire tracts

23  because the subcontract agreement provides that the contract is for "rough grading" of tracts

24  "48892, 48892-02." (ECF No. 25-8 at 2). ASIC asserts that a letter dated September 7, 2007,

25  to ASIC from D.R. Horton shows that Ebensteiner's work encompassed the entire tracts

26  because it states that Ebensteiner "conducted the grading of the Canyon Gate project." (ECF

27  No. 25-12 at 2). ASIC also asserts that Ebensteiner's job file with entries dating from February

28

---

[7] ASIC has not moved for summary judgment on the 06 policy. The issue remains pending. The Court makes no ruling on whether rescission of the 06 policy was proper.

12, 2002 through March 4, 2003 shows that Ebensteiner performed rough grading work on the entire Canyon Gate project.[8]  (ECF No. 25-10 at 69-116).

D.R. Horton contends that ASIC had a duty to defend and that the work product exclusions do not eliminate potential coverage because they "only apply to the 'particular part' of the property on which the insured was working ...."  (ECF No. 40 at 24).   D.R. Horton contends that the damage, which consisted of cracking and fissures, may have occurred on portions of the property where Ebensteiner had not worked.  D.R. Horton contends that the damage alleged  relates to property that was not Ebensteiner's work product.  D.R. Horton contends that to eliminate potential coverage under ASIC's interpretation of the j(5) and (6) exclusions, "ASIC must prove that Ebensteiner actually worked on all of the land that suffered damage." *Id.* at 19.

The insurance policies at issue provide for coverage as follows:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies....
>
> This insurance applies to 'bodily injury' and 'property damage' only if:
>
> (1)   The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; and
>
> (2)   The 'bodily injury' or 'property damage' occurs during the policy period.

(ECF No. 25-8 at 28; ECF No. 25-9 at 4, 66; ECF No. 25-10 at 4).

The term "property damage" is defined as:

> a.   Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

---

[8]  ASIC also asserts that Ebensteiner's job file with entries dating from January through August 2, 2004, two change orders dated August 11 and 18, 2004, and a final billing statement dated August 31, 2004, as well as statements in the Deposition of Glen Longarini which was taken on February 24, 2011 show that Ebensteiner performed rough grading work on the entire Canyon Gate project. (ECF No. 28-11 at 2-77; 36-3 at 2).  However, ASIC has failed to show that it was aware of this evidence at the time it denied D.R. Horton's tender.  As discussed above, "a duty to defend turns not upon the ultimate adjudication of coverage under its policy of insurance, but upon those facts known by the insurer at the inception of a third party lawsuit." *Montrose,* 4 Cal. 4th at 295.

b.   Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it.

(ECF No. 25-8 at 40; ECF No. 25-9 at 16, 78; ECF No. 25-10 at 16).

The policies contain work product exclusions j(5) and j(6) which state that there is no coverage for: "'property damage' to ... (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations; or (6) [t]hat particular part of any property that must be restored, repaired, or replaced because 'your work' was incorrectly performed on it."  (ECF No. 33-2 at 20-21).

The j(5) and j(6) exclusions "preclude coverage for deficiencies in the insured's work." *Clarendon Am. Ins. Co. v. Gen. Sec. Indem. Co. of Ariz.*,193 Cal. App. 4th 1311, 1325 (2011) (explaining that defect and deficiencies in the insured's work would be excluded by j(5) and j(6)) (citation omitted).  "Generally, liability policies ... are not designed to provide contractors and developers with coverage against claims *their work* is inferior or defective." *Maryland Casualty Co. v. Reeder*, 221 Cal. App.3d 961, 967 (1990) (citation omitted) (emphasis aded). Work product exclusions such as those contained in exclusions j(5) and j(6) exclude "repair and replacement losses" and are intended to provide "incentive to exercise care in workmanship thereby reducing the risk that is covered."  *Western Employers Ins. Co. v. Arciero & Sons, Inc.*, 146 Cal. App. 3d 1027, 1031-32 (1983) (quotation and citation omitted). "Rather, the effect of the policy is to make the contractor stand its own replacement and repair losses while the insurer takes the risk of injury to the property of others." *Id.* at 31.  "The risk intended to be insured is the possibility that the ... work of the insured, once relinquished or completed, will cause bodily injury or damage to property *other than to the product or completed work itself* ...." *Id.* (quotation and citation omitted) (emphasis added).

In this case, the *Kim*, *Canyon Gate*, and *Warrick* plaintiffs are homeowners and landowners within the Canyon Gate project.  The *Kim* plaintiffs allege that between March 6, 2002 through January 2003, "multiple backcut failures, earth movement, and fissures and cracks in the ground surface occurred during the implementation of the unapproved design change for the shear keys by D.R. Horton, its subcontractors and engineers." (ECF No. 25-12

22

at 138).   The *Kim* plaintiffs allege that monitors were installed during the rough grading process which "showed significant movement along the slide planes of these landslides commenced almost immediately after D.R. Horton began the rough grading of Canyon Gate, which movement continues to the present date." *Id*. at 143.   The *Kim* plaintiffs allege that "the geologic hazards ... substantially interfered with the Plaintiffs use and enjoyment of their land." *Id*. at 161.   The *Kim* plaintiffs allege that the interference with the use and enjoyment of their land is "indefinite and unreasonable, in that their properties have sustained permanent physical injury, measures taken in remediation of the current geological hazards are not likely to restore their property to its original market value, and the geologic conditions present an ongoing and significant risk of additional future harm." *Id*.   The *Kim* plaintiffs allege: "As a direct, foreseeable and proximate result of said interference, Plaintiffs have incurred physical damage to their land, improvements and structures located on their residential real properties and/or a diminution-in-value of their residential properties as a result ...." *Id*. at 161-62.   The *Canyon Gate* plaintiff also asserts a claim of private nuisance against D.R. Horton and other builders and states that: "As a direct, foreseeable and proximate result of said interference, [Plaintiff has] incurred physical damage to its Common Areas."  (ECF No. 25-13 at 34).   The *Warrick* plaintiffs allege: "As a direct, foreseeable and proximate result of said interference, [Plaintiffs] have incurred physical damage to their land, improvements and structures located on their residential real properties and/or a diminution-in-value of their residential properties." *Id*. at 93.

The *Kim*, *Canyon Gate*, and *Warrick* plaintiffs allege damage beyond the repair and replacement of the grading work.   The *Kim*, *Canyon Gate*, and *Warrick* plaintiffs allege damage to their land and property caused by the grading work at the Canyon Gate project. A claim for repair of damage to land or property other than the grading work itself is not excluded by j(5) and j(6).   There is a potential for coverage and the j(5) and j(6) work product exclusions did not eliminate a duty to defend.

Even if the Court presumed that the j(5) and j(6) exclusions preclude coverage for damage to land or property upon which Ebensteiner had performed any work, the Court does not conclude that ASIC has eliminated any possibility of coverage under the 04 and 05

policies.  ASIC has failed to show that at the time it declined to provide a defense, ASIC relied upon information that showed that Ebensteiner had graded all of the land within the Canyon Gate project.  The subcontractor agreement identified the location of work as tracts "48892, 48892-02." (ECF No. 25-8 at 2).  However, the subcontractor agreement does not show that Ebensteiner graded the entire tracts.  The letter dated September 7, 2007, to ASIC from D.R. Horton states that Ebensteiner "conducted the grading of the Canyon Gate project." (ECF No. 25-12 at 2).  The letter describes the work done by Ebensteiner; the letter does not show that Ebensteiner performed work on the *entire* tracts.  Finally, Ebensteiner's job file entries dating from February 12, 2002 through March 4, 2003 list material and equipment used as well as hours spent, but the job file entries do not show whether Ebensteiner performed work on the entire tracts.

The Court finds that the *Kim*, *Canyon Gate*, and *Warrick* plaintiffs allege damage to their land and property other than the repair and replacement of the grading work by Ebensteiner.  The Court finds that the *Kim*, *Canyon Gate*, and *Warrick* complaints assert claims potentially seeking to recover for damage to land or property located within the Canyon Gate project, but built on portions of the Canyon Gate project which Ebensteiner had not performed grading work.  ASIC has failed to show that there was no "potential" that Ebensteiner's grading work caused damage to land or property which would not be excluded by j(5) and j(6). *Montrose Chemical Corp*., 6 Cal. 4th at 300.  At the time of the denial of coverage, the Court concludes that the j(5) and j(6) work product exclusions in the 04 and 05 policies did not eliminate a duty to defend.  *See Kazi*, 24 Cal. 4th at 879.

### E.      Limitation of Coverage to "Ongoing Operations"

ASIC contends that the additional insured endorsements restrict coverage to Ebensteiner's ongoing operations which would only include liability that arises while Ebensteiner's work was in progress.  ASIC contends that the underlying actions do not allege that damage occurred while Ebensteiner was performing grading work.  ASIC contends that the underlying actions allege exclusively completed operations damages because they "seek damages from the sale of the completed homes and structures" purchased in 2005-2006. (ECF No. 33 at 25).  ASIC contends that there was no potential for coverage for damage to homes

24

1   under the 05 policy because "nothing ... could be built on any lot or other area of the project

2   unless and until Ebensteiner's grading operations on that lot or area was completed." *Id*. ASIC

3   further contends that there was no potential for coverage for damage to land under the 04 and

4   05 policies because "graded dirt" is not tangible property.  (ECF No. 41 at 25).

5          D.R. Horton contends that the policies provide for coverage where the property damage

6   in the underlying litigation occurred during the policy period.  D.R. Horton contends that "the

7   underlying complaints do not allege when the property damage occurred.  Therefore, there was

8   at least a potential that property damage occurred during each policy period."  (ECF No. 25-1

9   at 20).  D.R. Horton contends that there was a potential for coverage during each of the 04 and

10  05 policies on the grounds that damage could have occurred to the land during Ebensteiner's

11  ongoing operations.  D.R. Horton contends that there was also a potential for coverage under

12  the 05 policy on the grounds that damage could have occurred to home which were built during

13  Ebensteiner's ongoing operations.

14          The policies at issue state: "We will pay those sums that the insured becomes legally

15  obligated to pay as damages because of ... 'property damage' to which this insurance applies

16  ...."  (ECF No. 33-2 at 10-11).  The policies state: "This insurance applies to 'bodily injury'

17  and 'property damage' only if: ... (2) the 'bodily injury' or 'property damage' occurs during

18  the policy period."  *Id*.  The policies define "property damage" as "physical injury to tangible

19  property, including all resulting loss of use of that property ...."  *Id*. at 11-12. The 04 and 05

20  additional insured endorsements form 98 15 state: "This Endorsement applies only to *ongoing*

21  operations performed by the Named Insured ...."  (ECF No. 25-9 at 33, 95) (emphasis added).[9]

22  Insurance policies which "expressly restrict coverage for an additional insured to the 'ongoing

23  operations' of the named insured" ... "effectively preclude[s] application of the endorsement's

_____

25          [9]  D.R. Horton also contends that the word "ongoing" was not present in the additional
    insured endorsement to the 03 policy and ASIC could not insert the word "ongoing" into the
26  04, 05, and 06 policies on the grounds that the term restricts coverage beyond what D.R.
    Horton reasonably expected, and ASIC did not make the limitation in liability sufficiently clear
27  to D.R. Horton.  (ECF No.25-1 at 24; ECF No. 40 at 21).  ASIC contends that it was not
    required to notify D. R. Horton of the insertion of the term "ongoing" into its policies on the
28  grounds that insurance code excludes surplus line insurance, additional insured, and third party
    beneficiaries from the notice requirements.  (ECF No. 43 at 7-8).  Presuming that the 04, 05,
    and 06 policies contained a restriction on coverage to Ebensteiner's ongoing operations, ASIC
    has failed to eliminate coverage as discussed below.

coverage to completed operations losses." *Pardee Const. Co. v. Insurance Co. of the West*, 77 Cal. App. 4th 1340, 1359 & n.16 (2000) (explaining that coverage restrictions to "your ongoing operations" restricts liability to "work in progress only").

The California Supreme Court has held: "'Tangible property' is not ambiguous, and coverage therefore does not turn on alternative meanings. Consistent with an insured's reasonable expectations, 'tangible property' refers to things that can be touched, seen, and smelled." *Kazi*, 24 Cal.4th at 880 (distinguishing tangible property from an easement which is an intangible legal interest in real property). As discussed above, the *Kim*, *Canyon Gate*, and *Warrick* plaintiffs each allege damage to their "land" or "Common Areas." (ECF No. 25-12 at 161; ECF No. 25-13 at 2, 93).

With respect to the alleged damage to "graded dirt" or land during the 04 and 05 policies, the Court does not find, as a matter of law, that "graded dirt" or land is not tangible property. The *Kim*, *Canyon Gate*, and *Warrick* plaintiffs have alleged damage to their land which could have occurred during the 04 or 05 policy periods. The parties do not dispute that Ebensteiner was performing work at the Canyon Gate project during the 04 and 05 policies. ASIC has failed to show that at the time it denied D.R. Horton's tender, there was no "potential" that Ebensteiner's grading work could have damaged land on areas of the Canyon Gate project during the time in which Ebensteiner's work was ongoing in another part of the project. *Montrose Chemical Corp.*, 6 Cal. 4th at 300. The Court concludes that at the time of the denial of coverage the "ongoing operations" limitation of coverage did not eliminate a duty to defend. *See Kazi*, 24 Cal. 4th at 879.

With respect to the alleged damage to homes or property during the 05 policy, at the time that ASIC denied tender, ASIC stated that "we are informed construction occurred at Canyon Gate after 8/01/03 [during the 05 policy]," and that "homes in the 'Canyon Gate' development were completed starting in 'late 2004 [during the 06 policy].'" (ECF No. 35-9 at 3). The parties do not dispute that Ebensteiner was performing work at the Canyon Gate project during the 05 policy.

The *Kim, Canyon Gate,* and *Warrick* plaintiffs have alleged damage to their homes or property which could have occurred during the 05 policy period. The Court finds that ASIC

has failed to show that at the time it denied D.R. Horton's tender, there was no "potential" that Ebensteiner's grading work could have damaged homes or property built on portions of the Canyon Gate project during the time in which Ebensteiner's work was ongoing in another part of the project. *Montrose Chemical Corp.*, 6 Cal. 4th at 300. The Court concludes that at the time of the denial of coverage the "ongoing operations" limitation of coverage did not eliminate a duty to defend. *See Kazi*, 24 Cal. 4th at 879.

### F.    Ebensteiner's Sole Negligence

ASIC contends that there is no coverage under the policies on the grounds that the underlying actions do not arise out of Ebensteiner's sole negligence. ASIC contends that "[f]rom a brief review of the first thirty paragraphs of the underlying complaint, it is clear that the claims asserted against [D.R. Horton] are based on its own conduct, decisions and engineering shortcuts, and/or those geotechnical consultants who it retained (who are also sued)." (ECF No. 41 at 21).

D.R. Horton contends that ASIC had a duty to defend it in the underlying actions on the grounds that ASIC has not "conclusively established that the property damage could not have arisen out of Ebensteiner's sole negligence." (ECF No. 25-1 at 26). D.R. Horton contends that ASIC did not determine who was negligent with respect to the grading prior to denying a defense in this case.

In this case, the forms 98 15 state: "Coverage under this Endorsement applies ... only for liability arising out of or relating to [Ebensteiner's] sole negligence ...." (ECF No. 25-8 at 27, 57; ECF No. 25-9 at 3, 33, 64, 95; ECF No. 25-10 at 3, 30). The *Kim* plaintiffs allege that "in an effort to reduce the cost of developing the Canyon Gate project, Zephyr, Draper, and D.R. Horton cut corners in the geotechnical engineering, design, grading and excavation for these tracts ...." (ECF No. 25-12 at 132). The *Kim* plaintiffs allege that on March 20, 2002, "D.R. Horton, its grading subcontractor and [its engineers] resumed rough grading on [a tract in the Canyon Gate project] despite the fact that the City had not approved their revised shear key design." *Id.* at 138. The *Kim* plaintiffs allege: "As a direct, foreseeable and proximate result of said interference, Plaintiffs have incurred physical damage to their land, improvements and structures located on their residential real properties and/or a diminution-in-

value of their residential properties as a result ...."  *Id.* at 161-62.

The *Canyon Gate* case asserts essentially the same facts and claims as asserted in the *Kim* case.  (ECF No. 25-13 at 2).  The *Canyon Gate* plaintiff alleges that: "As a direct, foreseeable and proximate result of said interference, [Plaintiff has] incurred physical damage to its Common Areas."  *Id.* at 34.  The *Warrick* case asserts essentially the same facts and claims as asserted in the *Kim* case.  (ECF No. 25-13 at 61).  The *Warrick* plaintiffs allege: "As a direct, foreseeable and proximate result of said interference, [Plaintiffs] have incurred physical damage to their land, improvements and structures located on their residential real properties and/or a diminution-in-value of their residential properties."  *Id.*

The *Kim*, *Canyon Gate*, and *Warrick* complaints allege damage to the plaintiff's homes and property resulting from the grading work performed at the Canyon Gate project.  Ebensteiner performed the grading work at the Canyon Gate project.  The Court finds that the *Kim*, *Canyon Gate*, and *Warrick* cases assert facts to show that the damage could have been caused by Ebensteiner's sole negligence.  The Court finds that the *Kim*, *Canyon Gate*, and *Warrick* cases present a "legal theory or facts" that potentially give rise to coverage.  *See Hudson Ins. Co.,* 624 F.3d at 1268 (citation omitted).  The Court finds that ASIC has failed to show that at the time it denied D.R. Horton's tender, there was no "potential" that Ebensteiner's sole negligence gave rise to the damage allege in the underlying actions.  *Montrose Chemical Corp.*, 6 Cal. 4th at 300.

### G.   Notice to Builder

D.R. Horton asserts that ASIC's duty to defend began when D.R. Horton provided ASIC with a notice to builder on November 19, 2008.  D.R. Horton contends that a California Civil Code section 910 notice to builder is a civil proceeding within the meaning of the policies coverage of "suits."  (ECF No.25-1 at 28-29; ECF No. 40 at 28).

ASIC contends that at the time it declined to defend D.R. Horton based on the notice to builder, no case had held that a notice to builder was a legal proceeding.  ASIC contends that later cases indicating that a notice to builder is a legal proceeding "were not and could not have been known or binding on ASIC in December 2008 ...."  (ECF No. 41 at 29).

The policies in this case provide that ASIC has the duty to defend the insured against

10cv443 WQH (WMc)

any suit seeking damages because of bodily injury or property damage to which the insurance policies apply.  The policies state that: "'Suit' means a civil proceeding in which damages because of... 'property damage'... to which this insurance applies are alleged.  'Suit' includes: (a) An Arbitration proceeding ...; or (b) Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent."  (ECF No. 25-9 at 16).

California Civil Code section 910 requires a claimant to provide written notice to a builder of any claimed violation and states that the notice: "[S]hall have the same force and effect as a notice of commencement of a legal proceeding."  Cal. Civ. Code § 910 (effective Jan. 1, 2003).  In *Clarendon Am. Ins. Co. v. StarNet Ins. Co.,* 113 Cal. Rptr. 3d 585 (Cal. App. 2010), the California Court of Appeal found "as a matter of first impression" that a proceeding under the Caldren Act was an alternative dispute resolution proceeding as defined by the commercial general liability insurance policy.  *Id.* at 586, *Clarendon Am. Ins. Co. v. Starnet Ins. Co.*, 117 Cal. Rptr. 3d 613, 614 (Cal. 2010) (granting the petition for review but deferring the matter pending the disposition of *Ameron Int'l Corp. v. Ins. Co. of the State of Penn.*, 50 Cal. 4th 1370 (Cal. 2010)), *Clarendon Am. Ins. Co. v. Starnet Ins. Co.,* 121 Cal. Rptr. 3d 879, 879 (Cal. 2011) (dismissing review); *see also Ameron Int'l Corp.,* 50 Cal. 4th at 1383 (holding as a matter of "first impression" that a federal adjudicative administrative agency board proceeding triggered the duty to defend where an insurance policy did not define the term "suit").  The Caldren Act is similar to California Civil Code section 910 because it requires a homeowners association to serve the respondent with a "Notice of Commencement of Legal Proceedings."  Cal. Civ. Code § 1375.

At the time ASIC denied tender for the notices to builder, California Civil Code section 910 expressly stated that notices to builder: "[S]hall have the same force and effect as a notice of commencement of a legal proceeding."  Cal. Civ. Code § 910.  The Court finds that ASIC has failed to show that at the time it denied D.R. Horton's tender of the notices to builder, there was no "potential" for coverage. *Montrose Chemical Corp*., 6 Cal. 4th at 300.  The Court concludes that ASIC had a duty to defend D.R. Horton pursuant to the notices to builder.

### H.    Wrap Policies

ASIC contends that it sought information from D.R. Horton regarding any wrap policies for the Canyon Gate Project since 2003. (ECF No. 54 at 2). ASIC contends that it has recently discovered that D.R. Horton has wrap policies which apply from March 1, 2003 through August 1, 2006. *Id.*   ASIC contends that there is a wrap exclusion in the policies which applies to D.R. Horton. ASIC contends that coverage in this case is precluded on the grounds that tender to other insurance carriers is a condition precedent to coverage under the ASIC policies and the wrap policies issued to D.R. Horton "cover [D.R. Horton] in connection with claims regarding Canyon Gate...." *Id.* at 4. .

D.R. Horton contends that the wrap policies do not apply to this case on the grounds that D.R. Horton was insured under the wrap policies; not Ebensteiner or Ebensteiner's work. D.R. Horton contends that this case relates only to liability arising out of Ebensteiner's work. In addition, D.R. Horton contends that "ASIC presents no evidence that [D.R. Horton] did not tender the claims to other insurers." (ECF No. 55 at 4). D.R. Horton contends that it was not required to disclose the wrap policies when ASIC requested the information during the *Fessler* litigation on the grounds that the wrap policies took effect after the *Fessler* complaint was filed and could not have possibly applied to the damage alleged in the *Fessler* litigation. D.R. Horton contends that even if the policies require D.R. Horton to tender the claim to other insurers, D.R. Horton was relieved of that duty because ASIC anticipatorily repudiated the policy by denying coverage; ASIC is estopped from enforcing the term because it failed to raise the issue while it was investigating the claim; the provision is an unenforceable "escape clause"; and the term is unenforceable on the grounds that it is not "conspicuous, plain, and clear." (ECF No. 55 at 5).

The  04, 05, and 06 policies contain a "Wrap-up Exclusion" which provides: "This insurance does not apply to *any work* insured under a consolidated (Wrap up) Insurance Program ...." (ECF No. 25-10 at 43; ECF No. 35-3 at 45; ECF No. 35-4 at 53) (emphasis added). The "Wrap-up" policies insure D.R. Horton, not Ebensteiner. (ECF No. 54-9 at 4 DRH 00874; 64 DRH 934; 124 DRH 994; 185 DRH 1055). The work at issue in this case is Ebensteiner's grading work.

The Court finds that ASIC has failed to show there was no "potential" for coverage on the grounds that the "Wrap-up" policy applies to D.R. Horton's work and this case involves Ebensteiner's work. *Montrose Chemical Corp.,* 6 Cal. 4th at 300. The Court concludes that at the time of the denial of coverage the "Wrap-up" policy did not eliminate a duty to defend.

## I.   Bad Faith and Punitive Damages

ASIC contends that D.R. Horton's bad faith claim fails as a matter of law because there was a genuine dispute regarding coverage. ASIC contends that even if ASIC is not entitled to summary judgment on D.R. Horton's bad faith claim, ASIC is entitled to partial summary judgment on the request for punitive damages because ASIC had "more than reasonable support for its position." (ECF No. 33 at 35).

D.R. Horton contends that bad faith is shown by ASIC's failure to investigate information indicating that Ebensteiner performed work during the 05 and 06 policies and by ASIC's failure to investigate the issue of Ebensteiner's sole negligence. D.R. Horton contends that ASIC's "after-the-fact changes to the policies, and its attempt to conceal how and when those changes were made, alone are sufficient to defeat summary judgment on the punitive damages claim." (ECF No. 40 at 30).

"The genuine issue rule in the context of bad faith claims allows a [trial] court to grant summary judgment when it is undisputed or indisputable that the basis for the insurer's denial of benefits was reasonable—for example, where even under the plaintiff's version of the facts there is a genuine issue as to the insurer's liability under California law." *Wilson v. 21st Century Ins. Co.*, 42 Cal.4th 713, 724 (Cal. 2007) (citing *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1161-62 (9th Cir. 2002)). "On the other hand, an insurer is not entitled to judgment as a matter of law where, viewing the facts in the light most favorable to the plaintiff, a jury could conclude that the insurer acted unreasonably." *Id.* "[A] bad faith claim should be dismissed on summary judgment if the defendant demonstrates that there was 'a genuine dispute as to coverage.' " *Feldman v. Allstate Insurance Co.*, 322 F.3d 660, 669 (9th Cir.2003) (citation omitted). However, an insurer is not relieved of its "obligation to thoroughly and fairly investigate, process, and evaluate the insured's claim." *Wilson*, 42 Cal. 4th at 723.

In this case, D.R. Horton's claim of bad faith includes assertions that ASIC did not "thoroughly and fairly investigate, process, and evaluate the insured's claim." *See Wilson*, 42 Cal. 4th at 723.   D.R. Horton's claim for punitive damages includes assertions that ASIC belatedly attempted to revise the policies.   The Court finds that, viewing the facts in the light most favorable to the D.R. Horton, there are disputed issues of fact regarding whether ASIC acted unreasonably and whether the evidence supports an award of punitive damages in this case.   Accordingly, ASIC's Motion for Summary Judgment of D.R. Horton's bad faith and punitive damages claims is DENIED.

### J.   Declaratory Relief

ASIC contends that D.R. Horton's declaratory relief claim is "redundant."   (ECF No. 33 at 35).   D.R. Horton has not addressed this issue.

Declaratory relief is "unnecessary and superfluous" where "[t]he issues invoked in that cause of action already were fully engaged by other causes of action." *Hood v. Superior Court*, 33 Cal. App. 4th 319, 324 (1995).   In this case, D.R. Horton has asserted three claims: (1) breach of the implied covenant of good faith and fair dealings for ASIC's failure to provide a defense in the underlying actions; (2) breach of contract for ASIC's failure to provide benefits under the contract; and (3) declaratory relief seeking judicial determination "(1) that Defendants are obligated to defend and indemnify D.R. Horton under said policies with respect to the [underlying actions]; and (2) that Defendants are obligated to pay for the cost of D.R. Horton's defense in the [underlying actions] and to pay expenses for repairs and other settlement costs in connection with the [underlying actions]."   (ECF No. 1 at 15).

The Court finds that the declaratory relief claim "unnecessary" on the grounds that the issues raised in the declaratory relief claim are fully raised in the other claims. *Hood*, 33 Cal. App. 4th at 324.   ASIC's Motion for Summary Judgment is GRANTED as to the claim for declaratory relief.

### V.   Conclusion

IT IS HEREBY ORDERED that Plaintiff D.R. Horton's Motion for Partial Summary Judgment (ECF No. 25) is GRANTED as to Plaintiff D.R. Horton's claims that ASIC had a duty to defend D.R. Horton under the XGI 02-1261-004 and XGI 03-1261-005 policies in the

1  *Chang O. Kim, et al. v. City of Santa Clarita, et al.*, Los Angeles Superior Court Case No.

2  BC407614; *Canyon Gate Maint. Ass'n v. City of Santa Clarita, et al.*, Los Angeles Superior

3  Court Case No. BC415663; and *Warrick, et al. v. City of Santa Clarita, et al.*, Los Angeles

4  Superior Court Case No. PC046442 cases and related notices to builder and DENIED in all

5  other respects. Defendant ASIC's Motion for Summary Judgment (ECF No. 33) is GRANTED

6  as to Plaintiff D.R. Horton's third claim for declaratory relief and DENIED in all other

7  respects.

8  DATED: January 5, 2012

9  
**WILLIAM Q. HAYES**
United States District Judge